FILED

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND 2013 SEP -3  P 12: 49

**ERNESTINA GARCIA**

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

**VS**              **C.A. NO.:**

**MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC,
HSBC BANK USA, NATIONAL
ASSOCIATION, AS TRUSTEE
FOR HOME EQUITY LOAN
TRUST SERIES ACE 2006-HE1, ALIAS,
HSBC BANK USA, NATIONAL
ASSOCIATION, AS TRUSTEE
FOR ACE SECURITIES CORP. HOME
EQUITY LOAN TRUST, SERIES 2006-HE1, ASSET BACKED PASS-
THROUGH  CERTIFICATES, ALIAS
WELLS FARGO BANK, N.A., ALIAS
AND JOHN DOE**

**CA 13 - 617**

## COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES, VIOLATION OF HE FAIR DEBT COLLECTION PRACTICES ACT, FRAUD, DAMAGES, ATTORNEY FEES AND INJUNCTIVE RELIEF

The Plaintiff, Ernestina Garcia, by her Attorney, complains of Defendants as follows:

1.    The Plaintiff, Ernestina Garcia, is a Rhode Island resident. She is a resident of the State of Rhode Island. She owns the real estate located at 44 Union Avenue, Providence, Rhode Island.

2.    Defendant John Doe is any entity which has an interest in the Plaintiff's mortgage and/or promissory note.

3.    Fremont Investment & Loan ("Fremont") was the nominal originator of the Plaintiff's loan

1

4.      Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a National Bank company conducting business in Rhode Island as a loan servicer. It claims to be the current loan servicer for the Plaintiff's loan.

5.      Defendant HSBC, National Association as Trustee for Ace Securities Corp. Home Equity Loan Trust, Series 2006-HE1 Asset Backed Pass-Through Certificates, alias claims to own the Plaintiff's Mortgage and Note. There is no entity with this name, although there is a securitized trust with the name of ACE Securities Corp., Home Equity Loan Trust, Series 2006-HE1. ("2006-HE1").

6.      Defendant, Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware Corporation.  It is not licensed to do business in the State of Rhode Island. It is a wholly owned subsidiary of Defendant, MERSCORP Holding, Inc. ("MERSCORP")

7.      Defendant MERSCORP is a Delaware corporation. It is not licensed to do business in the State of Rhode Island.

8.      The subject matter of this complaint is proper to invoke the Equitable Jurisdiction of this Court.

9.      All of the parties named herein have sufficient minimum contacts with the State of Rhode Island to render them subject to its jurisdiction.

10.     This Court has subject matter jurisdiction over the matters in this complaint pursuant to the following statutes:

    a.      The provisions of the Declaratory Judgment Act 28 USC Sec. 2201 et seq., grant this Court jurisdiction over questions of law and equity.  The Plaintiff is asking this Court, inter alia, to restrain the certain defendants from taking adverse action on the subject property owned by the Plaintiff at 44 Union Avenue, Providence, Rhode Island.

    b.      The provisions of the Declaratory Judgment Act, 28 USC Sec. 2201 et seq., grant the Court jurisdiction to determine certain legal questions relating to the property rights of the Plaintiff and the Defendants under certain contracts, assignments,

powers of attorneys, and deed. The Plaintiff asks that the alleged assignments be declared void and invalid and that the Court decide that the mortgage and note are not owned by any of the Defendants and that said Defendants lack standing to enforce the note or to foreclose on the mortgage.

c.   The provisions of the Fair Debt Collection Practices Act, 15 USC 1692(k) grants the Court jurisdiction over violations of that Act as alleged in this complaint.

11.   Exhibit A is a copy of the mortgage executed by the Plaintiff to MERS as nominee for Fremont on November 10, 2005.

12.   On or before February 28, 2006 Fremont, along with DB Structured Products, Inc ("DBSP") and Ace Securities Corp. ("Ace") securitized loans originated by Fremont and other entities into a pool of loans. This rocess was a securitization, in which all the loans were designed to be pooled into levels called tranches and sold to investors as Mortgage Backed securities. As a result a securitized trust was created,  the name of which was  ACE Securities Corp., Home Equity Loan Trust, Series 2006-HE1.

