## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

**ERNESTINA GARCIA**

**VS**                              **C.A. NO.: 13-617**

**HSBC BANK USA, NATIONAL
ASSOCIATION, AS TRUSTEE
FOR HOME EQUITY LOAN
TRUST SERIES ACE 2006-HE1, ALIAS,
HSBC BANK USA, NATIONAL
ASSOCIATION, AS TRUSTEE
FOR ACE SECURITIES CORP. HOME
EQUITY LOAN TRUST, SERIES 2006-HE1,
ASSET BACKED PASS-THROUGH
CERTIFICATES, ALIAS, WELLS FARGO
BANK, N.A., ALIAS AND JOHN DOE, ALIAS**

### AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, DAMAGES, VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, DAMAGES, VIOLATION OF R.I.G.L. 34-21-3.1, INJUNCTIVE RELIEF AND ATTORNEY FEES

The Plaintiff, Ernestina Garcia, by her Attorney, complains of Defendants as follows:

1.     The Plaintiff, Ernestina Garcia, is a Rhode Island resident. She is a resident of the State of Rhode Island. She owns the real estate located at 44 Union Avenue, Providence, Rhode Island.

2.     Defendant John Doe is any entity which has an interest in the Plaintiff's mortgage and/or promissory note.

3.     Fremont Investment & Loan ("Fremont") was the nominal originator of the Plaintiff's loan

4.     Defendant Wells Fargo Bank, N.A. ("Wells Fargo") is a National Bank  conducting business in Rhode Island as a loan servicer. It is the current loan servicer for the Plaintiff's loan.

1

5. Defendant HSBC, National Association as Trustee for Ace Securities Corp. Home Equity Loan Trust, Series 2006-HE1 Asset Backed Pass-Through Certificates, alias ("2006-HE1 certificates") claims to own the Plaintiff's Mortgage and Note. There is no entity with this name, although there is a securitized trust with the name of ACE Securities Corp., Home Equity Loan Trust, Series 2006-HE1. ("2006-HE1 Trust").

6. Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware Corporation. It is not licensed to do business in the State of Rhode Island. It is a wholly owned subsidiary of Defendant, MERSCORP Holding, Inc. ("MERSCORP")

7. MERSCORP is a Delaware corporation. It is not licensed to do business in the State of Rhode Island. One of its shareholders is Wells Fargo Bank, N.A.

8. The subject matter of this complaint is proper to invoke the Equitable Jurisdiction of this Court.

9. All of the parties named herein have sufficient minimum contacts with the State of Rhode Island to render them subject to its jurisdiction.

10. This Court has subject matter jurisdiction over the matters in this complaint pursuant to the following statutes:

    a. The provisions of the Declaratory Judgment Act 28 USC Sec. 2201 et seq., grants this Court jurisdiction over questions of law and equity. The Plaintiff is asking this Court, inter alia, to restrain certain defendants from taking adverse action on the subject property owned by the Plaintiff at 44 Union Avenue, Providence, Rhode Island.

    b. The provisions of the Declaratory Judgment Act, 28 USC Sec. 2201 et seq., grant the Court jurisdiction to determine certain legal questions relating to the property rights of the Plaintiff and the Defendants under certain contracts, assignments, powers of attorneys, and deed. The Plaintiff asks that the alleged assignments be declared void and invalid and that the Court decide that the mortgage and note are not owned by any

2

of the Defendants and that said Defendants lack standing to enforce the note or to foreclose on the mortgage.

c. The provisions of the Fair Debt Collection Practices Act, 15 USC 1692(k) grant the Court jurisdiction over violations of that Act as alleged in this complaint.

11. Exhibit A is a copy of the mortgage executed by the Plaintiff to MERS as nominee for Fremont on November 10, 2005.

12. On or before February 28, 2006 Fremont, along with DB Structured Products, Inc. ("DBSP") and Ace Securities Corp. ("Ace") securitized loans originated by Fremont and other entities into a pool of loans. This process was a securitization, in which all the loans were designed to be pooled into levels called tranches and sold to investors as Mortgage Backed securities. As a result a securitized trust was created, the name of which was ACE Securities Corp., Home Equity Loan Trust, Series 2006-HE1.

13. The documents for this securitized trust are located at the following web-page of the Securities and Exchange Commission. The html web address for this particular trust is:

http://www.sec.gov/cgi-bin/browse-edgar?company=ace+2006-he1&match=contains&filenum=&State=&Country=&SIC=&myowner=exclude&action=getcompany

A copy of the index page is attached as Exhibit B.

14. This securitized trust so called, is defined by the terms of its Pooling and Servicing Agreement ("PSA") and other documents associated with the loan securitization process. This Pooling and Servicing Agreement is located at the following html website of the Securities and Exchange Commission:

http://www.sec.gov/Archives/edgar/data/1353171/000088237706001569/d444644_ex4-1.htm

This Pooling and Servicing Agreement contains the name of the Trust in the definition section. This section provides the name of the trust as follows:

3

"Trust": ACE Securities Corp., Home Equity Loan Trust, Series 2006-HE1, the trust created hereunder.

15. In this securitization, the original face value of the loans was in excess of $2,451,000,000.00. The current face value of the loans in the trust is $90,000,000.00.

