UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ERNESTINA GARCIA,

       Plaintiff,

v.

HSBC BANK USA, NATIONAL
ASSOCIATION, AS TRUSTEE FOR HOME
EQUITY LOAN TRUST SERIES ACE 2006-
HE1, ALIAS, HSBC BANK USA, NATIONAL
ASSOCIATION, AS TRUSTEE FOR ACE
SECURITIES CORP. HOME EQUITY LOAN
TRUST, SERIES 2006-HE1, ASSET BACKED
PASS-THROUGH CERTIFICATES, ALIAS
WELLS FARGO BANK, N.A. ALIAS AND
JOHN DOE

       Defendants.

Civil Action No. 1:13-cv-00617-M-LDA

## MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANTS' MOTION TO DISMISS THE PLAINTIFF'S THIRD AMENDED COMPLAINT

NOW COMES the defendants, HSBC Bank, USA, National Association as Trustee for

ACE Securities Corp. Home Equity Loan Trust, Series 2006-HE1, Asset Backed Pass-Through

Certificates ("HSBC, as Trustee") (incorrectly identified by Plaintiff as HSBC Bank USA,

National Association, as trustee for Home Equity Loan Trust Series ACE 2006-HE1) and Wells

Fargo Bank, N.A. ("Wells Fargo") (collectively "Defendants") pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, moves to dismiss all claims asserted by Plaintiff, Ernestina

Garcia ("Plaintiff") in the Third Amended Complaint ("TAC"). Plaintiff's claims challenging

Defendants' exercise of the statutory power of sale and the validity of the mortgage assignments

fail as a matter of law. The misnomer of the trust in the assignment was an indefinite reference

which does not render the assignment void as a matter of law. As the assignment is not void, the

foreclosure of Plaintiff's property is valid.  All other claims resulting from an alleged invalid foreclosure fail.

## FACTS

1.      On November 10, 2005, Plaintiff Ernestina Garcia ("Plaintiff") executed a promissory note in the principal amount of $252,000 (the "Note") in favor of Fremont Investment & Loan. ("Fremont").

2.      As security for repayment of the Note, Plaintiff expressly granted Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Fremont Investment & Loan a mortgage (the "Mortgage") on the property located at 44 Union Avenue, Providence, Rhode Island (the "Property").  (TAC, at ¶¶ 1, 12, Exhibit A (Mortgage)).[1]

3.      On December 17, 2007, MERS assigned the Mortgage to "HSBC Bank U.S.A., National Association, as Trustee for Home Equity Loan Trust Series ACE 2006-HE1 (the "First Assignment").  (TAC, ¶ 20.  *See,* Assignment, attached as Exhibit B).

4.      On January 18, 2013, a corrective assignment was recorded into the correct name of the trust (the "Second Assignment").[2]  This assignment assigned the Mortgage from HSBC Bank U.S.A., National Association, as Trustee for Home Equity Loan Trust Series ACE 2006-HE1 to HSBC Bank, USA, National Association as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2006-HE1, Asset Backed Pass-Through Certificates.  (SAC, ¶ 27, see Second Assignment attached as Exhibit C).

---

[1] Defendants attach exhibits in support of their motion.  Specifically, Defendants attach a copy of the Mortgage, Assignments and a letter to Plaintiff.  The Court's consideration of these exhibits does not convert this motion to dismiss to one for summary judgment because these documents are integral to Plaintiff's claims and explicitly referenced in her Complaint.  *Clorox Co. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000) ("it is well-established that in reviewing the complaint, we may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.") (internal quotations omitted).
[2] The First and Second Assignment will collectively be referred to as "Assignments."

5.      On or about February 5, 2013, Wells Fargo sent a letter to the Plaintiff detailing the default under the Mortgage and her rights to cure.  (TAC, ¶ 46, see a true and accurate copy of the letter attached as <u>Exhibit D</u>).

6.      On or about September 13, 2013, HSBC, as Trustee claims to have conducted a foreclosure auction on the Property.  (TAC, ¶92).

STANDARD OF REVIEW

Under Rule 12(b)(6), the Court "accepts as true the well-pleaded factual allegations of the complaint and draws all reasonable inferences in favor of the plaintiff."  *Town of Johnston v. MERSCORP, Inc.*, No. 12-452-M, 2013 WL 3146771, at *2 (D.R.I. June 21, 2013).  Although well-pled facts are accepted as true, unsupported conclusions or interpretations of law are rejected.  *See id.* at *3.  To survive a motion to dismiss, therefore, a complaint "must allege 'a plausible entitlement to relief.'"  *Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)).  That is, the plaintiff must allege facts supporting "each material element necessary to sustain recovery under some actionable legal theory."  *Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003) (internal quotations omitted); *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) ("Plausible, of course, means something more than merely possible . . . .").

The Court must also dismiss the complaint because it fails to plead sufficient facts.  In *Twombly*, the Supreme Court retired the "no set of facts" standard and held that the "formulaic recitation of the elements of a cause of action" -- like those in the complaint -- "will not do." 550 U.S. at 555.  Instead, a Rule 8 short and plain statement of the facts must "possess enough heft to show that the pleader is entitled to relief."  *Id.* at 557.  That is, the "factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  Two years later, the Supreme Court reaffirmed *Twombly*.  The Court held that a complaint must state sufficient

3

facts to be "plausible on its face" and Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Supreme Court had complaints like this one in mind when it required plaintiffs to allege specific facts. This TAC is replete with conclusory allegations. Here, the TAC contains no facts to support those "allegations" and contradicts the express terms of the mortgage. The TAC is nothing "more than conclusions [that] are not entitled to the assumption of the trust." *Iqbal*, 556 U.S. at 679. Thus, the Court should dismiss the TAC.

<u>ARGUMENT</u>

Plaintiff's claims can be summarized as a request for a declaration under Rhode Island law that the (1) First Assignment of Plaintiff's Mortgage from MERS to HSBC is void, (2) the Second Assignment is also void, (3) none of the Defendants held Plaintiff's note, and (4) HSBC, as Trustee lacked authority to foreclose, and damages for miscellaneous violations under the Truth in Lending Act and the Real Estate Settlement Procedures Act. The TAC should be dismissed because it fails to state a claim under Rhode Island law.[3]

**A.** **<u>Plaintiff lacks standing to challenge the Assignments therefore Counts I and II must be dismissed.</u>**

Counts I and II relate to the Assignments of the Mortgage. Under Count I, Plaintiff seeks a declaratory judgment that the Assignments are void. Under Count II, Plaintiff seeks a declaratory judgment that there was no power of attorney for Wells Fargo to assign the Mortgage. Both arguments fail because Assignments validly transferred the interest in the Mortgage to HSBC, as Trustee.

---

[3] There is no Count V in the Third Amended Complaint.