13.   The documents for this securitized trust are located at the following web-page of the Securities and Exchange Commission. The html web address for this particular trust is:

> http://www.sec.gov/cgi-bin/browse-edgar?company=ace+2006-he1&match=contains&filenum=&State=&Country=&SIC=&myowner=exclude&action=getcompany

A copy of the index page is attached as Exhibit B.

14.   This securitized trust so called, is defined by the terms of its Pooling and Servicing Agreement ("PSA") and other documents associated with the loan securitization process.  This Pooling and Servicing Agreement is located at the following html website of the Securities and Exchange Commission:

> http://www.sec.gov/Archives/edgar/data/1353171/000088237706001569/d444644_ex4-1.htm

This Pooling and Servicing Agreement contains the name of the Trust in the definition section. This section provides the name of the trust as follows:

"Trust": ACE Securities Corp., Home Equity Loan Trust, Series 2006-HE1, the trust created hereunder.

15.     In this securitization, the original face value of the loans was in excess of $2,451,000,000.00. The current face value of the loans in the trust is $90,000,000.00.

16.     In this securitization, all loans were initially sold by Fremont to DB Structured Products, Inc. ("DBSP") pursuant to a Mortgage Loan Purchase Agreement dated February 28, 2006.

17.     This loan purchase agreement included all the loans in the trust.

18.     Thus, no later than February 28, 2006, any loans which the trust owned, which were originated by Fremont, were to be conveyed from Fremont to DBSP and then from DBSP to Ace and then to the Trust, with each sale to be considered a bankruptcy remote true sale.

19.     ACE Securities Corporation ("ACE") was identified as the Depositor, which meant that all the loans in the trust were conveyed from it to the trust.

20.     A Prospectus Supplement for the Trust, dated February 24, 2006, is referenced at the following html website address:

http://www.sec.gov/Archives/edgar/data/1353171/000093041306001560/c4 1237_424b5.txt

21.     This document explains the transactional structure involving actual sales between Fremont, the Seller, DB Structured Products, Inc., the Depositor, Ace Securities Corp. and the Trust:

        The Sponsor will treat the transfer of the Mortgage Loans to the Depositor as a sale of the Mortgage Loans.

22.     The Pooling and Servicing Agreement details that the closing date of the Trust was February 28, 2006. Mortgage loans in existence as of that date could be added to the pool referenced in the Trust and the Trust consisted

only of loans which were conveyed to the Trust within 90 days February 28, 2006. The Pooling and Servicing Agreement specifies that that no loans were conveyed to the Trust more than 90 days after that date.

23.     The Trust has a designated document Custodian, Deutsche Bank National Trust Company, which was required to hold the original Notes for the Trust, as well as all of the Delivery and Receipt Certificates regarding the Notes. This PSA set forth and defined the only way a Note and Mortgage could be transferred to the Trust.

24.     After February 28, 2006, no loans in the Trust were owned by Fremont or any other entity.

25.     On or about December 17, 2007, a purported assignment ("Exhibit C") of mortgage from MERS to HSBC Bank U.S.A., National Association as trustee for Home Equity Loan Trust Series ACE 2006-HE1. This entity does not exist under that name.  As noted above and in the definitional section of the Polling and Servicing Agreement, there is an entity known as HSBC Bank U.S.A., National Association as trustee for ACE Securities Corp. Home Equity Loan Trust Series 2006-HE1. This document was purportedly signed by Francis J. Nolan as Vice President and Assistant Secretary of MERS. On December 17, 2007, MERS did not own Plaintiff's note or mortgage. The loan had been sold to DBSP on or about February 28, 2006.