16. In this securitization, all loans, which were originated by Fremont, were initially sold by Fremont to DB Structured Products, Inc. ("DBSP") pursuant to a Mortgage Loan Purchase Agreement dated February 28, 2006.

17. This loan purchase agreement included all the loans in the trust, which were originated by Fremont.

18. Thus, no later than February 28, 2006, the securitization documents provided that any loans which the trust owned, which were originated by Fremont, were to be conveyed from Fremont to DBSP and then from DBSP to Ace and then to the Trust. Each of these sales was designed to be treated as a bankruptcy remote true sale, with consideration for each purchase from the purchaser to the seller and delivery of the mortgage to the grantee, with proper documentation for each sale.

19. ACE Securities Corporation ("ACE") was identified as the Depositor, which meant that all the loans in the trust were conveyed from it to the trust.

20. A Prospectus Supplement for the Trust, dated February 24, 2006, is referenced at the following html website address:

http://www.sec.gov/Archives/edgar/data/1353171/000093041306001560/c4
1237_424b5.txt

21. This document explains the transactional structure involving actual sales between Fremont, the Seller, DB Structured Products, Inc., the Depositor, Ace Securities Corp. and the Trust:

   The Sponsor will treat the transfer of the Mortgage Loans to the Depositor as a sale of the Mortgage Loans.

22. The Pooling and Servicing Agreement details that the closing date of the Trust was February 28, 2006. Mortgage loans in existence as of that date

4

could be added to the pool referenced in the Trust and the Trust consisted only of loans which were conveyed to the Trust within 90 days of February 28, 2006. The Pooling and Servicing Agreement specifies that that no loans were conveyed to the Trust more than 90 days after that date.

23.     The Trust has two designated document Custodian, Deutsche Bank National Trust Company and Wells Fargo, which were required to hold the original Notes for the Trust, as well as all of the Delivery and Receipt Certificates regarding the Notes. This PSA set forth and defined the only way a Note and Mortgage could be transferred to the Trust.

24.     After February 28, 2006, no loans which were contained in the Trust were owned by Fremont or any other entity. All loans that were transferred to the trust by the depositor had been sold by that date. The Trustee and Custodian were provided 90 days from the closing date to review the loan files and verify that the loans had been properly conveyed to the trust with complete documentation. The 90 days was provided for the Trustee to certify that there had been compliance with the terms of the Pooling and Servicing Agreement and that there was a chain of title of the note and the mortgage to the Trust.

25.     On or about December 17, 2007, a purported assignment ("Exhibit C") of mortgage was prepared by Harmon Law Offices, P.C., the attorney for Wells Fargo. This document purported to transfer the mortgage and note from MERS on its own behalf and not as nominee for any entityto HSBC Bank U.S.A., National Association as trustee for Home Equity Loan Trust Series ACE . 2006-HE1. There is no trust which exists under that name. As noted above and in the definitional section of the Polling and Servicing Agreement, there is an entity known as ACE Securities Corp. Home Equity Loan Trust Series 2006-HE1, of which HSBC Bank U.S.A., National Association is the trustee. This document was purportedly signed by Francis J. Nolan, who falsely claimed to be the Vice President and Assistant Secretary of MERS. On December 17, 2007, MERS did not own Plaintiff's note or mortgage. The loan had been sold to DBSP on or before February 28, 2006. On December 17, 2007, Fremont was no longer a member of MERSCORP and DBSP, Ace and the actual trust itself were not members of MERSCORP.

26.     On April 2, 2013 a purported notice of Mortgagee's sale was sent by Harmon Law Offices, P.C. to Plaintiff scheduling a foreclosure sale for May

24, 2013. No sale occurred on that date. On May 17, 2013 a Notice of Mortgagee Sale was recorded by Wells Fargo and an entity known as HSBC Bank U.S.A., National Association as trustee for ACE Securities Corp. Home Equity Loan Trust Series 2006-HE1 Asset Backed Pass-Through Certificates in the Land Evidence records of the City of Providence, indicating that the Plaintiff's property would be foreclosed on July 10, 2013. However no foreclosure occurred, despite this publication. Another notice of mortgagee sale was sent to Plaintiff for a sale on September 4, 2013. At this purported sale, no agent for Wells Fargo, nor an attorney from Harmon Law Offices, nor a representative for any other entity, including the actual trust appeared at the home of the Plaintiff. The only person present was the auctioneer. Said auctioneer could not bid as an agent on behalf of any entity. Thus no bid for the property occurred at this alleged auction or any continuance of it.

27.     Wells Fargo recognized that the first alleged assignment was not effective for several reasons, including the fact that the assignee did not exist. It recognized that it had a problem, in that there was a failure to transfer Plaintiff's mortgage into the actual Trust. Fremont had sold the mortgage to DBSP and Fremont no longer existed as an entity. To correct this problem, it caused the name of an Iowa college student, Brianna Schenkelberg, to be electronically affixed to a document  purporting to be an assignment of mortgage which was prepared by Wells Fargo, purporting to convey the mortgage from HSBC Bank U.S.A., National Association as trustee for Home Equity Loan Trust Series ACE 2006-HE1 to HSBC Bank U.S.A., National Association as trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2006-HE1, Backed Pass-Through Certificates. This did not correct any problem because neither the alleged assignor existed nor did the alleged assignee exist. The name of the assignee referenced the certificates which were issued by the actual 2006-HE-1 Trust. The certificates were defined in the definitional section of the Pooling and Servicing Agreement as:
"Certificate": Any one of ACE Securities Corp., Asset Backed Pass-Through Certificates, Series 2006-HE1, Class A-1A, Class A-1B1, Class A-1B2, Class A-2A, Class A-2B, Class A-2C, Class A-2D, Class M-1, Class M-2, Class M-3, Class M-4, Class M-5, Class M-6, Class M-7, Class M-8, Class M-9, Class M-10, Class P, Class CE-1, Class CE-2 and Class R Certificates issued under this Agreement.