### 1.  __Plaintiff's allegation regarding the deficiencies with the Assignments fails.__

Plaintiff fails to allege facts to render the Assignments void *ab initio*.[4] Rather, her allegations would only make the Assignments *voidable at the election of one of the parties to the contract*.[5] Neither MERS nor the Trust's trustee has disavowed the validity or effectiveness of the Assignments.  The narrow and limited standing granted to Rhode Island mortgagors under *Mruk, Culhane* and *Cosajay*, is the "right to challenge a <u>foreclosing entity's</u> status *qua* mortgagee." *Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 291 (1st Cir. 2013) (underlining added).  If successful, a challenge of this sort would be sufficient to refute an assignee's status *qua* mortgagee. *Id.*  By her own allegations, Plaintiff lacks standing to attack the Assignments.

When an "[a]ssignment [is] signed by a person without any authority to sign on behalf of MERS" at most, it is voidable by MERS or HSBC, as Trustee - but it is not void -- Plaintiff lacks standing to challenge an assignment on this basis under *Mruk* and *Culhane*.  "'[A] mortgagor does not have standing to challenge shortcomings in an assignment that render it merely voidable at the election of one party . . . .'" *Mruk v. Mortgage Elec. Registration Sys., Inc.*, 82 A.3d 527, 535-6 (R.I. 2013) quoting *Culhane*, 708 F.3d at 291(the "exception to the general rule precluding third-party standing to challenge a contract is narrow and confined to  . . . a mortgagor challenging an 'invalid, ineffective, or void' assignment").  Rhode Island law is clear that assignments are only voidable at the election of the parties to them. *Breggia v. Mortg. Elec. Registration Sys., Inc.*, 102 A.3d 636 (R.I. 2014).  Here, Plaintiff does not allege that either MERS or HSBC has voided the Assignments.

---

[4] *See Restatement (Second) of Contracts* § 7 ("[A] principal is free to affirm or disavow the unauthorized promises of its agent, and thus contracts entered into by the agent acting beyond the scope of his authority are not void but are voidable by the principal.")

[5] *See* 17A Am. Jur. 2d *Contracts* § 10 ("[A] voidable contract is valid and binding until it is avoided by the party who is entitled to avoid it.")

The First Circuit recently clarified the "void vs. voidable" distinction in *Wilson v. HSBC Mortgage Services, Inc.*, 744 F.3d 1 (1st Cir. 2014).[6]  "Void contracts or agreements are "those . . . that are of no effect whatsoever; such as are a mere nullity, and incapable of confirmation or ratification." *Id.* at *9 (internal quotation marks omitted).  "By contrast, voidable refers to a contract or agreement that is injurious to the rights of one party, which he may avoid at his election." *Id.* (internal quotation marks omitted).  "Thus, while the party injured by a voidable contract has the option of avoiding its obligations, it may choose instead to ratify the agreement and hold the other party to it." *Id.*

The First Circuit observed:  "As we are concerned with standing in this case, we do not take the Wilsons' conclusory characterization of their allegations as being about a 'void' assignment as gospel.   Instead, we review the materials before us, including the text of the 2009 Assignment, in light of Massachusetts law to determine whether the Wilsons' Complaint sets forth allegations that the 2009 Assignment is void, or merely voidable." *Id.* at *10. "The reasoning behind the Wilsons' argument" was that an employee of HSBC executed the assignment "as an employee of HSBC; therefore, MERS never assigned the mortgage to HSBC." *Id.* But "[t]he Wilsons' own Complaint . . . flatly contradict[d] this position, as it explicitly allege[d] that '[t]he March 19, 2009 assignment from MERS to [HSBC] was executed by Shelene Strauss, as Vice President of MERS.'  Thus, the Complaint actually allege[d] that Strauss wore multiple hats, serving both as an employee of HSBC and an officer of MERS." *Id.* at *11.  The First Circuit found it significant that "the Complaint [did] not allege that such dual agency violate[d] the common law or any statute or applicable regulation" and that "[a]ccordingly, the facts set forth in the Complaint actually describe[d] a valid assignment from

---

[6] The Rhode Island Supreme Court has held that "case law regarding the distinction between void and voidable contracts is consistent with the First Circuit's reasoning in *Wilson*." *Cruz v. Mortgage Elec. Registration Sys., Inc.*, ___ A.3d ___ , No. 2012-136-M.P., 2015 WL 159059, at *4 (R.I. Jan. 13, 2015).

MERS to HSBC." *Id*.  The First Circuit found "this defective pleading [was] likely enough on its own to doom" the Complaint, but it proceeded to consider the text of the 2009 Assignment, which clearly identified MERS as the assignor and HSBC as the assignee.  *Id*.  Therefore, the First Circuit held that the plaintiffs did not have standing to challenge the MERS assignment.  *Id*. at 14.

This Court has ruled on similar claims of alleged assignment defects.  See *Clark v. Mort. Elec. Registration Sys., Inc*., 7 F. Supp. 3d 169 (D.R.I. 2014); *Era v. Morton Cmty Bank*, 8 F. Supp. 3d 66 (D.R.I. 2014); *Lister v. Bank of America, N.A*., 8 F. Supp. 3d 74 (D.R.I. 2014).  It has ruled that a mortgagor lacks standing to challenge an assignment based on a signatory's lack of authority to assign, failure to record a power of attorney, or engaging in robo-signing.  *Clark*, 7 F. Supp. 3d 169, at 179-80.  This Court has also ruled that a mortgagor lacks standing to challenge MERS's failure to hold both the note and mortgage upon assignment.  *Id*.

**2.      The Plaintiff's claims under Count I fails because she has no standing to challenge the Assignments; they were only voidable.**

Plaintiff challenges MERS' ownership of the note and mortgage when it assigned the Mortgage.  (TAC, ¶21).  She alleges MERS was not acting as agent for the note holder nor did it own anything to assign.  (*Id*. at ¶¶ 21, 22).  Finally she alleges ACE 2006-HE1 did not exist.  (*Id*. at ¶¶22, 24-26).  Plaintiff's claims that MERS did not own the mortgage or had nothing to assign, fail.

A court must determine if the plaintiff has standing to challenge an assignment.  *Wilson* 744 F.3d at 9.  As discussed above, this determination hinges on whether the assignment is void or voidable.  *See id*.  In the "mortgage context, a void mortgage assignment is one in which the putative assignor 'never properly held the mortgage and, thus, had no interest to assign.' " *Id*. (citing *Culhane*, 708 F.3d at 291).  On the other hand, "a challenge to a mortgage assignment on

the ground that the assignor "never possessed a legally transferrable interest" alleges a void, as opposed to voidable, assignment." *Id* at 10. "The law contemplates distinctions between the legal interest in a mortgage and the beneficial interest in the underlying debt. These are distinct interests, and they may be held by different parties." *Culhane*, 708 F.3d at 291-94.