26.     On May 17, 2013 a notice of Mortgagee sale was recorded by Wells Fargo and an entity known as HSBC Bank U.S.A., National Association as trustee for ACE Securities Corp. Home Equity Loan Trust Series 2006-HE1 Asset Backed Pass-Through Certificates in the Land Evidence records of the City of Providence, indicating that the Plaintiff's property would be foreclosed on July 10, 2013. However no foreclosure occurred, despite this publication.

27.     Wells Fargo recognized that the first alleged assignment was not effective for several reasons, including the fact that the assignee did not exist. It recognized that it had a problem, in that there was a failure of securitization. To correct this problem, it caused the name of an Iowa college student, Brianna Schenkelberg, to be electronically affixed to a document  purporting to be an assignment of mortgage which was prepared and executed by Wells Fargo, purporting to convey the mortgage from

HSBC Bank U.S.A., National Association as trustee for Home Equity Loan Trust Series 2006-HE1 to HSBC Bank U.S.A., National Association as trustee for ACE Securities Corp. Home Equity Loan Trust, Seriews 2006-HE1, Backed Pass-Through Certificates . The assignor did not exist, nor did the assignee exist.

28.     Wells Fargo knew that it could not have an assignment from a non-existent entity. Thus it caused the name of Brianna Schenkelberg, whose name was listed as a Vice President Loan Documentation for Wells Fargo, to be affixed to this document electronically. She purportedly signed on behalf of Wells Fargo as Attorney in Fact for a non-existent entity. She was not a Vice President of Wells Fargo. She did not sign this alleged assignment ("Exhibit D") and there is no power of attorney from the non-existent entity, HSBC Bank U.S.A., National Association as trustee for Home Equity Loan Trust Series 2006-HE1 to Wells Fargo.

29.     On January 18, 2013, the assignor owned nothing to convey to the assignment. Wells Fargo, MERS and 2006-HE1 knew or should have known this fact on this date.

30.     MERS, Wells Fargo and 2006-HE1 knew that the original alleged December 17, 2007 document was void and was not an assignment.

31.     The grantor in this assignment was the incorrect name of the Trust. The first purported assignments contained the incorrect name for the trust, which entity did not exist.

32.     Instead of correcting the misnomer wherein the alleged documents had assigned a mortgage to a non-existent entity, a new assignment was prepared by Wells Fargo for the non-existent entity, pursuant to a power of attorney from an entity which did not exist.

33.     Wells Fargo knew that HSBC would not allow one of its employees to sign such a defective document. Thus it had the name of Brianna Schenkelberg, a student affixed to the alleged assignee. Thus the second assignment was a nullity from one non-existent entity to another non-existent entity.

## COUNT I
## DECLARATORY JUDGMENT THAT DEFENDANTS ARE NOT ENTITLED TO ENFORCE THE NOTE OR MORTGAGE DUE TO FAILURE OF SECURITIZATION

34.    Paragraphs 1-33 are incorporated by reference.

35.    On August 4, 2009 a Proof of Claim was filed in Plaintiff's bankruptcy case, Defendants attached an alleged copy of the Plaintiff's note.

36.    This copy of the note ("Exhibit E") has not been endorsed and remains payable to Fremont.

37.    However Fremont sold Plaintiff's loan to DBSP on February 28, 2006.

38.    Neither the mortgage nor the note was ever conveyed to the Trust pursuant to the terms of the trust.

39.    Without a valid transfer of the note and the mortgage to the Trust, neither the loan servicer acting on behalf of 2006-HE1, nor can 2006-HE1 enforce the note or the mortgage.

40.    The PSA of the trust indicated that the only notes and mortgages in the trust were those notes and mortgages to be conveyed to the Trust by the Depositor on or before February 28, 2006. No loans were transferred to the Trust by the originator, Fremont, MERS or any other entity.

41.    Plaintiff does not allege that the attempted transfer of this mortgage is a violation of the Pooling and Servicing agreement.

42.    The Pooling and Servicing Agreement supports the Plaintiff's contentions that the note and mortgage were never transferred to the Defendant Trust.

43.    The pooling and Servicing Agreement and all the corporate governance documents of the Trust define the transactional structure of the Trust. This transactional structure specifically indicates that the only loans sold to the trust were by Ace on or before the closing date of the Trust.