The actual name of the trust, contained in the definitional section of the Pooling and Servicing Agreed of the actual trust, was specified as:

"Trust": ACE Securities Corp., Home Equity Loan Trust, Series 2005-HE1, the trust created hereunder.

This definition is located at page 66 of the Pooling and Servicing Agreement located at the webpage referenced in paragraph 14 of this complaint.

28.    Wells Fargo knew or should have known that an assignment from a non-existent entity would not convey title to the mortgage. However instead of seeking to correct the chain of title, instead it caused the name of Brianna Schenkelberg, whose name was listed as a Vice President Loan Documentation for Wells Fargo, to be affixed to this document electronically. She purportedly signed on behalf of Wells Fargo as Attorney in Fact for a non-existent entity. She was not a Vice President of Wells Fargo. She did not sign this alleged assignment ("Exhibit D"). The nature of the alleged signature indicates that it was electronically affixed to this document. It was electronically affixed above the line on the document. However this alleged power of attorney from the non-existent entity, HSBC Bank U.S.A., National Association as trustee for Home Equity Loan Trust Series Ace 2006-HE1 to Wells Fargo did not allow the alleged grantor to pass title to the mortgage to the Plaintiff. No good and valuable consideration for this alleged conveyance was transferred because neither of the entities existed. HSBC Bank, USA, National Association does exist, but it is not the trustee for either of the alleged named trusts in this document. There also was no delivery of the mortgage in this alleged conveyance because neither the assignor nor the assignee owned anything to assign and neither alleged trust existed,

29.    On January 18, 2013, the assignor owned nothing to convey to the assignee. Wells Fargo and 2006-HE1 knew or should have known this fact on this date.    As a loan servicer and one of the custodians for the actual trust, Wells Fargo was aware of the fact that both the alleged assignee and assignor did not exist as actual entities. Thus the alleged assignee could not own the mortgage.

30.    Wells Fargo knew that the original alleged December 17, 2007 document was void and was not an assignment. It knew this fact because the

entity did not exist. Wells Fargo knew or should have known that the alleged December 17, 2007 assignment could not assign anything from MERS on its own behalf, because MERS was only the nominee for the owner of the note so long as the owner of the note was a MERSCORP member. Therefore, whenever there is a transfer of a note between MERSCORP members, there is no need to record an assignment of the mortgage, as MERS remains the mortgagee of record and may act as nominee for all MERSCORP members. When the transfer is from a MERSCORP member to a nonmember, an assignment from MERS to the nonmember is required. Wells Fargo, as a shareholder of MERSCORP, knew that Francis Nolan was never appointed a MERS officer. It knew that only the board of Directors of MERS can appoint officers and that it never appointed Francis Nolan or any officers. It also knew that Harmon Law Offices, P.C. was not a member of MERSCORP. It also knew or should have known that the alleged assignment dated December 17, 2007 could not be ratified by the alleged assignee, because that assignee did not exist. It also knew that the alleged assignment was void because the assignor owned nothing to assign or had no authority to make an assignment to a particular assignee, such as the original alleged assignee, which did not exist.

31. Wells Fargo knew that in this securitization that neither DBSP, ACE nor the actual trust were not MERSCORP members. Thus there was no common agency of the owner of the note for MERS.

32. Instead of correcting the misnomer wherein the alleged document had attempted to assign a mortgage, it had no ownership interest in to a non-existent entity, a new assignment was prepared by Wells Fargo for the non-existent entity, pursuant to a power of attorney from an entity which did not exist.

33. Wells Fargo knew that HSBC would not allow one of its employees to sign such a defective document. Thus it had the name of Brianna Schenkelberg, electronically affixed to the alleged assignee. Thus the second assignment was a nullity from one non-existent entity to another non-existent entity.

# COUNT I
## DECLARATORY JUDGMENT THAT DEFENDANTS ARE NOT ENTITLED TO ENFORCE THE NOTE OR MORTGAGE DUE TO FAILURE OF TO TRANSFER THE NOTE AND MORTGAGE

34.     Paragraphs 1-33 are incorporated by reference.

35.     On August 4, 2009 a Proof of Claim was filed in Plaintiff's bankruptcy case, Defendants attached an alleged copy of the Plaintiff's note.

36.     This copy of the note ("Exhibit E") has not been endorsed and remains payable to Fremont.

37.     However Fremont sold Plaintiff's loan to DBSP on February 28, 2006.

38.     Neither the mortgage nor the note was ever conveyed to the actual rust pursuant to the terms of the trust or by any other means. The unendorsed note supports this allegation. The alleged assignments to non-existent entities also supports this allegation.