Plaintiff's allegation that 'ACE 2006-HE1' does not exist fails to state a claim because ACE 2006-HE1 was not the assignee. MERS assigned the Mortgage to HSBC Bank U.S.A., National Association, as Trustee. (See <u>Exhibit B</u>). Plaintiff does not challenge that HSBC Bank, U.S.A., is the Trustee. The actual name of the trust was "ACE Securities Corp. Home Equity Loan Trust, Series 2006-HE1, Asset Backed Pass-Through Certificates" rather than "Home Equity Loan Trust Series ACE 2006-HE1" as identified in the First Assignment. (See <u>Exhibit C</u>). But a minor misnomer of the trust's name is neither "substantial nor misleading." *Murray v. Schillace*, 658 A.2d 512, 514 (R.I. 1995).

Indeed, Plaintiff makes much of the fact that the First Assignment lists the name of the Trust as "Home Equity Loan Trust Series ACE 2006-HE1," instead of "ACE Securities Corp. Home Equity Loan Trust Series 2006-HE1." (*Id*. at ¶¶ 25, 59). The Massachusetts District Court confronted a similar challenge in *Payne v. U.S. Bank Nat. Ass'n*, No. 11-10786-GAO, 2013 WL 1282235 (D. Mass. Oct. 24, 2013).[7] There, as here, the plaintiff alleged that the assignment of her mortgage was invalid because it failed to correctly set forth the correct name of the assignee trust in the instrument of assignment. The defendant trustee bank brought a motion to dismiss. The court held that "even if the plaintiff's contention were correct, she fails

---

[7] Rhode Island courts often look to Massachusetts jurisprudence for guidance in foreclosure cases, as both are non-judicial foreclosure states with nearly identical statutes governing the statutory power of sale. *See Cosajay v. MERS*, 980 F. Supp. 2d 238, 241-3 (D.R.I. 2013) ("[T]he Court finds that Rhode Island law provides the same protection to mortgagors in the same situations in which the First Circuit found the *Culhane* and *Woods* plaintiffs under Massachusetts law.")

to state a claim [under the "void" versus "voidable" distinction of *Culhane*] because such a shortcoming would not void the assignment." *Id.* at *2.

Plaintiff pleads that Wells Fargo assigned the Second Assignment to HSBC Bank, USA, National Association as trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2006-HE1, Asset Backed Pass-Through Certificates. (TAC, ¶28; see also <u>Exhibit C</u>). This is incorrect. HSBC was the assignor and Wells Fargo was the attorney-in-fact. (<u>Exhibit C</u>). Plaintiff alleges that '2006-HE1' could not assign the Mortgage to '2006-HE1' as it did not own an interest. (TAC, ¶30). She also alleges 2006-HE1 did not exist on January 18, 2013. (*Id*. at 31). These arguments fail as 2006-HE1 did not assign any interest. HSBC assigned it. (See <u>Exhibit C</u>). As stated above, at most, this would make the Second Assignment voidable at the election of the parties to the assignment.

Plaintiff pleads no facts to show how the Assignments was substantially misleading. She ignores that HSBC was the trustee in both the First Assignment and the Second Assignment.[8] Again, this would make the Assignments voidable under *Wilson* and *Culhane*. Plaintiff has not plead that MERS or HSBC rejected the validity or effectiveness of the Assignments (nor could she consistent with Rule 11). Plaintiff has no standing to challenge this.

Further, Plaintiff lacks standing to challenge the pooling and servicing agreement. *See Fryzel v. Mortgage Elec. Registration Sys., Inc.*, No. CA 10-352 M, 2011 WL 9210454, at *11 (D.R.I. June 10, 2011) ("[I]t is undisputed that Plaintiffs are not parties to the assignment agreements or to the PSA. Thus, Plaintiffs do not have standing to assert legal rights based on these documents.").

---

[8] There is no dispute that HSBC, FDIC No. 57890,  was in existence at the time of the First Assignment. *See* <u>http://research.fdic.gov/bankfind/detail.html?bank=57890&name=HSBC%20Bank%20USA,%20National%20Association&searchName=HSBC%20BANK%20USA,%20NATIONAL%20ASSOCIATION&searchFdic=&city=&state=&zip=&address=&tabId=1</u> ("Status: Active ● Insured Since July 1, 2004")

The Court should dismiss Count I.

**3.      Count II fails because no facts are plead to support a claim that the power of attorney in the Second Assignment was invalid.**

Count II alleges that "[a] title search of the Providence Land Records since August 31, 2004 indicates that HSBC Bank U.S.A. National Association as trustee for Home Equity Loan Trust Series ACE 2006-HE1 has never granted a power of attorney to Wells Fargo, which was recorded in the Providence Land Records . . . ."  (TAC, ¶ 42).  Rhode Island's power of attorney statute does not require a power of attorney to be recorded."  *Lister* 8 F.Supp.3d at 81-2.  Wells Fargo executed the Second Assignment "as their attorney-in-fact" for "HSBC Bank, USA, National Association, as trustee for Home Equity Loan Trust Series ACE 2006-HE1."  *See* Second Assignment, Exhibit C).  Even if there indeed was no valid power of attorney, which Defendants deny, that inference would merely make it voidable, not void, which Plaintiff would lack standing to challenge.  *See Wilson*, 744 F.3d at 9-10.

The Court should dismiss Count II.

**B.      HSBC, as Trustee properly sent Plaintiff a default letter as required under Paragraph 22 of the Mortgage, therefore Count III must be dismissed.**

In Count III, Plaintiff alleges that ". . . [n]o entity accelerated the Plaintiff's mortgage or the note" and thus "no entity was contractually authorized to exercise the statutory power of sale and foreclose on the Plaintiff's property."  (TAC, ¶¶ 62, 64).  She asserts that "[t]his action constituted a breach of contract, resulting in damages to the Plaintiff, by having to hire an attorney to commence this case."  (*Id.*).

To support her claim, Plaintiff alleges that she never received any *valid* default letter from the owner of the note and the mortgage or an agent indicating that it was acting on behalf of the lender or the owner of the note and the mortgage.  (*Id.* at ¶ 47).  In the preceding paragraph, Plaintiff admits she received a default letter from ". . . Wells Fargo, using the name of America's

10

Servicing Company," on or about February 5, 2013.  (*Id*. at ¶ 46).  She contends in Count III that this letter was deficient because, she claims, it did not comply with paragraph 22 of the Mortgage.  She asserts:  "Paragraph 22 of the mortgage provides that the Lender must send a notice of default which contains specific language as a condition precedent to acceleration and sale" (*Id. at* ¶ 48) and that "[n]one of the provisions of paragraph 22 of the mortgage were complied with before an acceleration of the loan was declared.  In fact no acceleration was ever declared," (*Id. at* ¶ 50).

Plaintiff is wrong.  The default letter complies with all the requirements of paragraph 22 of the Mortgage.  The first sentence tells Plaintiff she is in default.  (*See* <u>Exhibit D</u>, pg. 1).  In the same paragraph, the letter informs Plaintiff of the amount needed to cure the default.  (*Id*).  In the second paragraph, the letter informs Plaintiff she has until March 26, 2013 to cure the default. (*Id*).