44.     The governing documents of the Trust and its transactional structure this indicate that the purported assignments prepared by the loan servicer, Wells Fargo, are void and have been prepared to cover a gap in the chain of title, which the Trust and loan servicer for it had ignored in the securitization process.

45.     As a result of the failure of the chain of title for the mortgage, due to the defective securitization of the loan, Wells Fargo, the current loan servicer and the Defendant trust lacks standing to foreclose on the Plaintiff's mortgage. The trust was never was conveyed either the mortgage or the note, which remains unendorsed. Thus the note has never been negotiated pursuant to the provisions of the Uniform Commercial Code.

## COUNT II
## BREACH OF CONTRACT

46.     Paragraphs 1-45 are incorporated by reference.

47.      Plaintiff never received any default letter from the owner of the note and the mortgage and any alleged foreclosure proceedings were invalid because no notice was sent to the Plaintiff pursuant to law and to the terms of the mortgage.

48.     None of the provisions of paragraph 22 of the mortgage were complied with before an acceleration of the loan was declared. The Owner of the Note and the Mortgage was required to specify:

     a.     the default;

     b.     the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

     c.     that failure to cure the default on or before the date specified in the Notice may result in the acceleration and the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

49.    Paragraph 22 of the mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

> **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**
>
> **If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15.  Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

50.     The Defendants' alleged default notice was defective as it was not sent on behalf of the owners of the Note and the Mortgage.

51.     No valid default letter has been sent, nor has a valid acceleration letter been sent to the Plaintiff.

52.     Defendants did not accelerate the mortgage or the note and thus were not contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's property.

53.     The Plaintiff has been damaged by this breach of contract. She has incurred attorney fees and is entitled to attorney fees pursuant to the provisions of RIGL 9-1-45.

**COUNT III**
**FRAUD**

54.     Paragraphs 1-53 are incorporated by reference.

55.     MERS, Wells Fargo and 2006-HE1, the Defendant trust and Wells Fargo knew or should have known on December 17, 2007 and January 18, 2013 that the two alleged assignments were void due to the failure of securitization and the lack of authority on the part of any purported signers of the assignments, that the assignments were void. All Defendants know that MERS owned nothing to assign at any time after February 28, 2006.

56.     Despite this knowledge, Wells Fargo and 2006-HE1 authorized the creation and recording of the fraudulent assignments on December 17, 2007 and January 18, 2013.

57.     Despite this knowledge the Defendants continue to assert that these documents were valid and assert that the Defendant trust owns the note and the mortgage and was entitled to foreclose.

58.     Plaintiff has been damaged due to the fraudulent conduct as detailed by these defendants.

59.     On about December 17, 2007, Defendants MERSCORP, MERS and Wells Fargo and 2006-HE1 prepared a fraudulent, purported assignment of mortgage and note from MERS to a non-existent entity (see attached Exhibit

C). This fraudulent document was prepared and executed in order to make it appear that 2006-HE1 owned the Plaintiff's mortgage. The bases for these allegations are the following facts:

a.      MERS never owned, possessed or held the note. The alleged assignment purports to convey the mortgage and the note, which is impossibility pursuant to RIGL 34-11-24. That statute provides:

An assignment of mortgage substantially following the form entitled "Assignment of Mortgage" shall, when duly executed, have the force and effect of granting, bargaining, transferring and making over to the assignee, his or her heirs, executors, administrators, and assigns, the mortgage deed with the note and debt thereby secured, and all the right, title and interest of the mortgagee by virtue thereof in and to the estate described therein, to have and to hold the mortgage deed with the privileges and appurtenances thereof to the assignee, his or her heirs, executors, administrators and assigns in as ample manner as the assignor then holds the same, thereby substituting and appointing the assignee and his or her heirs, executors, administrators and assigns as the attorney or attorneys irrevocable of the mortgagor under and with all the powers in the mortgage deed granted and contained.