39.     Without a valid transfer of the note and the mortgage to the Trust, neither the loan servicer acting on behalf of the actual 2006-HE1 Trust nor the actual 2006-HE1 Trust can enforce the note or the mortgage. The non-existent entity referred to as 2006-HE1 certificates cannot enforce the note or the mortgage because it has never existed and is not an entity.

40.     The Pooling and Servicing Agreement of the trust indicated that the only notes and mortgages in the trust were those notes and mortgages to be conveyed to the Trust by the Depositor on or before February 28, 2006. No loans were transferred to the Trust by the originator, Fremont, MERS or any other entity.

41.     Plaintiff does not allege that the attempted transfer of this mortgage is a violation of the Pooling and Servicing Agreement. Rather she alleges that the Pooling and Servicing Agreement and other documents contained in the Trust documents constitute evidence of the only manner in which notes and mortgages were conveyed into the trust. No documents contained in the Securities and Exchange Commission file of the actual trust indicate that the mortgage and note were conveyed to the actual trust by MERS on its own

behalf on December 17, 2007 or by a transfer on January 18, 2013 by HSBC acting on behalf of a non-existent entity.

42. The Pooling and Servicing Agreement supports the Plaintiff's contentions that the note and mortgage were never transferred to the Defendant Trust.

43. The Pooling and Servicing Agreement and all the corporate governance documents of the Trust define the transactional structure of the Trust. This transactional structure specifically indicates that the only loans sold to the trust were by Ace on or before the closing date of the Trust.

44. The governing documents of the Trust and its transactional structure indicate that the purported assignments prepared by the loan servicer, Wells Fargo, are void and have been prepared to cover a gap in the chain of title, which the Trust and the prior loan servicer for the actual trust had ignored in the securitization process.

45. As a result of the failure of the chain of title for the mortgage, due to the failure to transfer the mortgage and note to the actual trust, the Plaintiff, 2006-HE1 certificates, the current loan servicer and the actual Defendant trust lacked standing to foreclose on the Plaintiff's mortgage. The actual trust was never conveyed either the mortgage or the note, which remains unendorsed. Thus the note has never been negotiated pursuant to the provisions of the Uniform Commercial Code. The non-existent 2006-HE1 certificates were never an agent for the owner of the note or the mortgage.

**COUNT II**
**BREACH OF CONTRACT**

46. Paragraphs 1-45 are incorporated by reference.

47. Plaintiff never received any default letter from the owner of the note and the mortgage or an agent on its behalf and any alleged foreclosure proceedings were invalid because no notice was sent to the Plaintiff pursuant to law and to the terms of the mortgage.

48. None of the provisions of paragraph 22 of the mortgage were complied with before an acceleration of the loan was declared. The Owner of the Note and the Mortgage was required to specify:

a.    the default;

b.    the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

c.    that failure to cure the default on or before the date specified in the Notice may result in the acceleration and the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

49.    Paragraph 22 of the mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

> **Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

> **If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

50.     The Defendants' alleged default notice was defective as it was not sent on behalf of the owners of the Note and the Mortgage. Nor did it comply with the provisions of paragraph 22 of the mortgage. Specifically it did not indicate that failure to cure the default may result in accelerations of the sums secured by this security instrument and sale of the property. Plaintiff never received a default letter which included that she had a contractual right to reinstate after acceleration cure the default after the acceleration. Plaintiff never received a default letter which stated thatshe had the the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

51.     Thus, no valid default letter has been sent, nor has a valid acceleration letter been sent to the Plaintiff. Thus a precondition to foreclosure is a valid default letter, followed by an acceleration letter. Without such, the owner of the mortgage and the note cannot exercise the statutory power of sale.

52.     Defendants did not accelerate the mortgage or the note and thus were not contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's property. As a result, the alleged foreclosure sale of was void.

53.     The Plaintiff has been damaged by this breach of contract. She has incurred attorney fees and is entitled to attorney fees pursuant to the provisions of RIGL 9-1-45.

# COUNT III
# CLAIM FOR DAMAGES

54.     Paragraphs 1-53 are incorporated by reference.

55.     Wells Fargo and any representative claiming to act on behalf of the alleged entity referred to 2006-HE1 certificates, and the Defendant Trust 2006-HE1 knew or should have known on December 17, 2007 and January 18, 2013 that the two alleged assignments were void due to the failure to transfer the note and the mortgage and the lack of authority on the part of any purported signers of the assignments and because of failure of consideration and lack of delivery. Wells Fargo knew that MERS owned nothing to assign at any time after February 28, 2006 in relation to the Plaintiff's mortgage and never had any interest in the Plaintiff's note.

56.     Despite this knowledge, Wells Fargo authorized the creation and recording of the alleged assignments on December 17, 2007 and January 18, 2013. Wells Fargo as a shareholder of MERSCORP knew that Francis Nolan had never been appointed  a MERS officer and that due to the MERS By-Laws no ratification of his actions could be effected by MERS.

57.     Despite this knowledge the Defendants continue to assert that these documents were valid and assert that the non-existent 2006-HE1 certificates owns the note and the mortgage and was entitled to foreclose.