Plaintiff asserts the default letter does not set out the amount needed to cure the default, in breach of Paragraph 22 of the Mortgage.  (TAC, ¶ 52).  But it does.  As Count III recognizes, "[t]his letter specified an amount due of $164,719.35 as of February 5, 2013." (*Id.*. ¶ 53.  *See also* <u>Exhibit D</u>, pg. 1).  Plaintiff complains that the letter "did not indicate a specific amount due, which had to be paid on or before March 26, 2013, which was the date that it specified as the date by which the alleged arrearage had to be cured." (TAC, ¶ 53).  But, under Paragraph 22 of the Mortgage, it did not have to.  Loan balances may change daily.  As Count III further recognizes, "[t]his letter indicated that the Plaintiff 'must pay this amount plus any additional monthly payments, late charges and other charges that may be due under applicable law after the date of this notice and on or before March 26, 2013." (*Id*. ¶ 54;  *See also* <u>Exhibit D</u>, pg. 1).

She further alleges that the "letter did not indicate that a sale of the property could occur and only indicated that Americas' Servicing Company may take steps to terminate Plaintiff's ownership in the property by a foreclosure proceeding," which involves a judicial foreclosure . . . which is not permitted under Rhode Island law" may occur. (*Id. at* ¶¶ 57-58). But the letter states that: "Unless the payment on your loan can be brought current by 3/26/2013, it will become necessary to accelerate your Mortgage Note and pursue the remedies provided for in your Mortgage or Deed of Trust." (Exhibit D at pg. 1). It further states that: "If funds are not received by the above referenced date, we will proceed with acceleration. Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the home or pursue any other remedy permitted under the terms of your Mortgage." The letter complies with the requirements of Paragraph 22 of the Mortgage to "specify . . . that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property." (*See* TAC, ¶ 51).

Plaintiff also claims that "[t]his letter did not inform the Plaintiff of the right to reinstate after acceleration." (TAC, ¶ 59). She asserts, "[r]ather, it stated that 'You have the right to reinstate your Mortgage Note and Mortgage or Deed of Trust after acceleration. However, any future negotiations attempting to reinstate your loan or payment of less than the full amount due shall not require America's Servicing Co.'s waiver of acceleration unless otherwise agreed to, in writing by America's Servicing Co.'" (*Id.*). She alleges that "[t]his failure to comply with the terms of the mortgage suggested that the Plaintiff could not reinstate the loan without paying the entire amount of the mortgage." (*Id.*). The letter actually discusses two time periods. It states: "To avoid the possibility of acceleration, you must pay this amount [Total Delinquency as of

12

2/5/2013   $164,719.35] plus any additional monthly late payments, late charges and other

charges that may be due under applicable law after the date of this notice and on or before

3/26/2013 . . . ."  (Exhibit D. at pg. 1).  3/26/2013 is the letter's designated acceleration date.

The letter provides that "[i]f funds are not received by the above referenced date [of 3/26/2013],

we will proceed with acceleration."  (*Id.*).  After acceleration, the entire loan balance is due, *i.e.*,

the letter informs Plaintiff that after the loan has been accelerated, she must pay the entire

amount of the mortgage.  This is compliant with Paragraph 22 of the Mortgage, which states in

pertinent part:  "If the default is not cured on or before the date specified in the notice, Lender at

its option may require immediate payment in full of all sums secured by this Security Instrument

without further demand . . . ."  (*See* TAC, ¶ 51).

     Finally, in Count III Plaintiff contends that she was not "sent . . . any notice after

February 5, 2013, which accelerated the note or the mortgage."  (TAC, ¶ 60).  But as quoted

above, Paragraph 22 of the Mortgage provides in pertinent part that:  "If the default is not cured

on or before the date specified in the notice, Lender at its option may require immediate payment

in full of all sums secured by this Security Instrument *without further demand . . . .*"  (*See* TAC,

¶ 51 (emphasis added)).

     The Court should dismiss Count III.

## C.   <u>Count IV fails Because Defendants properly complied with R.I.G.L. 34-27-3.1.</u>

     In Count IV, Plaintiff seeks a declaratory judgment that any alleged foreclosure sale was

void for non-compliance with R.I.G.L. 34-27-3.1.[9]  This Rhode Island statute requires that "[n]o

less than forty-five (45) days prior to initiating any foreclosure of real estate pursuant to

subsection 34-27-4(b), the mortgagee shall provide to an individual consumer mortgagor written

notice of default and the mortgagee's right to foreclose by first class mail . . . ."  *Id*. at 34-27-

---

[9] R.I.G.L. 34-27-3.1 was repealed by P.L. 2014, ch. 543, § 2, effective Oct. 6, 2014.

3.1(a).  The notice must, in English and Spanish, "advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies and, the toll-free number and website address maintained to provide information regarding no-cost HUD-approved mortgage counseling agencies in Rhode Island" and any information required by federal law.  *Id.* at 34-27-3.1(b).

Plaintiff pleads that "[o]n or about February 5, 2013, America's Servicing Company sent a notice to the Plaintiff, which purported to notify her of her rights under R.I.G.L. § 34-27-3.1." (TAC, ¶ 70).  She claims that it is was allegedly "sent by Wells Fargo on behalf of the non-existent entity, Defendant, 2006-HE1 Certificates." (*Id*. at ¶ 71).  She asserts that "this letter did not identify the mortgagee or the entity on whose behalf the letter was sent."  (*Id*. at ¶ 73).

But the letter did provide the required information.  It states:  "Mortgagee: <u>HSBC Bank U.S.A., National Association, as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2006-HE1, Asset Backed Pass-Through Certificates</u>" at "Mortgagee Address:" of 2929 Walden Avenue, Depew, NY 14043.  (<u>Exhibit D</u> at pg. 4 (emphasis in original)).  And it identifies the "Mortgagee Authorized Representative: <u>America's Servicing Company</u>" with "Contact Information for Mortgagee Authorized Representative:  Telephone: <u>1-800-662-3806.</u> Email: <u>HousingAssistance@wellsfargo.com</u>" under a cover page which stated an address for America's Servicing Company of 4101 Wiseman Blvd, MAC T7408-01G, San Antonio, TX 78251. (*Id*. at pgs. 3-4).  The letter fully complied with R.I.G.L. 34-27-3.1 as it was in both English and Spanish, and set out how to contact the HUD approved mortgage counseling services.

Plaintiff also alleges a second violation of R.I.G.L. 34-27-3.1,  claiming that the failure to send another compliant R.I.G.L. 34-27-3.1 letter for a new sale date, after the first foreclosure

sale date was postponed, renders the foreclosure sale void.  (TAC, ¶¶ 86-87).[10]  But R.I.G.L. 34-27-3.1 does not require more than one notice to comply with that provision; only one must be sent.