However the statutory form referenced in RIGL 34-11-24 is contained in RIGL 34-11-12 and contains the following language:

**(6) ASSIGNMENT OF MORTGAGE.**

 **holder of a mortgage by to dated recorded in the records of deeds in   in      book   no. at page      , for consideration paid; assign the mortgage and the note and claim secured thereby to**

**Witness hand this day of (Here add acknowledgment.)**

b.      The inability of MERS to comply with the statutory form of assignment contained in RIGL 34-11-12 and referenced in RIGL 34-11-24 effectively failed to conform with the statutory

framework as established by the Rhode Island General Assembly, by its enactment of RIGL 34-11-24, 34-11-11 and 34-11-12 and did not convey either the mortgage or the note to Wells Fargo.

c.　　By the terms of the mortgage and in this document referenced as an assignment, MERS claimed to be the owner of the mortgage on December 17, 2007. MERS could not in this matter, by the terms of the mortgage and by its own rules, regulations and by-laws, act on its own behalf. Thus the alleged assignment by MERS itself was not only a fraudulently created document, but was also void ab initio and a nullity. No consideration was paid by 2006-HE1 to MERS. Wells Fargo, MERS, MERSCORP and 2006-HE1 were aware of this fact, yet allowed the fraudulent document purporting to be an assignment to be drafted and executed in order to seek to foreclose on the property owned by the Plaintiff.

d.　　The person whose name was affixed to the alleged assignment was Francis J. Nolan, who is not and has never been an employee or validly authorized Vice President or Assistant Secretary of MERS. He has never been legally authorized to sign any document on behalf of MERS. He is a robosigner who works for Harmon Law Offices, P.C. and whose name appears on documents even though he lacked the authority to sign any documents on behalf of MERS on December 17, 2007.

e.　　Francis J. Nolan was never an employee or validly authorized Vice President or Assistant Secretary of MERS. He is an employee of Harmon Law Offices, P.C. He has never been legally authorized to sign any document on behalf of MERS. He was not an agent of MERS.

f.　　No corporate resolution has been made naming Francis J. Nolan as a Vice President or Assistant Secretary of MERS. Francis J. Nolan was not authorized, pursuant to the purported MERSCORP regulations alleged to be in effect at the time of the execution of the alleged assignment, to be a MERS officer. A copy of these regulations is attached as Exhibit F.

g.     The By-Laws of the Corporation, Mortgage Electronic Registration Systems, Inc. have never authorized the secretary of MERS to appoint any certifying authorizing officer. A copy of the By-laws is attached as Exhibit G
.

h.     Pursuant to its By-Laws, only the Board of Directors of MERS can appoint officers of MERS. The Board never appointed Francis J. Nolan as a MERS officer. It has never appointed any person as a MERS officer.

i.     The original mortgage on this property was owned by MERS as Nominee for Fremont, which owned the note. MERS Officers and representatives have made judicial admissions that MERS never owns any note and has never been entitled to payment in regards to any mortgage. This finding of fact was made by the Nebraska Supreme Court in the case of <u>Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking and Finance,</u> 704 N.W. 2d 784 (Nebraska, 2005). A copy of this case is attached as Exhibit H. MERS made a judicial admission in this case which states:

> MERS argues that it does not acquire mortgage loans and is therefore not a mortgage banker under § 45-702(6) because it only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members. Further, MERS argues that it does not own the promissory notes secured by the mortgages and has no right to payments made on the notes. MERS explains that it merely "immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur."

<u>MERS v. Nebraska Department of Banking,</u> at p. 787

j.     There has been a finding as a matter of fact and law by the Nebraska Supreme Court that:

MERS has no independent right to collect on any debt because MERS itself has not extended credit, and none of the mortgage debtors owe MERS any money. Based on the foregoing, we conclude that MERS does not acquire mortgage loans, as defined in § 45-702(8), and therefore, MERS is not subject to the requirements of the Act.