58.     Plaintiff has been damaged due to the conduct as detailed by these defendants.

59.     On about December 17, 2007, Defendants MERSCORP, MERS and Wells Fargo and 2006-HE1 prepared a purported assignment of mortgage and note from MERS to a non-existent entity (see attached Exhibit C). This document was prepared and executed in order to make it appear that the non-existent 2006-HE1 owned the Plaintiff's mortgage. The bases for these allegations are the following facts:

> a.     MERS never owned, possessed or held the note. The alleged assignment purports to convey the mortgage and the note, which is impossibility pursuant to RIGL 34-11-24. That statute provides:

An assignment of mortgage substantially following the form entitled "Assignment of Mortgage" shall, when duly executed, have the force and effect of granting, bargaining, transferring and making over to the assignee, his or her heirs, executors, administrators, and assigns, the mortgage deed with the note and debt thereby secured, and all the right, title and interest of the mortgagee by virtue thereof in and to the estate described therein, to have and to hold the mortgage deed with the privileges and appurtenances thereof to the assignee, his or her heirs, executors, administrators and assigns in as ample manner as the assignor then holds the same, thereby substituting and appointing the assignee and his or her heirs, executors, administrators and assigns as the attorney or attorneys irrevocable of the mortgagor under and with all the powers in the mortgage deed granted and contained.

However the statutory form referenced in RIGL 34-11-24 is contained in RIGL 34-11-12 and contains the following language:

## (6) ASSIGNMENT OF MORTGAGE.

**holder of a mortgage by to dated recorded in the records of deeds in   in      book   no. at page     , for consideration paid; assign the mortgage and the note and claim secured thereby to**

**Witness hand this day of (Here add acknowledgment.)**

b.      The inability of MERS to comply with the statutory form of assignment contained in RIGL 34-11-12 and referenced in RIGL 34-11-24 effectively failed to conform with the statutory framework as established by the Rhode Island General Assembly, by its enactment of RIGL 34-11-24, 34-11-11 and 34-11-12 and did not convey either the mortgage or the note to Wells Fargo.

c.      By the terms of the mortgage and in this document referenced as an assignment, MERS  itself and not as nominee, claimed to be the owner of the mortgage on December 17, 2007. MERS could not in this matter, by the terms of the

mortgage and by its own rules, regulations and by-laws, act on its own behalf. Thus the alleged assignment by MERS itself was not only a fraudulently created document, but was also void ab initio and a nullity. No consideration was paid by 2006-HE1 to MERS. Wells Fargo and the actual 2006-HE1 Trust were aware of this fact, yet allowed the document purporting to be an assignment to be drafted and executed in order to seek to foreclose on the property owned by the Plaintiff.

d.     The person whose name was affixed to the alleged assignment was Francis J. Nolan, who is not and has never been an employee or validly authorized Vice President or Assistant Secretary of MERS.  He has never been legally authorized to sign any document on behalf of MERS.  He works for Harmon Law Offices, P.C. and whose name appears on documents even though he lacked the authority to sign any documents on behalf of MERS on December 17, 2007. No ratification of this purported assignment was possible because the assignee did not exit and because MERS never owed the note and could not convey it and because MERS could not act on its own behalf

e.     Francis J. Nolan was never an employee or validly authorized Vice President or Assistant Secretary of MERS. He is an employee of Harmon Law Offices, P.C. He has never been legally authorized to sign any document on behalf of MERS. He was not an agent of MERS.

f.     No corporate resolution has been made naming Francis J. Nolan as a Vice President or Assistant Secretary of MERS. Francis J. Nolan was not authorized, pursuant to the purported MERSCORP regulations alleged to be in effect at the time of the execution of the alleged assignment, to be a MERS officer. A copy of these regulations is attached as Exhibit F.

g.     The By-Laws of the Corporation, Mortgage Electronic Registration Systems, Inc. have never authorized the secretary of MERS to appoint any certifying authorizing officer.  A copy of the By-laws is attached as Exhibit G.

h.    Pursuant to its By-Laws, only the Board of Directors of MERS can appoint officers of MERS. The Board never appointed Francis J. Nolan as a MERS officer. It has never appointed any person as a MERS officer.

i.    The original mortgage on this property was owned by MERS as Nominee for Fremont, which owned the note. MERS Officers and representatives have made judicial admissions that MERS never owns any note and has never been entitled to payment in regards to any mortgage. This finding of fact was made by the Nebraska Supreme Court in the case of <u>Mortgage Electronic Registration Systems, Inc. v. Nebraska Department of Banking and Finance,</u> 704 N.W. 2d 784 (Nebraska, 2005). A copy of this case is attached as Exhibit H. MERS made a judicial admission in this case which states:

> MERS argues that it does not acquire mortgage loans and is therefore not a mortgage banker under § 45-702(6) because it only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members. Further, MERS argues that it does not own the promissory notes secured by the mortgages and has no right to payments made on the notes. MERS explains that it merely "immobilizes the mortgage lien while transfers of the promissory notes and servicing rights continue to occur."