Finally, Plaintiff alleges in Count IV that no additional advertising took place for Plaintiff's September 13, 2013 foreclosure sale, after Wells Fargo's foreclosure "attorney, Harmon Law Offices, P.C., postponed the sale to September 11, 2013 but did not adjourn the sale." (TAC, ¶ 88).  She seeks relief for this as an alleged violation of R.I.G.L. 34-27-3.1 that "No advertising of the subsequent continuance to September 13, 2013 was published in the Providence Journal." (*Id*.)  However, R.I.G.L. 34-27-3.1 does not mandate any advertising.

The Court should dismiss Count IV.

### D.   Plaintiff has failed to state a claim that HSBC, as Trustee failed to comply with R.I.G.L. 34-11-22, therefore Count VII[11] should be dismissed.

R.I.G.L. 34-11-22 is the Rhode Island "statutory power of sale" which "may be incorporated in any mortgage by reference[.]"  *Id.*  Plaintiff alleges that because the foreclosure was postponed rather than adjourned, the sale was invalid.  (TAC, ¶ 91).  R.I.G.L. 34-11-22 provides that if a foreclosure sale is continued, the continued date must be noticed and advertised.  *McGovern v. Bank of America., N.A.*, 91 A.3d 853, 859 (R.I. 2014).  Plaintiff pleads that the continued foreclosure sale date of September 11, 2013 was advertised in the Providence Journal.  (TAC, ¶ 91).  Plaintiff further pleads that Harmon Law Offices, P.C. appeared at the Property on September 11, 2013 and postponed the foreclosure to September 13, 2013.  (*Id*. at ¶92).  The TAC claims this is a violation of R.I.G.L. 34-11-22.  It is not.

---

[10] In the middle of these allegations, Plaintiff alleges that a July 12, 2013 notice from Harmon Law Offices, P.C., "included a notice pursuant to R.I.G.L. § 34-27-4(b), which purported to initiate a new foreclosure, even though the note and mortgage had not been accelerated."  (TAC, ¶ 84).  Pursuant to the terms of America's Servicing Company's February 5, 2013 letter and per Paragraph 22 of the Mortgage, the Note and Mortgage were accelerated without further notice when Plaintiff failed to reinstate the loan on or before March 26, 2013.

[11] There is no Count V or VI in the TAC.

"[I]f the sale is adjourned as provided in Rhode Island general laws § 34-11-22, and the adjourned sale is held during the same calendar week as the originally scheduled day of sale, *no additional advertising is required*."  R.I.G.L. § 34-27-4(a) (emphasis added).  Under Plaintiff's allegations, the sale was continued two (2) additional days in the same calendar week.  Accordingly, no additional advertising was required.

The only other allegation of Count VII is that no one appeared at the September 13, 2013 auction to "bid at the alleged sale on behalf of any party."  (TAC, ¶ 93).  Plaintiff does not state what provision of Rhode Island law she believes that Defendants violated, and Defendants are aware of no provision requiring a bidder to be physically present at the foreclosure sale.

The Court should dismiss Count VII.

**E.**     **Count VIII must be dismissed because there are no violations of TILA plead against any of the Defendants.**

In Count VIII, ". . . Plaintiff seeks the remedies provided in TILA [the Truth in Lending Act] for Defendants' failure to respond [to] a request for the identity of the owner and holder of Plaintiff's mortgage loan as required by 15 U.S.C. § 1641(f) and 1641(g), respectively."  (TAC, ¶ 97).  She asserts that "[o]n or about June 9, 2014 Plaintiff, by her attorney, mailed a letter to Wells Fargo requesting the name of the owner of the Mortgage Note and clearly alerting Defendant to the fact that her request was being made pursuant to TILA, 15 U.S.C. § 1641 [sic.]."  (*Id*. at ¶ 105).  She claims that "Wells Fargo and John Doe did not respond within 10 business days . . . as required thus violating 15 U.S.C. § 1641(f) . . . ."  She demands "statutory damages of at least $4,000.00, plus actual damages, plus attorney fees and costs."  (*Id*. at Wherefore clause).

Section 1641(f) ("'Servicer' defined") merely defines what a servicer is under TILA, providing that "the term 'servicer' has the same meaning as in section 2605(i)(2) of Title 12 --

RESPA.  Section 1641(a) provides that, with certain enumerated exceptions, "any civil action for a violation of this subchapter or proceeding under section 1607 of this title which may be brought against a credit may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement . . . ."  15 U.S.C. § 1641(a).  Section 1641(g) requires that "[i]n addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including --" certain specified information.  No provision in Section 1641 (TILA) requires a creditor, or creditor's servicer (or anyone) to respond to a borrower's request for the name of the owner of the Mortgage Note.  The Court should dismiss Count VIII.

Finally, the TAC asserts that the servicer is Wells Fargo (America's Servicing Company).  All other defendants should be dismissed from Count VIII on this ground alone.

**F.      Count IX should be dismissed because Plaintiff has not pled an actionable violation of 12 C.F.R. 1026.41 or 15 U.S.C. 1638**

In Count IX, Plaintiff seeks damages under the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") because she "has not been sent a monthly (mortgage) statement since September, 2013, despite no valid foreclosure having occurred."  (TAC ¶¶110, 119).  Defendants incorporate all arguments made herein regarding why the September 2013 foreclosure sale was in fact valid.  12 C.F.R. 1026.41(a)(2) requires a servicer to provide "the consumer, *for each billing cycle*, a periodic statement . . . ." (emphasis added).  There is no requirement under 12 C.F.R. 1026.41 to provide biling statements after the owner of the loan has foreclosed on the property.

G.     **Count X should be dismissed because the foreclosure did not rise to a violation of the FDCPA.**

In Count X of the Complaint, Plaintiff seeks to bring a claim against Wells Fargo under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*  She alleges that Wells Fargo violated the FDCPA on 7 enumerated "occasions since September 3, 2012 despite knowing that she was represented by an attorney during this time" by sending her letters, through its foreclosure counsel, Harmon Law Offices, P.C. ("Harmon Law").  (TAC, ¶¶ 127, 128). Specifically, Plaintiff claims that Wells Fargo, "through its attorney Harmon Law Offices, P.C.," sent Plaintiff 7 letters between April 2, 2013 and September 27, 2013 which "threatened to commence and . . . claimed to have commenced a non-judicial foreclosure to effect disposition of the Plaintiff of her property even though the non-existent 2006-HE1 Certificates had no present right to possession of the property claimed as collateral through an enforceable security interest." (TAC, ¶ 128).  Plaintiff alleges Harmon Law sent notices "even though it had no contractual or statutory ability to conduct such a sale."  (TAC, ¶ 128(a)).