MERS v. Nebraska Department of Banking, at p. 788

k.    MERS has made certain admissions in its Appellate Brief in MERS v. Nebraska Department of Banking, which is attached as Exhibit I:

1.    MERS does not take applications for, underwrite or negotiate mortgage loans;

2.    MERS does not service mortgage loans;

3.    MERS does not sell mortgage loans;

4.    MERS is not an investor who acquires mortgage loans on the secondary market;

5.    There is no rational basis for determining that MERS acquires loans;

6.    MERS, in its agreement with its members, cannot exercise, and is contractually prohibited from exercising, any of the rights or interests in the mortgages or other security documents;

7.    MERS is named as the "nominee" owner unless and until it is authorized to do so by the real and beneficial owners of such security documents;

8.    MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time;

9.  MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans;

10. MERS only acts when directed by its members and for the sole benefit of the owners and holders of the promissory notes secured by the mortgage instruments naming MERS as nominee owner;

11. MERS has no interest at all in the promissory note evidencing the mortgage loan;

12. The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note;

13. MERS does not acquire any interest (legal or beneficial) in the <u>loan instrument</u> (i.e., the promissory note or other debt instrument).

14. The note owner appoints MERS to be its agent to only hold the mortgage lien interest, not to hold any interest in the note.

15. MERS cannot be deemed to be acquiring mortgage loans because it does not obtain legal or beneficial title in loan instruments;

16. The beneficial note interests are transferred by endorsement and delivery of the note;

17. As MERS merely holds legal title to the security instrument as nominee for the lender, it lacks authority to do anything more than notify the lender or loan servicer of the consumer's complaint.

18. Other than holding legal title to the security instrument in order to immobilize the lien in the real estate records, any other action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan servicer and for such lender or loan servicer's benefit;

19. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties;

20. Any action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan service provider;

l. 2006-HE1 does not own the Plaintiff's Note or Mortgage.

m. The alleged assignment was created to allow 2006-HE1 to claim nominal ownership of the loan even though the note and the mortgage were never sold to 2006-HE1 by MERS. The Defendants needed to create a purported authorized party to sign the alleged assignments to allow 2006-HE1to seek to foreclose on the loan. Thus this fraudulent assignment, without basis or authorization, was created. MERS, MERSCORP, and 2006-HE1were aware of all these facts at the time these alleged assignments were created. They nevertheless had a Harmon Law Offices, P.C. employee claim to sign a document that purported to assign the mortgage, also aware of the fact that the document was not duly executed pursuant to Rhode Island law. This document conveyed nothing as MERS did not own anything to convey, transfer or assign to 2006-HE1on December 17, 2007.

n. No consideration was given to MERS or any entity in conjunction with the alleged assignment of mortgage on December 17, 2007.

o.      MERS has no employees and all its actions are taken by third parties or MERSCORP.

p.      The MERS servicer and investor report website indicates that Wells Fargo is the investor of Plaintiff's loan, not 21006-HE1. A copy of this website report is attached as Exhibit J.

q.      As a result of these void and unauthorized documents purporting to be  assignments and the non-existent nature of the wrongly named trusts, the Defendants lacked any standing, are not the real party in interest, and were not proper parties to foreclose or enforce the original mortgage or note.

## COUNT IV
## DECLARATORY JUDGMENT

60.     Paragraphs 1-59 are incorporated by reference.

61.     On November 10, 2005 the Plaintiff executed a promissory note in favor of Fremont in the amount of $262,000.00. The property is now worth less than $100,000.00.

62.     On November 10, 2005, the Plaintiff executed a mortgage naming MERS as nominee for Fremont as the Lender and Mortgagee, which also contained language relative to the statutory sale. A copy is attached as Exhibit A.

63.     On December 17, 2007, an alleged assignment, which was legally ineffective and void, was allegedly made from a person known as Francis J. Nolan, purportedly on behalf of MERS as nominee. Francis J. Nolan is not and has never been an employee or officer of MERS. This purported assignment does not indicate whether the signer is signing under corporate resolution or has authority to execute said assignment of mortgage and does it affix a corporate seal. The purported assignment of mortgage was signed by a person without any authority to sign on behalf of MERS and thus was not duly executed pursuant to the provisions of RIGL 34-11-24. MERS owned nothing to convey at the time of this alleged assignment.