> <u>MERS v. Nebraska Department of Banking,</u> at p. 787

j.    There has been a finding as a matter of fact and law by the Nebraska Supreme Court that:

> MERS has no independent right to collect on any debt because MERS itself has not extended credit, and none of the mortgage debtors owe MERS any money. Based on the foregoing, we conclude that MERS does not acquire mortgage loans, as defined in § 45-702(8), and therefore, MERS is not subject to the requirements of the Act.

k.      MERS has made certain admissions in its Appellate Brief in <u>MERS v. Nebraska Department of Banking</u>, which is attached as Exhibit I:

1.      MERS does not take applications for, underwrite or negotiate mortgage loans;

2.      MERS does not service mortgage loans;

3.      MERS does not sell mortgage loans;

4.      MERS is not an investor who acquires mortgage loans on the secondary market;

5.      There is no rational basis for determining that MERS acquires loans;

6.      MERS, in its agreement with its members, cannot exercise, and is contractually prohibited from exercising, any of the rights or interests in the mortgages or other security documents;

7.      MERS is named as the "nominee" owner unless and until it is authorized to do so by the real and beneficial owners of such security documents;

8.      MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time;

9.      MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans;

10. MERS only acts when directed by its members and for the sole benefit of the owners and holders of the promissory notes secured by the mortgage instruments naming MERS as nominee owner;

11. MERS has no interest at all in the promissory note evidencing the mortgage loan;

12. The beneficial interest in the mortgage (or the person or entity whose interest is secured by the mortgage) runs to the owner and holder of the promissory note;

13. MERS does not acquire any interest (legal or beneficial) in the <u>loan instrument</u> (i.e., the promissory note or other debt instrument).

14. The note owner appoints MERS to be its agent to only hold the mortgage lien interest, not to hold any interest in the note.

15. MERS cannot be deemed to be acquiring mortgage loans because it does not obtain legal or beneficial title in loan instruments;

16. The beneficial note interests are transferred by endorsement and delivery of the note;

17. As MERS merely holds legal title to the security instrument as nominee for the lender, it lacks authority to do anything more than notify the lender or loan servicer of the consumer's complaint.

18. Other than holding legal title to the security instrument in order to immobilize the lien in the real estate records, any other action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or

loan servicer and for such lender or loan servicer's benefit;

19.     MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties;

20.     Any action taken by MERS with respect to a consumer's mortgage loan is taken at the direct instruction of the lender or loan service provider;

l.     The alleged grantee in the alleged first assignment, which does not exist, never own the Plaintiff's Note or Mortgage.

m.     The alleged assignment was created to allow 2006-HE1 to claim nominal ownership of the loan even though the note and the mortgage were never sold to 2006-HE1 by MERS. The Defendants needed to create a purported authorized party to sign the alleged assignments to allow 2006-HE1 to seek to foreclose on the loan. Thus this void assignment, without basis or authorization, was created. Wells Fargo and the actual trust were aware of all these facts at the time these alleged assignments were created. They nevertheless had a Harmon Law Offices, P.C. employee claim to sign a document that purported to assign the mortgage and the note, also aware of the fact that the document was not duly executed pursuant to Rhode Island law. This document conveyed nothing as MERS did not own anything to convey, transfer or assign to the assignee on December 17, 2007. MERS knew or should have known that there was no consideration given to MERS and no delivery of the note and the mortgage despite the language of the alleged assignment.

n.     No consideration was given to MERS or any entity in conjunction with the alleged assignment of mortgage on December 17, 2007.

o.     The MERS servicer and investor report website indicates that Wells Fargo is the investor of Plaintiff's loan, not 2006-HE1

nor the actual trust. A copy of this website report is attached as Exhibit J.

p.     As a result of these void and unauthorized documents purporting to be assignments and the non-existent nature of the non-existent trusts, the Defendants lacked any standing, are not the real party in interest, and were not proper parties to foreclose or enforce the original mortgage or note.

## COUNT IV
## DECLARATORY JUDGMENT

60.     Paragraphs 1-59 are incorporated by reference.

61.     On November 10, 2005 the Plaintiff executed a promissory note in favor of Fremont in the amount of $262,000.00. The property is now worth less than $100,000.00.

62.     On November 10, 2005, the Plaintiff executed a mortgage naming MERS as nominee for Fremont as the Lender and Mortgagee, which also contained language relative to the statutory sale. A copy is attached as Exhibit A.

63.     The purported first assignment of mortgage was signed by a person without any authority to sign on behalf of MERS and thus was not duly executed pursuant to the provisions of RIGL 34-11-24. MERS owned nothing to convey at the time of this alleged assignment. MERS was not an agent for the owner of the mortgage or the note on this date. Nor was Francis Nolan and agent for MERS or the owner of the note or mortgage on December 17, 2007.

64.     The second alleged assignment derived its property interests from the first alleged assignee, which did not exist and also owned nothing to assign.

65.     Neither the owner of the mortgage and note, nor anyone acting as an agent on their behalf ever invoked the statutory of sale in this matter.

66.     Neither the owner of the mortgage and note nor any agent acting on its behalf ever mailed a notice of sale to the Plaintiff.

67. Neither the owner of the mortgage and note nor any agent acting on its behalf ever published the notice of sale.

68. The alleged Foreclosure Sale was scheduled for September 4, 2013 at 12:00 PM, not noticed by the owner of the mortgage and note or any agent acting on its behalf.

69. Since the notice of sale was defective, any alleged sale was also defective. No foreclosure deed has ever been executed and recorded.