The FDCPA does not regulate or impose liability upon persons engaging in non-judicial foreclosures.  "Under Section 1692a, 'debt collector' is defined as 'any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'"  *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 361 (D. Conn. 2012) (quoting 15 U.S.C. § 1692a(6)).  "In addition, Section 1692a(6) 'places limits' on the term 'debt collector' by providing that '[t]he term does not include' six specific classes of debt collectors.  Law firms who initiate foreclosures of mortgages on real property are not included among the *six excluded* classes.'"  *Id.* (brackets added by court) (quoting *Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*, No. 06-

18

3103(RHK/AJB), 2007 WL 2695795, at *3 (D. Minn. Sept. 12, 2007) (quoting 15 U.S.C. § 1692a(6)) (emphasis in original).  "Lastly, Section 1692a(6) states that 'for the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the *enforcement of security interests*.'"  *Id.* (quoting 15 U.S.C. § 1692a(6)) (emphasis added).  "Since Section 1692a(6) expressly includes enforcers of security interests only in reference to Section 1692f(6), courts have held that an enforcer of security interest is therefore not a debt collector for purposes of the other sections of the FDCPA."  *Id.*  Because "'the statute specifically says that a person in the business of enforcing security interests is a 'debt collector' for the purposes of § 1692f(6)' that 'reasonably suggests that such a person is not a debt collector for purposes of the other sections of the Act.'"  *Id.* at 361-62 (quoting *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458, 460 (11th Cir. 2009)).  "The Eleventh Circuit explained that this conclusion was in line with the interpretive cannon of '*expressio unius est exclusion alterius*, which provides that the expression of one thing implies the exclusion of another.'"  *Id.* at 362 (quoting *Warren*, 342 Fed. Appx. at 460) (internal quotation marks and citation omitted).

"[T]he purposeful inclusion of enforcers of security interests for one section of the FDCPA implies that the term debt collector does not include an enforcer of security interests for any other sections of the FDCPA."  *Id.* (citing *Montgomery v. Huntington Bank*, 346 F.3d 693, 700-01 (6th Cir. 2003)).  "The Sixth Circuit's decision in *Montgomery* adopted the reasoning of *Jordan v. Kent Recovery Servs., Inc.*, 731 F.Supp. 652, 656 (D.Del.1990)."  *Id.*  "In *Jordan*, the court examined the plain meaning of the FDCPA, canons of statutory construction, and relevant legislative history in coming to its conclusion that although Congress included within the

19

definition of 'debt collectors' those who enforce security interests, it limited that definition to the provisions of Section 1692f(6)." *Id*. (citing *Jordan*, 731 F. Supp. 2d at 657).

"The *Jordan* court explained that 'where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion' and therefore it appeared that Congress intended an enforcer of a security interest to fall outside the ambit of the FDCPA except for the provisions of § 1692f(6).'" *Id*. (quoting *Jordan*, 731 F. Supp. 2d at 657) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).  "The *Jordan* court further indicated that § 1692f(6) when viewed in conjunction with the FDCPA's legislative history 'provides the key to understanding the reason Congress drew a distinction between a debt collector and an enforcer of a security interest.'" *Id*. (quoting *Jordan*, 731 F. Supp. 2d at 658).  "It explained that the 'FDCPA was enacted in order to prevent the 'suffering and anguish' which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have.'" *Id*. (quoting *Jordan*, 731 F. Supp. 2d at 658) (citation omitted):

> In contrast to a debt collector, an enforcer of a security interest with a 'present right' to a piece of secured property attempts to retrieve something which another person possesses but which the holder of the security interest still owns. Unlike the debtor who lacks the money sought, the possessor of secured property still has control of the property. Any failure to return the property to the rightful owner occurs not through misfortune but through a deliberate decision by the present possessor to avoid returning the property. Accordingly, the evil sought to be regulated by the FDCPA, i.e., harassing attempts to collect money which the debtor does not have due to misfortune, is not implicated by the actions of an enforcer of a security interest with a 'present right' to the secured property. Thus the legislative history confirms that Congress intended an enforcer of a security interest . . . to fall outside the ambit of the FDCPA for all purposes except for the prohibitions described in § 1692f(6).

*Id*. (quoting *Jordan*, 731 F. Supp. 2d at 658).  "The *Jordan* Court also noted that the Federal Trade Commission ('FTC'), who is empowered by Congress to enforce the FDCPA issued a 'Commentary on the Fair Debt Collection Practices Act' in which the FTC expressed its view

that enforcers of security interests only fall within the ambit of § 1692f(6)." *Id.* (citing *Jordan*, 731 F. Supp. 2d at 658).

Thus, "the legislative history, plain meaning, statutory construction, and the FTC's guidance [all] support the conclusion that an enforcer of a security interest is only subject to § 1692f(6) and not to any other section of the FDCPA." *Id.* at 362-63.

Section 1692f(6)(A)(B) provides that "[t]aking or threatening to take any non-judicial action to effect disposition or disablement of property" violates the FDCPA "if" and only if "there is no present right to possession of the property claimed as collateral through an enforceable security interest" or "there is no present intention to take possession of the property."

Plaintiff alleges "Wells Fargo has threatened to commence and has claimed to have commenced a non-judicial foreclosure . . . even though the non-existent 2006-HE1 Certificates had no present right to possession of the property claimed as collateral through an enforceable security interest." (TAC, ¶ 128). Wells Fargo has established in its briefing above that Wells Fargo possessed the right to possession of the property claimed through an enforceable security interest at the time it foreclosed. Accordingly, this claim, the only claim Plaintiff may try to bring against Wells Fargo as an FDCPA violation, fails. *See Speleos v. BAC Home Loans Servicing, L.P.*, 824 F. Supp. 2d 226, 232 (D. Mass. 2011) (The court found that the foreclosing entity did not violate the FDCPA where it had the right to commence a non-judicial foreclosure); *see also; Fleming v. U.S. Bank Nat. Ass'n*, No. CIV. 14-3446 DSD/JSM, 2015 WL 505758, at *3 (D. Minn. Feb. 6, 2015) ("US Bank was entitled to foreclose on the property as the assignee of the mortgage. As a result, the attempted foreclosure cannot be an abusive or deceptive practice prohibited by the FDCPA.").

Plaintiff makes two other allegations, neither of which may be maintained regarding a non-judicial foreclosure.  Plaintiff claims that "[i]n violation of the FDCPA, representatives of Wells Fargo contacted the Plaintiff on [7] occasions since September 3, 2012, despite knowing that she was represented by an attorney during this time . . . [in] violation[] of the provisions of 15 U.S.C. § 1692(b)(6)."  (SAC, ¶ 99.)  Plaintiff also asserts that "Wells Fargo also violated 1692e of the FDCPA by using false deceptive and misleading representations or means in connection with the collection of this alleged debt." (*Id*. at ¶ 130)  Specifically, she alleges that Wells Fargo made false representations about the amount and character of the debt.  *Id.*

As discussed, "an enforcer of a security interest is only subject to § 1692f(6) and not to any other section of the FDCPA." *Derisme*, 880 F. Supp. 2d at 362-63.  Sections 1692(b)(6) and 1692(e) are not within Section 1692(f)(6) -- they are other sections of the FDCPA.  Wells Fargo is not subject to liability for these claims.