64. The Mortgage contains language that provides for the Statutory Power of Sale in the event of a default on the note by the Plaintiff.

65. The owner of the mortgage and note never invoked the statutory of sale in this matter.

66. The owner of the mortgage and note never mailed a notice of sale to the Plaintiff.

67. The owner of the mortgage and note never published the notice of sale.

68. The alleged Foreclosure Sale has been scheduled for September 4, 2013 at 12:00 PM, not noticed by the owner of the mortgage and note.

69. Since the notice of sale was defective, any alleged sale would be defective.

70. Neither 2006-HE, nor he two defectively named trusts, are the owner of the note or mortgage in regard to this matter and, pursuant to RIGL 34-11-22, all lack statutory or contractual authority to foreclose.

71. Wells Fargo and 2006-HE1, which are not the owner of the note and mortgage, wrongly published the notice of sale without contractual or statutory authority.

72. The actions taken by Wells Fargo and 2006-HE1 are without any force or effect relative to the invocation of the statutory power of sale or the actual sale of the property because they are not the owner of the note and the mortgage.

73. The foreclosure was not noticed or scheduled or advertised as required by the Note and Mortgage and Statute.

74. The purported foreclosure is not in compliance with statutory mandates and is not in compliance with the plain language in the Note and Mortgage.

75. Francis J. Nolan had no ability to assign the mortgage to any entity, including, 2006-HE1. He was not an agent of MERS. The second alleged

assignment was not duly executed as the name of an alleged agent for a nonexistent entity was electronically affixed to the document by Wells Fargo.

76.     Thus Wells Fargo and 2006-HE1 lacks standing to foreclose.

77.     Fremont, on December 17, 2007, was not a member of MERSCORP. ACE, DBSP and 2006-HE1 have never been MERSCORP members. Thus after origination of the Plaintiff's mortgage, no MERSCORP member owned Plaintiff's note and MERS was no longer the agent or nominee for any owner of the note and mortgage.

78.     This claim is brought pursuant to the provisions of the Declaratory Judgment Act and as such fall within the jurisdiction of this Court.

79.     This is a justiciable controversy and is appropriate for Declaratory Judgment.

## COUNT V
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692(f) (6)

80.     Paragraphs 1-79 are incorporated by reference.

81.     Wells Fargo is a debt collector as defined by 15 USC 1692 et seq. Wells Fargo, and since September 3, 2012 has committed several violations of the FDCPA and is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and costs for violations.

82.     Wells Fargo has used the following unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiff.

83.     In violation of the FDCPA, representatives of Wells Fargo contacted the Plaintiff on numerous occasions since September 3, 2012 despite knowing that she was represented by an attorney.

84.     Wells Fargo has threatened to commence and has claimed to have commenced a non-judicial foreclosure to effect dispossession of the Plaintiff of his property even though Wells Fargo has no present right to possession

of the property claimed as collateral through an enforceable security interest. Specifically, it committed the following violations in this regard:

a. On about April 2, 2013, Wells Fargo had sent, through its attorney Harmon Law Offices, P.C., two Notices of Foreclosure to Plaintiff attached as Exhibit K.

b. On about May 8, 2013, America's Servicing Company had sent, through its attorney Harmon Law Offices, P.C., indicating the they were the servicer for HSBC Bank, USA, NA attached as Exhibit L.

c. On about May 17, 2003, Wells Fargo had sent, through its attorney Harmon Law Offices, P.C., two Notices of Foreclosure to Plaintiff attached as Exhibit M.

d. On about June 11, 2013, 2003, Wells Fargo had sent, through its attorney Harmon Law Offices, P.C., one Notice of Foreclosure to Plaintiff attached as Exhibit N.

e. On about July 12, 2013, Wells Fargo had sent, through its attorney Harmon Law Offices, P.C., one Notice of Foreclosure to Plaintiff attached as Exhibit O.

f. Wells Fargo on January 18, 2013 prepared a fraudulent assignment of mortgage attached as Exhibit D.

g. Wells Fargo has caused publication of three foreclosure advertisements of the sale of Plaintiff home.

h. Wells Fargo has notified Plaintiff's tenants of the alleged foreclosures on several occasions.