70. Neither the actual trust, nor the two defectively named trusts, are the owner of the note or mortgage in regard to this matter and, pursuant to RIGL 34-11-22, all lacked statutory or contractual authority to foreclose.

71. Wells Fargo which is not the owner of the note and mortgage, wrongly published the notice of sale without contractual or statutory authority.

72. The actions taken by Wells Fargo and any trust on whose behalf it acted are without any force or effect relative to the invocation of the statutory power of sale or the actual sale of the property because they are not the owner of the note and the mortgage.

73. The foreclosure was not noticed or scheduled or advertised as required by the Note and Mortgage and Statute.

74. The purported foreclosure was not in compliance with statutory mandates and was not in compliance with the plain language in the Note and Mortgage.

75. Francis J. Nolan had no ability to assign the mortgage to any entity, including, 2006-HE1. He was not an agent of MERS. The second alleged assignment was not duly executed as the name of an alleged agent for a nonexistent entity was electronically affixed to the document by Wells Fargo.

76. Thus Wells Fargo and 2006-HE1 and any other entities claiming to own the mortgage lacked standing to foreclose.

77. Fremont, on December 17, 2007, was not a member of MERSCORP. ACE, and the actual trust have never been MERSCORP members. Thus after origination of the Plaintiff's mortgage, no MERSCORP member owned Plaintiff's note and MERS was no longer the agent or nominee for any owner of the note and mortgage.

78. This claim is brought pursuant to the provisions of the Declaratory Judgment Act and as such fall within the jurisdiction of this Court.

79. This is a justiciable controversy and is appropriate for Declaratory Judgment.

## COUNT V
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 USC 1692(f) (6)

80. Paragraphs 1-79 are incorporated by reference.

81. Wells Fargo is a debt collector as defined by 15 USC 1692 et seq. When Wells Fargo became the loan servicer for Plaintiff's mortgage and note , the loan was in default. Wells Fargo, since September 3, 2012 has committed several violations of the FDCPA and is liable to the Plaintiff for compensatory damages, statutory damages, and attorney fees and costs for violations.

82. Wells Fargo has used multiple followings unfair and unconscionable means to collect or attempt to collect a debt against the Plaintiff.

83. In violation of the FDCPA, representatives of Wells Fargo contacted the Plaintiff on numerous occasions since September 3, 2012 despite knowing that she was represented by an attorney.

84. Wells Fargo has threatened to commence and has claimed to have commenced a non-judicial foreclosure to effect dispossession of the Plaintiff of her property even though Wells Fargo has no present right to possession of the property claimed as collateral through an enforceable security interest. Specifically, it committed the following violations in this regard:

a. On about April 2, 2013, Wells Fargo had sent, through its attorney Harmon Law Offices, P.C., two Notices of Foreclosure to Plaintiff attached as Exhibit K.

b. On about May 8, 2013, America's Servicing Company had sent, through its attorney Harmon Law Offices, P.C., indicating it was the servicer for HSBC Bank, USA, NA attached as Exhibit L.

c. On about May 17, 2003, Wells Fargo had sent, through its attorney Harmon Law Offices, P.C., two Notices of Foreclosure to Plaintiff attached as Exhibit M.

d. On about June 11, 2013, 2003, Wells Fargo had sent, through its attorney Harmon Law Offices, P.C., one Notice of Foreclosure to Plaintiff attached as Exhibit N.

e. On about July 12, 2013, Wells Fargo had sent, through its attorney Harmon Law Offices, P.C., one Notice of Foreclosure to Plaintiff attached as Exhibit O.

f. Wells Fargo on January 18, 2013 prepared a fraudulent assignment of mortgage attached as Exhibit D.

g. Wells Fargo has caused the publication of three foreclosure advertisements of the sale of Plaintiff home.

h. Wells Fargo has hired an auctioneer to claim to foreclose on Plaintiff's home.

i. Wells Fargo authorized an auctioneer to conduct the alleged foreclosure on September 4, 2014.

j. An auctioneer appeared at the Plaintiff's home on September 4, 2014 and thereafter and conducted what purported to be a foreclosure

k. Wells Fargo has notified Plaintiff's tenants of the alleged foreclosures on several occasions.

85.    The facts alleged in this complaint establish that neither the actual trust nor the two incorrectly named trusts lack the present right to possession of the property claimed as collateral through an enforceable security interest.

86.    Wells Fargo also violated section 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt. Wells Fargo made false representations regarding the character and legal status of the debt, namely that it was owned by 2006-HE1 certificates.

87.    Each action of Wells Fargo described above constitutes a separate violation of the FDCPA for which Wells Fargo is liable.

88.    The purported foreclosure action and all actions to seek to foreclose on the property have occurred within one year of the filing of this complaint. Any claims in the Amended Complaint relate back to this entity of the original complaint.

89.    The Plaintiff has incurred actual damages. She has been required to hire an attorney and has lost income from tenants due to the notices from Wells Fargo. She has incurred expenses for gasoline to travel to meet with her attorney. She has incurred cellular telephone expenses to contact her attorney. She is also entitled to statutory damages, for each violation of the FDCPA and is entitled to actual damages, and attorney fees and costs for the prosecution of this action.