Count X should be dismissed.

**H.**     **Plaintiff pleads no facts to show a violation of Regulation X or Regulation Z nor does she adequately plead any damages.**

Plaintiff makes the same claim in Count XI that she asserts in Count VIII, except she cites to RESPA and an implementing regulation of the Consumer Financial Protection Bureau which became effective on January 10, 2014, 12 C.F.R. § 1024.36 (Regulation X), and she seeks damages for a number of additional alleged request for information and dispute letters.  She also cites to the Truth in Lending Act (Regulation Z), but never explains how it applies to her case.

Additionally, in a transparent attempt to manufacture a pattern or practice claim, Plaintiff launched multiple barrages of individual requests and disputes, each in separate letters.  She sent four purported requests for information on April 17, 2014.  (TAC at ¶¶ 145, 177, 210, 240).  She sent eight additional requests for information on June 3, 2014.  (*Id* at ¶¶265, 286, 305, 324, 372,

391, 410, 524).   She then sent five additional notices six days later, on June 9, 2014.  (*Id.* at ¶¶153, 186, 216, 257, 343).  Plaintiff sent one purported request for information to Wells Fargo on July 24, 2014  (*Id.* at ¶486) Plaintiff then sent four purported requests for information on September 22, 2014. (*Id.* at ¶¶428, 447, 467, 505)

Most recently, during a four day period in August 2015, Plaintiff sent **seventeen** distinct notices of error to Wells Fargo: three on August 3, 2015 (*Id.* at ¶¶165, 198, 228); eight on August 4, 2015.  (*Id.* at ¶¶274, 293, 312, 331, 379, 398, 416, 532 ); one on August 5, 2015  (*Id.* at ¶¶493);  one on August 6, 2015  (*Id.* at ¶¶362); and  six on August 7, 2015 (*Id.* at  ¶¶247, 350, 435, 454, 474, 512).

A chart of the requests and disputes follows:

| TAC Paragraphs | Date Sent | Date Received | Information Requested / Dispute |
|---|---|---|---|
| 148, 151 | 4/17/14 | 4/21/14 | Request for life of the loan transactional history |
| 180, 182 | 4/17/14 | 4/21/14 | Request for all available loss mitigation options |
| 212, 213 | 4/17/14 | 4/21/14 | Request for identity, address and other relevant contact information for the owner or assignee of Plaintiff's Mortgage Note |
| 242, 243 | 4/17/14 | 4/21/14 | Request for information "relating to the plaintiff's mortgage loan account." |
| 267, 268 | 6/3/14 | 6/13/14 | Request for all records of Escrow Advances charged to Plaintiff's mortgage loan account |
| 288, 289 | 6/3/14 | 6/13/14 | Request for records of all Statutory Mailing Fees charged to Plaintiff's mortgage loan account |
| 307, 308 | 6/3/14 | 6/13/14 | Request for records of all the Forced Place Insurance Fees charged to Plaintiff's mortgage loan account. |
| 326, 327 | 6/3/14 | 6/13/14 | Request for records of the Title Report Fees charged to Plaintiff's mortgage loan account. |
| 374, 375 | 6/3/14 | 6/13/14 | Request for records of all Property Valuation Fees charged to Plaintiff's mortgage loan account. |
| 393, 394 | 6/3/14 | 6/13/14 | Request for records of all the BPO/Appraisal Fees charged to Plaintiff's mortgage loan account. |
| 412, 413 | 6/3/14 | 6/13/14 | Request for records of all the Motion for Relief Cost Fees charged to Plaintiff's mortgage loan |

| | | | |
|---|---|---|---|
| | | | account. |
| 526, 527 | 6/3/14 | 6/13/14 | Request for Sale Publication Fee charged to Plaintiff's mortgage loan account. |
| 155, 156 | 6/9/14 | 6/15/14 | Notice of error referencing a request for information that had requested the complete life of the loan transactional history statement of Plaintiff's mortgage account, which had not been provided |
| 188, 189 | 6/9/14 | 6/15/14 | Notice of error referencing a request for information requesting all loss mitigation options available to Plaintiff |
| 218, 219 | 6/9/14 | 6/15/14 | Notice of error referencing a request for information that had requested the identity and address of the current owner and assginee of Plaintiff's Mortgage Note |
| 259, 260 | 6/9/14 | 6/15/14 | Request for all Property Inspection fees |
| 345, 346 | 6/9/14 | 6/15/14 | Request for records of all the Legal Fees |
| 488, 489 | 7/24/14 | 7/27/14 | Request for Recordings in the Servicing File |
| 430, 431 | 9/22/14 | 9/26/14 | Request for Reinstatement Statement |
| 449, 450 | 9/22/14 | 9/26/14 | Request for Payoff Balance |
| 469, 470 | 9/22/14 | 9/26/14 | Request for Itemized Payoff Balance |
| 507, 508 | 9/22/14 | 9/26/14 | Request for Servicing File |
| 167, 168 | 8/3/15 | 8/6/15 | Notice of error referencing a request for information for the life of the loan transaction history |
| 200, 201 | 8/3/15 | 8/10/15 | Notice of error referencing a request for information for all loss mitigation options. |
| 230, 231 | 8/3/15 | 8/6/15 | Notice of error referencing request for identify of and address and other relevant contact information for owner or assignee of the Plaintiff's mortgage note |
| 276, 277 | 8/4/15 | 8/10/15 | Notice of error referencing request for all records of escrow advances |
| 295, 296 | 8/4/15 | 8/10/15 | Notice of error referencing request for all records of statutory mailing |
| 314, 315 | 8/4/15 | 8/10/15 | Notice of error referencing request for all records of Forced Place Insurance Fees |
| 333, 334 | 8/4/15 | 8/10/15 | Notice of error referencing request for Title Report Fees |

| 381, 382 | 8/4/15 | 8/10/15 | Notice of error referencing request for all Property Valuation Fees |
| 400, 401 | 8/4/15 | 8/10/15 | Notice of error referencing request for all BPO/Appraisal Fees |
| 418, 419 | 8/4/15 | 8/10/15 | Notice of error referencing request for all records of Escrow Advances |
| 534, 535 | 8/4/15 | 8/11/15 | Notice of error referencing request for Sale Publication Fee |
| 495, 496 | 8/5/15 | 8/10/15 | Notice of error referencing request for Recordings in Servicing File |
| 364, 365 | 8/6/15 | 8/10/15 | Notice of error referencing request for records of all Legal Fees |
| 249, 250 | 8/7/15 | 8/10/15 | Notice of error referencing request for information relating to Plaintiff's mortgage loan account |
| 352, 353 | 8/7/15 | 8/10/15 | Notice of error referencing request for all records of Legal Fees |
| 437, 438 | 8/7/15 | 8/10/15 | Notice of error referencing request for Reinstatement Statement |
| 456, 457 | 8/7/15 | 8/10/15 | Notice of error referencing request for Payoff Balance within 7 business days |
| 476, 477 | 8/7/15 | 8/10/15 | Notice of error referencing request for Itemized Payoff Statements within 7 business days |
| 514, 515 | 8/7/15 | 8/10/15 | Notice of error referencing request for Servicing File |