85. The facts alleged in this complaint establish that neither 2006-HE1 nor the two incorrectly named trusts lack the present right to possession of the property claimed as collateral through an enforceable security interest.

86. Wells Fargo also violated section 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt. Wells Fargo made false representations

regarding the character and legal status of the debt, namely that it was owned by 2006-HE1.

87.     Each action of Wells Fargo described above constitutes a separate violation of the FDCPA for which Wells Fargo is liable.

88.     The purported foreclosure action and all actions to seek to foreclose on the property have occurred within one year of the filing of this complaint.

89.     The Plaintiff has incurred damages and is entitled to statutory damages, actual damages, and attorney fees and costs for each violation of the FDCPA.

## COUNT VI
## INJUNCTIVE RELIEF

90.     Paragraphs 1-89 are incorporated by reference.

91.     The Plaintiff requires a Mandatory Injunction and Preliminary Injunction against all defendants to cease any attempts to commence or continue an illegal foreclosure action of 2006-HE1.

92.     2006-HE1 had no interest in the property, the mortgage, or note, thus had no standing to foreclose upon the Plaintiff's mortgage or to enforce the note or to assign the mortgage or transfer the note.

93.     Plaintiff's property is assessed by the City of Providence Tax Assessor at the amount of $130,000.00. The original balance of the mortgage was $262,000.00.

94.     The Plaintiff is being irreparably harmed by the illegal collection actions of all the Defendants. Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed. The failure of the Defendants to comply with paragraph 22 of the mortgage and to commence the alleged foreclosure proceedings, without having the contractual ability to do so, demonstrates that the Plaintiff has a substantial likelihood of success. The void nature of the alleged assignments demonstrates that the Plaintiff has a substantial likelihood of success. Likewise the recording of a foreclosure deed

following a defective foreclosure of the Plaintiff's property by a party not entitled to foreclose on the property will cause the Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by Defendants. Such relief sought by Plaintiff will not disserve the public interest if imposed.

**WHEREFORE**, the Plaintiff prays that this Court:

A.   Issue a Declaratory Judgment determining that the note and mortgage is not vested in 2006-HE1.

B.   Issue a Declaratory Judgment that the two alleged assignments were invalid and void ab initio as a matter of law.

C.   Issue a Declaratory Judgment that any foreclosure proceedings previously conducted against the Plaintiff have been invalid and void and that any costs and legal fees allegedly incurred by Defendants shall not be charged against the Plaintiff.

D.   Preliminarily and permanently restrain and enjoin all of the Defendants from commencing any further foreclosure actions, executing or recording any foreclosure deed or taking any collection action against the Plaintiff.

E.   Issue a Preliminary and Permanent Injunction against all of the Defendants from commencing any further or collection action against the Plaintiff.

F.   Preliminarily and Permanently Restrain and Enjoin 2006-HE1, Wells Fargo and MERS from executing any further assignments of the original mortgage.

G.   Issue a Declaratory Judgment that none of the alleged assignments of the mortgage referenced in this Complaint were made by a corporate officer with requisite corporate authority pursuant to law, and that they are void.

H.   That the Plaintiff be awarded Compensatory and punitive damages, attorney fees and costs against all defendants jointly

and severally for wrongful foreclosure and for creating fraudulent documents.

I.     That the Plaintiff be awarded damages for breach of contract and attorney fees pursuant to RIGL 9-1-45.

J.     Award such other relief as this Court deems just and proper.

ERNESTINA GARCIA
By her Attorney

September 3, 2013

JOHN B. ENNIS, ESQ.
1200 Reservoir Avenue
Cranston, RI 02920
401-943-9230