## COUNT VI
## NON-COMPLIANCE WITH RIGL 34-27-3.1

90.    Paragraphs 1- 89 are incorporated by reference.

91.    RIGL 34- 4-27-3.1 states:

> **Foreclosure counseling.** – (a) No less than forty-five (45) days prior to initiating **any** foreclosure of real estate pursuant to subsection 34-27-4(b), the mortgagee shall provide to an individual consumer mortgagor written notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices.

(b) The written notice required by this section shall be in English and Spanish and, provided the same is then available, shall advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies and, the toll-free telephone number and website address maintained to provide information regarding no-cost HUD-approved mortgage counseling agencies in Rhode Island. The written notice may also contain any other information required under federal law. A form of written notice meeting the requirements of this section shall be promulgated by the department of business regulation for use by mortgagees at least thirty (30) days prior to the effective date of this section. Counseling shall be provided at no cost to the mortgagee.

(c) **Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void,** without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

(d) As used herein and in this chapter, the term "HUD" means the United States Department of Housing and Urban Development and any successor to such department. (emphasis added)

92.    This statute indicates that the definition of mortgagee is the owner of the mortgage. Neither 2006-HE1, Wells Fargo or an agent acting on their behalf sent  a notice to the Plaintiff at least 45 days before September 4, 2013 in compliance with RIGL 34-27-3.1.  Wells Fargo had sent a notice to the Plaintiff in compliance with RIGL 34-27-3.1 prior to a previous attempt to foreclose.  However RIGL 34-27-3.1 requires that a new counseling notice be sent to a homeowner before any foreclosure.  Since 2006-HE1 is not the mortgagee, then Plaintiff has not been provided such a notice at least 45 days before September 4, 2013. Thus any alleged foreclosure was void and the actual mortgagee would have to restart the entire process due to lack of compliance with the provisions of RIGL 34-27-3.1.  The fact that no foreclosure deed has been executed since September 4, 2013 indicates that no compliance has been made with this section of the General Laws

## COUNT VII
## INJUNCTIVE RELIEF

93.    Paragraphs 1-92 are incorporated by reference.

94.    The Plaintiff requires a Mandatory Injunction and Preliminary Injunction against all defendants prohibiting them from commencing or continue an illegal foreclosure action of 2006-HE1 and from preparing or recording a foreclosure deed.

95.    2006-HE1 had no interest in the property, the mortgage, or note, and thus had no standing to foreclose upon the Plaintiff's mortgage or to enforce the note or to assign the mortgage or transfer the note.

96.    Plaintiff's property is assessed by the City of Providence Tax Assessor at the amount of $130,000.00. The original balance of the mortgage was $262,000.00.

97.    The Plaintiff is being irreparably harmed by the illegal collection actions of all the Defendants. Plaintiff has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed. The failure of the Defendants to comply with paragraph 22 of the mortgage and to commence the alleged foreclosure proceedings, without having the contractual ability to do so, demonstrates that the Plaintiff has a substantial likelihood of success. The void nature of the alleged assignments demonstrates that the Plaintiff has a substantial likelihood of success. The lack of compliance with RIGL 34-27-3.1 indicates that there is a high probability of success on the merits. Likewise the recording of a foreclosure deed following a defective foreclosure of the Plaintiff's property by a party not entitled to foreclose on the property will cause the Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by Defendants. Such relief sought by Plaintiff will not disserve the public interest if imposed.

99.    Plaintiff has incurred legal fees and costs for the prosecution of this action.

**WHEREFORE**, the Plaintiff prays that this Court:

A. Issue a Declaratory Judgment determining that the note and mortgage is not vested in 2006-HE1.

B. Issue a Declaratory Judgment that the two alleged assignments were invalid and void ab initio as a matter of law and that the alleged assignees in each alleged assignment did not exist and thus that the alleged assignments were nullities.

C. Issue a Declaratory Judgment that any foreclosure proceedings previously conducted against the Plaintiff have been invalid and void and that any costs and legal fees allegedly incurred by Defendants shall not be charged against the Plaintiff.

D. Preliminarily and permanently restrain and enjoin all of the Defendants from commencing any further foreclosure actions, executing or recording any foreclosure deed or taking any collection action against the Plaintiff.

E. Issue a Preliminary and Permanent Injunction against all of the Defendants from commencing any further collection action against the Plaintiff.

F. Preliminarily and Permanently Restrain and Enjoin 2006-HE1, and Wells Fargo from executing any further assignments of the original mortgage.

G. Issue a Declaratory Judgment that none of the alleged assignments of the mortgage referenced in this Complaint were made by a corporate officer with requisite corporate authority pursuant to law, and that they are void.

H. That the Plaintiff be awarded Compensatory and punitive damages, attorney fees and costs against all defendants jointly and severally for wrongful foreclosure and for creating fraudulent documents.

I.   That the Plaintiff be awarded damages for breach of contract and attorney fees pursuant to RIGL 9-1-45.

J.   That the Plaintiff be awarded statutory damages for each violation of the FDCPA along with legal fees and costs

K.   That this Court issue a Declaratory Judgment that neither Wells Fargo nor 2006-HE1 complied with the provisions of RIGL 34-27-3.1 and that as a result the alleged foreclosure was null and void.

L.   Award such other relief as this Court deems just and proper.



ERNESTINA GARCIA
By her Attorney

July 1, 2014

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
401-943-9230