Plaintiff sent multiple, harassing requests over multiple dates. There is no explanation why one (1) request was not sent. Some of the requests were duplicative (e.g. sale publication fees, value of the property fees), irrelevant (e.g. loss mitigation after the foreclosure sale had occurred) and overbroad (e.g. information "relating to the plaintiff's mortgage loan account."). "RESPA exists to prevent abuse of borrowers by servicers—not to enable abuse of servicers by borrowers." *Hittle v. Residential Funding Corp.*, No. 2:13-CV-353, 2014 WL 3845802, at *12 (S.D. Ohio Aug. 5, 2014). Overbroad and irrelevant requests are not a valid QWR under RESPA. *Sheely v. Bank of Am.*, N.A., No. 1:14-CV-441-TCB, 2014 WL 3893019, at *4 (N.D. Ga. Aug. 11, 2014).

Nor are Plaintiff's alleged error notices actually error notices within the meaning of RESPA. "Error" is a defined term in the Bureau's regulation. *See* 12 C.F.R. §1024.35(b). And

25

only "covered errors" may be asserted as RESPA violations.  *Id.*; *see also id.* at § 1024.35(a).  A servicer's failure to provide a response to a purported notice of error which asserts that a servicer failed to provide a timely response to a QWR in accordance with RESPA is not a "covered error."  The servicer's duty, if any, to provide a response to an information request arises from RESPA, not from the servicer's servicing of a borrower's mortgage loan.

Further, to satisfy the damages element of his RESPA claim, a plaintiff must show that he suffered actual or statutory damages.  *Gorbaty v. Wells Fargo Bank, N.A.*, Nos. 10–cv–3291, 10–cv–3354, 2012 WL 1372260, at *5 (E.D.N.Y. Apr. 18, 2012) (Section 2605 allows for "(1) 'actual damages to the borrower as a result of the failure' to comply with § 2605; or (2) statutory damages 'in the case of a pattern or practice of noncompliance with the requirements' of § 2605.9 12 U.S.C. § 2605(f)") (quoting 12 U.S.C. § 2605(f)).

Section 2605(f) allows for statutory damages "as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000."  Plaintiff  has not pled a pattern or practice of noncompliance with the requirements of Section 2605.

To prevail, on his theory of actual damages, a plaintiff must establish that he personally suffered "actual, demonstrable damages."  *Eichholz v. Wells Fargo Bank, NA*, 10-CV-13622, 2011 WL 5375375 (E.D. Mich. Nov. 7, 2011) (citing 12 U.S.C § 2605(f)(1)(A)).  Moreover, he must also show that his damages occurred "'as a result of' that specific violation."  *Id.*

Here, Plaintiff cannot establish that she has suffered any damages, let alone "actual, demonstrable damages" that result from Wells Fargo's allegedly not providing her with the name of the current owner, post-foreclosure sale, of her Mortgage Note.  Plaintiff pleads she suffered actual damages by incurring gasoline costs, postage, filing fees for the complaint and attorney's

fees.  (TAC, ¶ 483).   The costs allegedly incurred by Plaintiff in preparing and sending the

letters are not actionable under 12 U.S.C. § 2605(f) because any such costs would been incurred

before the alleged 12 U.S.C. § 2605(f) violation.  Accordingly, these costs could not have

resulted from Defendant's alleged failure to comply with 12 U.S.C. § 2605(f).  Plaintiff would

have incurred the costs regardless of whether Wells Fargo responded to the letters.  *See Steele v.*

*Quantum Servicing Corp.*, No. 3:12-CV-2897-L, 2013 WL 3196544, at *8 (N.D. Tex. June 25,

2013); *see also Roth v. CitiMortgage Inc.*, No. 12-CV-2446 (SJF)(WDW), 2013 WL 5205775, at

*8, n.6 (E.D.N.Y. Sept. 11, 2013) (The costs of Plaintiff's sending the letters and filing suit do

not constitute actual damages under RESPA.)  Plaintiff's attorney's fees and expenses (including

travel costs) of litigation incurred cannot satisfy the actual damages requirement of a RESPA

claim. *Whittier v. Ocwen Loan Servicing, L.L.C.*, No. 13-20639, 2014 WL 6791382, at *3 (5th

Cir. Dec. 3, 2014).

Finally, even if Plaintiff could make a pattern or practice claim by simply separating out

all of her requests into individual letters as she has done, the relief Plaintiff seeks is available for

such a violation, "statutory damages of at least $2,000.00 per violation" (*see* "WHEREFORE"

clause), does not exist.  RESPA allows for statutory damages "as the court may allow, *in the case*

of a pattern or practice of noncompliance with the requirements of this section, in an amount not

to exceed $2,000."  12 U.S.C. § 2605(f) (emphasis added).  Therefore, the maximum statutory

damages that the court could allow in the case is $2,000.00, no matter how many separate letters

Plaintiff wrote.  *See generally Smith v. Greystone Alliance, LLC*, 772 F.3d 448, 449 (7th Cir.

2014) (recognizing that the analogous statutory damages provision of the FDCPA, 15 U.S.C. §

1692k(a)(2)(A) ("*in the case* of any action by an individual [as] such damages as the court may

[allow, but not exceeding $1,000") requires that "statutory damages are subject to a cap of

$1,000 per suit, . . . no matter how many violations of the Act a given debt collector commits.") (emphasis added).

The Court should dismiss Count XI.

**I.     Plaintiff Is Not Entitled to a Declaratory Judgment That the Foreclosure Deed Did not Convey Title "To Any Entity."**

In Count XI[12], Plaintiff seeks a declaratory judgment that the "purposed [sic] forclosure [sic] deed did not convey title to the Plaintiff's property to any entity."  Here, Plaintiff has simply repackaged Counts I and II, again challenging the existence of the Trust at the time of the assignment.  Count XI should be dismissed for the same reasons discussed in Section A *supra*.

<u>CONCLUSION</u>

WHEREFORE, Defendants respectfully requests that this Court ALLOW the Motion to dismiss and dismiss Plaintiff's Third Amended Complaint against Defendants.

Respectfully submitted,

/s/ *Lauren J. O'Connor*
Lauren J. O'Connor (# 7808)
Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
Telephone:  (617) 946-4800
loconnor@seyfath.com

January 8, 2016

---

[12] There are two "Count XI"s in Plaintiff's Third Amended Complaint.

## <u>CERTIFICATE OF SERVICE</u>

I, Lauren J. O'Connor, hereby certify that this document has been filed electronically and is available for viewing and downloading from the ECF system.  I further certify that this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 8, 2016.

/s/ <u>*Lauren J. O'Connor*</u>

Lauren J. O'Connor
