UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

ERNESTINA GARCIA

    VS                                    C.A. NO.: 13-617

WELLS FARGO BANK, N.A., ET AL

## MEMORANDUM OF LAW

## INTRODUCTION

This matter is before the Court on the Defendants' Motion to Dismiss. A review of the travel of the case, the facts of the case and the relevant case law mandates that the Motion to Dismiss is not well founded and should be denied. Each portion of the Motion to Dismiss will be addressed in this memorandum. As a preface to this Response to the Motion to Dismiss, it should be preliminarily noted that Plaintiff filed a third amended complaint, which added several new counts, but basically did not change certain allegations, which had been answered by the Defendants originally. A copy of the original complaint and the answer are attached as Exhibits A and B. Defendants had answered the original complaint as indicated by Exhibit B. Subsequently on July 1, 2014, Plaintiff filed an amended complaint, which is attached as Exhibit C. This amended complaint removed the fraud claim and removed the claim against Mortgage Electronic Registration Systems, Inc. It added a claim for violation of the provisions of R.I.G.L

§ 34-27-3and the Fair Debt Collection Practices Act, while retaining the core allegations relating to the validity of the alleged assignments.

On August 13, 2014, the Plaintiff filed a second amended complaint, (Exhibit D) in which the Plaintiff added new claims, including a new count for violation of R.I.G.L. § 34-11-22, and other counts, arising from new claims which subsequently accrued not necessarily not related to the foreclosure action, pursuant to the Truth in Lending Act, ("TILA") 15 U.S.C.§ 1640 and §1641(f) the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. §2605 and Regulation X and Regulation Z of RESPA, 12 C.F.R. § 1024 et seq. which regulations had an effective date of January 10, 2014. As of August 13, 2014, no foreclosure deed had been executed or recorded. As a result, the Plaintiff continued to receive tax bills, water bills and sewer bills as owner of the premises. It was not until March 17, 2015 that a purported foreclosure deed was recorded. A review of this purported foreclosure deed indicates that this purported document creates additional claims, which were the basis for Third Amended Complaint. In addition since the Second amended complaint was filed, Plaintiff has accrued additional RESPA claims and TILA claims against the Defendants. Plaintiff thus filed a Third Amended Complaint to clarify her RESPA and TILA claims, which pleaded the new RESPA and other claims which have accrued.

## PARAGRAPH 22 WAS NOT COMPLIED  WITH BY DEFENDANT RENDERING THE FORECLOSURE INVALID

Plaintiff has sufficiently pleaded facts that a condition precedent for the exercise of the statutory power of sale as established by the mortgage has not been met. Plaintiff alleged that the provisions of paragraph 22 of her mortgage were not complied with and that a valid default notice was not sent to her, resulting in an invalidation of the alleged foreclosure. The lender failed to comply with the terms of the mortgage when it conducted the purported foreclosure.  The lender never sent a default letter to the Plaintiff, as required by the mortgage.  Instead, Wells Fargo using the fictitious name of America's Servicing Company sent a defective default letter to the Defendant.  Paragraph 22 of the mortgage provided that **before any alleged acceleration of the loan was declared,** the **Lender** was required to specify:

a.    the default;

b.    the action required to cure the default, stating a date, not less than 30 days from the date the default must be cured;

c.    that failure to cure the default on or before the date specified in the Notice **may result in the acceleration** and the right to bring a court action to asset the non-existence of a default of Borrower to acceleration and sale.

Paragraph 22 of the mortgage, which contains conditions for the exercise of the statutory power of sale, reads as follows:

Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in Section 15. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Specifically, the provisions in paragraph 22 of the mortgage were a

condition precedent to the exercise of the power of sale of the mortgage. There

4

was no strict compliance with the terms of the mortgage to exercise the statutory

power of sale as indicated above. No default letter was sent to Plaintiff by the

Lender in conformity with the terms of the Mortgage. Thus any alleged subsequent

notice to foreclose letter was void and invalid due to the failure of the lender to

comply with the terms of the mortgage.  Since no default letter, consistent with the

terms of the mortgage, was sent after the alleged assignment, the validity of which

document is disputed, no acceleration and sale could be declared by any entity.

Thus any alleged foreclosure was invalid.

Another failure to comply with the terms of the mortgage was the language

in the purported default letter that if the Plaintiff did not cure the default that:

If funds are not received by the above referenced date, we will proceed with
acceleration. Once acceleration has occurred, we may take steps to terminate your
ownership in the property by foreclosure proceeding or other action to seize the
home or pursue  any other remedy under the terms of your mortgage.

Notably absent in this purported notice is the language required in the mortgage

that:

 failure to cure the default on or before the date specified in the notice may result in
acceleration of the sums secured by this Security Instrument and sale of the
Property

This notice instead indicated that Americas Servicing Company, with no reference

to the Lender, **Will proceed with acceleration**.  The notice did not state that the

property would be sold and instead stated that Americas Servicing Company may

take action to seize the home, a remedy not permitted under Rhode Island law or the terms of the mortgage. Defendants have asserted in their Memorandum of Law, that contrary to the terms of the mortgage, no acceleration notice needed to be sent to the Plaintiff and that the default notice effectively was both an acceleration notice and a default notice despite the language of the mortgage.

This identical issue was analyzed Judge Finkle of the Rhode Island Bankruptcy Court in the case of *In Re Demers*, 511 B.R. 233 (Bankr R.I., 2014). In *Demers,* the Court considered a Proof of Claim filed by Wells Fargo through its servicing name of America's Servicing Company. A notice similar to this notice was sent to the Debtor prior to a foreclosure, which was stopped by the Debtor's Chapter 13 bankruptcy filing. The Court found that strict compliance with Paragraph 22 of the mortgage was a condition precedent to acceleration and exercise of the statutory power of sale under Rhode Island law. The Court held:

> Reading the Note and Mortgage as an integrated contract, I find the loan agreement between Ms. Demers and ASC is unambiguous and ASC's compliance with Mtg. Paragraph 22 is a condition precedent to its right to accelerate the Note and pursue its remedy of foreclosure against the Property. That paragraph, in plain and ordinary terms, states that prior to accelerating the Note ASC is required to give Ms. Demers notice of "the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale." The Notice without question did not inform Ms. Demers that she had a right to bring an action in court. Quite clearly the Notice did not comply with this prerequisite.

Even so, if I were to determine that the loan agreement read as a whole is "reasonably and clearly susceptible of more than one interpretation" and potentially ambiguous based upon an arguable inconsistency among Note Paragraph 7 and Mtg. Paragraphs 14 and 22, I would still conclude that under the loan agreement ASC is not entitled to recover the Disputed Charges. Any ambiguity in a contract "must be construed against the drafter of the document," in this case ASC (or its predecessor-in-interest). *Haviland,* 45 A.3d at 1260 ( *quoting   Fryzel,* 385 A.2d at 666-67). Furthermore, "virtually every contract contains an implied covenant of good faith and fair dealing between the parties." *Dovenmuehle Mortg., Inc. v. Antonelli,* 790 A.2d 1113, 1115 (R.I.2002). I see no reason this loan transaction should be exempted from this general rule. Indeed, in a transaction such as this between an individual homebuyer and a mortgage lender, there is an imbalance of power such that the more powerful and sophisticated party, ASC, must be held to this standard of good faith and fair dealing.

The Court analyzed the purpose of the provision as a condition and held that :

Notice provisions in mortgage documents usually require default notices to contain specific information, which serves a very clear and specific purpose; it informs mortgagors of their rights so that they may act to protect them. Therefore, when the terms of the note and mortgage require notice of default, proper notice is a condition precedent to an action for foreclosure.

For unexplained reasons, the Notice sent by ASC upon Ms. Demers' 2012 default deviated from these prior notices and omitted this contractually mandated notice provision. This defect resulted in the invalidity of the foreclosure process ASC pursued and precludes recovery of its associated costs.

Thus pursuant to the Bankruptcy Court's analysis, this paragraph 22 notice was

defective, rendering the foreclosure void.

Under Rhode Island, if there is any ambiguity in a contract, that ambiguity is a question of fact to be resolved at trial.  In the case of *Haviland v. Simmons,* 45 A.3d 1246 (R.I., 2012), the Rhode Island Supreme Court decided that if there was any ambiguity in a contract, that such issue had to be resolved at trial:

Where an ambiguity exists in a provision of a contractual 1259*1259 document, the construction of that provision is a question of fact."*Fryzel v. Domestic Credit Corp.,* 120 R.I. 92, 98, 385 A.2d 663, 666 (1978) (citing*Geary v. Hoffman,* 98 R.I. 413, 417, 204 A.2d 302, 305 (1964); *Russolino v. A. F. Rotelli & Sons,* 85 R.I. 160, 163, 128 A.2d 337, 340 (1957)). We are of the opinion that, although an express agreement was entered into, based on our review of the contract in its entirety, an ambiguity exists concerning the terms of the agreement relative to the standard under which Haviland's reappointment is to be evaluated.

*Haviland*, at pp. 1258-1259

Thus it is inappropriate for this matter to be resolved by a Motion to Dismiss, when When at best there is an ambiguity in the terms of the mortgage contract.  If there were no ambiguity in the term lender, then the only possible meaning of that term would be the party which owned the note and the mortgage at the time of the declaration of default.  In this case, no default notice was sent by HSBC as trustee for any trust. The alleged notice was sent by Wells Fargo operating under the fictitious name of America's Servicing Company, with no reference to any alleged owner of the note or the mortgage.  Thus there was no reference to the Lender as required by the terms of the mortgage.  Since there was no compliance with the terms of the mortgage, the Lender could not proceed with acceleration and could

not exercise the statutory power of sale. Thus any subsequent foreclosure sale was void for contractual non-compliance.

The Massachusetts Supreme Judicial Court recently analyzed this type of notice in exactly the same manner.  In the case of *Pinti v. Emigrant Mortgage Company*, No. SJC-11742 (Ma., July 17, 2015), the Court invalidated a foreclosure where there was not strict compliance with the provisions of paragraph 22.  The Court commenced by viewing the extraordinary power that a mortgagee possessed when non-judicial foreclosure commenced with no judicial intervention:

This court has recently reemphasized the point that in light of "the substantial power that the statutory scheme affords to a [mortgagee] to foreclose without immediate judicial oversight, we adhere to the familiar rule that `one who sells under a power [of sale] must follow strictly its terms'"; the failure to do so results in "no valid execution of the power, and the sale is wholly void." Ibanez, 458 Mass. at 646, quoting  Moore v. Dick, 187 Mass. 207, 211 (1905). See  Pryor v. Baker, 133 Mass. 459, 460 (1882)("The exercise of a power to sell by a mortgagee is always carefully watched, and is to be exercised with careful regard to the interests of the mortgagor"). This is true with respect to terms that are connected to the power of sale contained in the mortgage instrument itself, [10] and to terms contained in § 21, the statutory power of sale, or in one of "the statutes relating to the foreclosure of mortgages by the exercise of a power of sale" to which § 21 refers.

It then proceeded to analyze the nature of the Paragraph 22 notice:

Insofar as the plaintiffs' mortgage is concerned, paragraph 22 begins by requiring notice of default to be given prior to any acceleration of the sums secured by the mortgage; then specifically prescribes the contents of the notice of default; and then provides that, if the default is not cured before the date specified in the notice, the mortgagee may invoke the statutory power of sale (as well as pursue other remedies). As the paragraph is written, therefore, the sending of the prescribed notice of default is essentially a prerequisite to use of the mortgage's power of sale,

because the power of sale may be invoked only if the default is not cured within the time specified in the notice of default. In this regard, we agree with the plaintiffs that the "terms of the mortgage" with which strict compliance is required — both as a matter of common law under this court's decisions and under § 21 [15] — include not only the provisions in paragraph 22 relating to the foreclosure sale itself, but also the provisions requiring and prescribing the preforeclosure notice of default. See Foster, Hall & Adams Co., 213 Mass. at 322-324.

The Court then concluded by holding:

> this court's decisions about mortgage terms indicate that by structure and content, the notice of default required to be given under paragraph 22 is integrally connected, and operates as a prerequisite, to the proper exercise of the mortgage instrument's power of sale. Emigrant's strict compliance with the notice of default required by paragraph 22 was necessary in order for the foreclosure sale to be valid; Emigrant's failure to strictly comply rendered the sale void.

> Thus the *Pinti* case supports Plaintiff's position that the notice was void and

defective because it did not substantially comply with the terms of the mortgage.

The use of the term "we will proceed with acceleration" rather than "may be

accelerated and the Defendant's contention that a future acceleration was not

needed, renders this notice void and the subsequent foreclosure void.  The failure

to make any reference to the exercise of the statutory power of sale suggests that

there would be foreclosure proceeding in Court where Plaintiff could bring an

action.  The suggestion that a proceeding could occur by which the property could

be seized does not make any reference to  the exercise of the statutory power of

sale. It also indicates that any negotiations to reinstate after acceleration must

involve payment for nothing less than the "full amount due" on the mortgage  Such

lack of strict compliance or any compliance with the terms of the mortgage render this a defective default letter.

Plaintiff has pleaded that this notice was a defective notice which resulted in no proper default being declared in regard to the terms of the mortgage and as a result the statutory power of sale could not be commenced due to the failure of acceleration due to the defective notice. Contrary to the assertions of the Defendants, there is a dispute as to who sent this Notice. Plaintiff alleges that it was sent by Americas Servicing Company. Defendants assert without factual support that the notice was sent by HSNC Bank. Also it has been admitted by the Defendant that no subsequent acceleration notice was sent to the Plaintiff. This provision of the mortgage was bolded and is a mandatory section. It envisions that the lender **may accelerate** and that a subsequent act accelerating the mortgage must occur, provided the terms of paragraph are complied with. The suggestion that no further notice is required as referenced by the language "without further demand" relates to the default notice, not the subsequent acceleration notice. Defendants admitted that no acceleration notice needed to be sent and that no such notice was in fact sent. Thus this was a defective foreclosure attempt

The Virginia Supreme Court in *Bayview Loan Servicing v. Simmons*, 654 S.E.2d 898 (V.A., 2008). In that case, the Virginia Supreme Court considered the same issue and held for the homeowner reversed a foreclosure:

11

In Paragraph 17 of the Deed of Trust, the parties agreed no right of acceleration would be in existence to exercise (in other words, that no such right would have accrued to Bayview) until the condition precedent of providing the pre-acceleration notice had been satisfied. That condition precedent required a notice by personal delivery or certified mail specifying:

(1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property.

As noted above, this required notice was not given and thus the condition precedent to Bayview's right of acceleration was never met. Because Bayview did not comply with the specific condition precedent under the Deed of Trust, prior to the notice of foreclosure sale by Specialized, Bayview had not acquired the right to accelerate payment under the terms of the Deed of Trust. Thus, Specialized's June 28, 2005, letter could exercise no right of acceleration because no such right had then accrued to Bayview.

Another recent case, which is directly on point to this case  is *Paiva v. Bank of New York Mellon,* 14-cv-14531 D. MA, August 11, 2015. In *Paiva*, the Plaintiff filed a claim that the foreclosure was void due to the fact that the entity which provided the default notice was Countrywide, which was not the lender, which was the entity, which had been assigned the mortgage. The Court agreed holding:

The language of paragraph 22 is clear and unequivocal as to who must give the required notice of default to the borrower: "Lender" must do so. The Court agrees with Paiva that Countrywide's notice of default did not strictly comply with paragraph 22 of the mortgage, as required under the statutory power of sale and under the Massachusetts Supreme Judicial Court's ("SJC") case law. See G.L. c. 183, § 21 (requiring a foreclosing bank to "comply with the terms of the mortgage"); U.S. Bank Nat. Ass'n v. Ibanez, 458 Mass. 637, 647 (2011) (the terms of the power of sale, G.L. c. 183, § 21, must be strictly adhered to); see also Pinti v. Emigrant Mortgage Company, Inc., 33 N.E.3d 1213, 1226 (2015) (strict

compliance with the notice of default required by paragraph 22 is necessary in order for a foreclosure sale to be valid). Paragraph 22 specifically states that "Lender shall give notice to Borrower. . . ." Significantly, it does not say that "Lender or the servicer of the loan shall give notice to Borrower. . . ." Nor is the term "Lender" defined in the mortgage to include the servicer of the loan. Rather, the mortgage defines "Lender" only as "Countrywide Home Loans, Inc." [Dkt. 19-1, at 6.] As discussed above, although Countrywide was the original lender under the mortgage, the parties agree that by the time Countrywide sent the notice of default to Paiva, Countrywide had assigned its interest to BONYM, which thereby became the lender. Thus, strictly construing paragraph 22 of the mortgage, BONYM, and not Countryside, had to send the notice of default to Paiva.

As in both of these cases, the defective paragraph 22 in this case notice rendered the foreclosure void. The admission by the Defendants that no acceleration notices was sent, also renders the foreclosure void.

## THE PLAINTIFFS HAVE MET THE PLEADING REQUIREMENTS OF ASHCROFT V. IQBAL

The First Circuit has interpreted the holding of the United States Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) for analysis of FRCP 12(b)(6) motions. The Supreme Court in *Iqbal* had stated:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

The First Circuit in *Rodriguez-Vives v. Puerto Rico Firefighters* (1st Cir., January 8, 2014) held:

We emphasize that this case is on appeal of a 12(b)(6) motion, not a motion for summary judgment. *HN12*☝"Although a plaintiff must plead enough facts to make entitlement to relief plausible in light of the evidentiary standard that will pertain at trial . . . she need not plead facts sufficient to establish a prima facie case." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (**1st Cir.** 2013).

The First Circuit thus confirmed that even if a Plaintiff makes a specific factual allegation, that merely lacks some surrounding context, the claim will be sufficient to survive a motion to dismiss.

Thus for purposes of the Motion, all factual allegations in Plaintiffs' complaint must be accepted by the Court as true. The Court also reiterated the principle that the First Circuit had previously stated in similar principles in Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 54 (1st Cir. 2013):

The prima facie case is an evidentiary model, not a pleading standard. For this reason, the interaction between the prima facie case and the plausibility standard crafted by the [**2] Supreme Court in Bell Atlantic Corp. v. Twombly, created some confusion. We now resolve that confusion and hold that *HN1*☝the prima facie case is not the appropriate benchmark for determining whether a complaint has crossed the plausibility threshold. Accordingly, that aspect of the district court's decision must be annulled and the case remanded for further proceedings.

Plaintiff has made specific factual assertions of plausible facts which are deemed to be true for purposes of the Motion to dismiss, which will demonstrated in the responses to each of the aspects of the Motion to Dismiss.

## THE PLAINTIFS HAS STANDING TO CHALLENGE THE TWO PURPORTED ASSIGNMENTS WHICH DID NOT TRANSFER THE MORTGAGE TO THE ALLEGED GRANTEES

14

The Defendants have moved to dismiss the claim of the Plaintiff based on the void nature of the alleged assignments. The following well pleaded, disputed and critical facts, with the specific paragraph numbers are deemed to be true for the purposes of this Motion to Dismiss:

12.    Plaintiff executed a mortgage to MERS as nominee for Fremont on November 10, 2005.

13.    A securitized trust, Ace Securities 2006-HE1, was created on or before February 28, 2006 when Fremont, sold mortgage loans to DB Structured Products, Inc. ("DBSP"), which along with Ace Securities Corp. ("Ace") securitized loans originated by Fremont and other entities into a pool of loans.

14.    The documents for this securitized trust are located at the following web-page of the Securities and Exchange Commission. The html web address for this particular trust is:

   http://www.sec.gov/cgi-bin/browse-edgar?company=ace+2006-he1&match=contains&filenum=&State=&Country=&SIC=&myowner=exclude&action=getcompany

15.    This securitized trust was defined by the terms of its Pooling and Servicing Agreement ("PSA") and other documents associated with the loan securitization process. This Pooling and Servicing Agreement is located at the following html website of the Securities and Exchange Commission:

   http://www.sec.gov/Archives/edgar/data/1353171/000088237706001569/d444644_ex4-1.htm

This Pooling and Servicing Agreement contains the actual name of the Trust in the definition section. This section provides the name of the trust as follows:

"Trust": ACE Securities Corp., Home Equity Loan Trust, Series 2006-HE1, the trust created hereunder.

16.     In this securitization, all loans, originated by Fremont, were initially sold by Fremont to DB Structured Products, Inc. ("DBSP") pursuant to a Mortgage Loan Purchase Agreement dated February 28, 2006.

17.     Thus, no later than February 28, 2006, any loans which this Trust owned, which were originated by Fremont, were conveyed from Fremont to DBSP.

18.     ACE Securities Corporation ("ACE") was identified as the Depositor, which meant that all the loans in the trust were conveyed to the Trust only by ACE and by no other entity. No loans were conveyed to the trust by MERS on its own behalf, nor by any other entity other than ACE at any time.

20.     On or about December 17, 2007, a purported assignment of mortgage was executed by MERS on its own behalf and not as a nominee to HSBC as Trustee for the non-existent Home Equity Loan Trust Series ACE 2006-HE1 ("ACE 2006-HE1")

21.     MERS did not own Plaintiff's note or mortgage on this date as the loan had been sold to DBSP on or before February 28, 2006. Nor was it acting as an agent for the owner of the note or the mortgage on December 17, 2007.

22.     MERS owned nothing to assign to 2006-HE1 and this alleged assignment conveyed nothing to the non-existent Home Equity Loan Trust Series ACE 2006-HE1 ("ACE 2006-HE1").

24.     MERS could not deliver any interest in the mortgage or note to ACE 2006-HE1 because the alleged grantee did not exist on December 17, 2007 or at any time.

25.     MERS could not convey any interest in the mortgage or note to the alleged grantee because ACE 2006-HE1 did not exist on December 17, 2007 or at any time.

26.     ACE 2006-HE1 could not accept this alleged conveyance because it did not exist on December 17, 2007 or at any time.

27.     On or about January 17, 2013, Wells Fargo created an alleged assignment of mortgage at its Minneapolis office. This document purported to convey the Plaintiff's mortgage by Wells Fargo Bank, N.A. pursuant to a purported power of attorney for HSBC Bank U.S.A., National Association as trustee for Home Equity Loan Trust Series ACE 2006-HE1 ("ACE 2006-HE1") to HSBC Bank USA,

National Association as Trustee for Ace Securities Corp. Home Equity Loan Trust, Series 2006-HE1 Asset Backed Pass-Through Certificates, ("2006-HE1 Certificates").

ACE 2006-HE1 could not convey any interest in the mortgage to  2006-HE1 Certificates because ACE 2006-HE1 did not own an interest in any property to convey to 2006-HE1 Certificates on January 18, 2013 or at any time.

29.    ACE 2006-HE1 could not deliver any interest in the mortgage to  2006-HE1 Certificates because  neither ACE 2006-HE1 nor 2006-HE1 Certificates existed on January 18, 2013 or at any time.

30.    The alleged conveyance was also void because 2006-HE1 Certificates could not accept delivery of Plaintiff's mortgage, because it did not exist on January 18, 2013 or at any time.

31.    As a result any alleged assignments to ACE 2006-HE1 or 2006-HE1 Certificates were void, since neither entity existed at any time.

In its answer to the original complaint, the Defendants made some specific Judicial Admissions, which bind it in this litigation. The original paragraph 28 of the complaint alleged that Exhibit D was an assignment from a non-existent entity and that there was no power of attorney from HSBC as trustee for the non-Existent entity.  In its answer the Defendants specifically denied that the alleged document referenced as an assignment as Exhibit D in the original complaint was an assignment. By this admission then the Defendant,  which claimed to have foreclosed, never obtained title and could not have foreclosed, due to the fact that it denied that the first purported assignment from Mortgage Electronic Registration Systems, Inc. was an assignment. It should also be noted that in the original answer of the Defendants in their answer to paragraph 31 stated:

Defendants admit that the December 27, 2007 Assignment contained a misnomer in the name of the Trust.

These two answers are judicial admissions which the Defendants, having answered the original complaint, cannot now change their position and make alternative assertions in their Motion to Dismiss.  First they admitted that there was a misnomer in the name of the trust.  In order to correct that misnomer, the appropriate course of action, from a title perspective, would have been to have a corrective assignment executed from MERS as nominee for the owner of the note , which was a MERSCORP member and agent, to HSBC for the trustee of the actual trust.  Instead of doing this, Wells Fargo, consistent with the allegationpleaded  in the Third Amended Complaint, had a Wells Fargo employee's name affixed to a purported assignment as power of attorney for HSBC for the misnamed trust.  Since the Trust did not exist under that name (or in the name of the alleged grantee for that matter), there could not have been an actual power of attorney or assignment.  The Defendants in their answer denied that this document referenced as Exhibit D in the original complaint was an assignment.  By that criteria, there was no transfer of the mortgage by that document.

The Defendants seek to dismiss by making several  unsubstantiated assertions in their memorandum with no supporting documentation or factual basis for these assertions. While *Iqbal* requires factual based pleadings by the Plaintiff, a

mere "you are wrong" assertion from the defendants cannot be the basis for a

Motion to Dismiss, as it is likewise contrary to the pleading requirements of *Iqbal*.

The naked assertion, unsupported by any facts, (Which would change the motion

to a Summary Judgment Motion) which is the primary basis for the Motion to

Dismiss is:

"The actual name of the trust was Ace Securities Corp. Home Equity Loan Trust,

Series 2006-HE1, Asset Backed Pass-Through Certificates".

This assertion by the Defendants is contrary to the specific factual assertions of the

Plaintiff, which cited the SEC website, which contained the Pooling and Servicing

Agreement for the actual trust, identified the actual trust and was located at the

following web link:

    http://www.sec.gov/Archives/edgar/data/1353171/000088237706001569/d4
      44644_ex4-1.htm

This Pooling and Servicing Agreement contains the actual name of the Trust in the

definition section. This section provides the name of the trust as follows:


"Trust": ACE Securities Corp., Home Equity Loan Trust, Series 2006-HE1, the
trust created hereunder.

HSBC was the Trustee for this Particular Trust.  Plaintiff has factually alleged

plausible facts which demonstrate that HSBC and Wells Fargo referenced this

Trust by the correct name in the attached Exhibit E.  In this document, an official

document of Wells Fargo Bank, N.A., contained in the Wells Fargo Bank, N.A.

investor relations website, HSBC Bank USA, National Association as Trustee of the ACE Securities Corp., Home Equity Loan Trust, Series 2006-HE1 drafted a letter to the investors who owned certificates issued by the actual Trust.  The reference to the asset backed pass-through certificates in the Defendants' Motion to Dismiss is to the certificates, which the trust issued, not to the trust itself, which has a particular name. Thus as indicated in this letter dated April 8, 2015, the allegation by the Plaintiff as to the actual name of the trust is supported by facts and the assertion by the attorney for the Defendants as to the alternative name of the trust is not supported by any facts. Further support of the Plaintiff's pleadings with  factual support of the actual name of the trust are the attached certified copies of records of the Securities and Exchange Commission attached to this Memorandum as Exhibits E-1, E-2, E-3 E-4 and E-5.

The Rhode Island Supreme Court recently held in the case of *Dilibero v MERS et al* 108 A. 3d (R.I., 2015) that a homeowner possessed standing to challenge an assignment that was void, defective or invalid. The Court stated:

> This Court previously has had the opportunity to address whether a mortgagor has standing to challenge the validity of the assignment of his or her mortgage. *Mruk v. Mortgage Electronic Registration Systems, Inc.,* 82 A.3d 527, 534-36 (R.I.2013). In *Mruk,* we held that "homeowners in Rhode Island have standing to challenge the assignment of mortgages on their homes to the extent necessary to contest the foreclosing entity's authority to foreclose." *Id.* at 536. We see no reason to veer from our holding in *Mruk* in this case.

The Court concluded:

Thus, the subsequent assignment of the mortgage executed by MERS to UBS would be void *ab initio* because the assignor, MERS, had nothing to assign. *See Culhane v. Aurora Loan Services of Nebraska,* 708 F.3d 282, 291 (1st Cir.2013); 17A Am.Jur.2d. *Contracts* § 10 at 45-46 (2004) ("A void contract is void as to everybody whose rights would be affected by it if it were valid."). Based upon the facts as alleged in the complaint, it is our opinion that the plaintiff has adequately stated a claim upon which relief may be granted.

The Supreme Court also reiterated this holding in *Cruz v MERS*

108 A. 3d 992, (R.I., 2015) in which the Court adopted the reasoning of

*Wilson v. HSBC Mortgage Services, Inc.* 744 F 3d1 (1st Cir., 2014):

The United States Court of Appeals for the First Circuit recently limited standing to challenges of assignments that are void, as opposed to voidable, in *Wilson v. HSBC Mortgage Services, Inc.,* 744 F.3d 1 (1st Cir.2014). In *Wilson,* the First Circuit explained that a plaintiff has standing to challenge an assignment as void because success on the merits would prove the purported assignee is not, in fact, the mortgagee and therefore lacks any right to foreclose on the mortgage." *Id.* at 9. The First Circuit acknowledged, however, that a homeowner does not have standing "to claim the assignment is voidable because the assignee still would have received legal title vis-[à]-vis the homeowner." *Id.* As a result, even successfully proving that an assignment is voidable "would not affect the rights as between those two parties or provide the homeowner with a defense to the foreclosure action." *Id.*

Our case law regarding the distinction between void and voidable contracts is consistent with the First Circuit's reasoning in *Wilson.* We have long held that a void contract is a nullity, but that a voidable contract affects only one party and "may be either ratified or rescinded at that party's election." *Moura v. Mortgage Electronic Registration Systems, Inc.,* 90 A.3d 852, 857 (R.I.2014). In *Bishop v. Kent & Stanley Co.,* 20 R.I. 680, 684-85, 41 A. 255, 257 (1898), we held that a contract executed beyond the scope of the signer's authority was not void, but instead that it was voidable at the election of the corporation. The *Bishop* Court applied that principle to

mortgage assignments and concluded that a mortgage is voidable only by the mortgagee even in the absence of signer authority. *Id.*

In this case, the Plaintiff did not allege any voidable assignment. She alleged the facts relating to the non-existent nature of the alleged two trusts, one of which was a misnomer, as indicated above. She also alleged that at the time that the alleged first assignment occurred, MERS was not acting as an agent for the owner of the note and the note was no longer owned by a MERS member. As indicated in the *Dilibero* case, once MERS had no relationship with the owner of the note, through action of the owner or due to the fact that MERS had no contractual or any relationship with the successors of Fremont, which were Ace Securities and DB Structured Products, no assignment could be made since MERS owned nothing to assign. Specific facts were provided and alleged from the Pooling and Servicing Agreement of the actual trust, on which the Plaintiff based her allegations. This reference to the Pooling and  Servicing Agreement was not made  to enforce that agreement asserted by the Defendants. Rather the Pooling and Servicing serves as evidence of the manner in which the actual transaction for the sale of the loans in the actual trust occurred, which is contrary to the assertions of the Defendants.

In *Mruk*, the Rhode Island Supreme Court has established the basis of Rhode Island law which a District Court sitting in diversity must follow:

We emphasize that, unlike the usual third parties to contracts, the homeowners here are not attempting to assert the rights of one of the contracting parties; instead, the homeowners are asserting their own rights not to have their homes unlawfully foreclosed upon. Mortgagors in Rhode Island, no less than in Massachusetts, are in the unusual position of facing a possible eviction from their homes at the hands of an entity with which they lack privity. Absent standing to challenge the assignment by which the purported authority to foreclose has been derived, homeowners would be without legal recourse to contest this injury. We do not choose to close the courthouse doors entirely to such homeowners. Accordingly, we hold that homeowners in Rhode Island have standing to challenge the assignment of mortgages on their homes to the extent necessary to contest the foreclosing entity's authority to foreclose. . . In so holding, we emphasize that this exception to the general rule precluding third-party standing to challenge a contract is narrow and confined to the circumstances of a mortgagor challenging an "invalid, ineffective, or void" assignment of the mortgage.

*Mruk* at p13.

The Rhode Island Supreme Court in *Bucci v. Lehman*, 68A 3d 1064 (R.I., 2013) held that the issue of agency of a mortgagee to the owner of the note was a question of fact. In *Bucci*, the Plaintiff had conceded the agency issue. The Defendants do not acknowledge or accept these recent holdings of the Rhode Island Supreme Court, which establish the law in Rhode Island, but instead dispute the Plaintiff's factual allegations and ask this Court to resolve factual disputes in their favor in a Motion to Dismiss.

The Plaintiff made factually specific plausible allegations in the Third Amended Complaint which create factual disputes, which cannot be resolved in a Motion to Dismiss:

a. MERS was not the agent of the owner of the note at the time of the alleged first assignment.

b.      MERS owned nothing to assign at the time of the alleged first assignment because the note and mortgage had already been conveyed to DB Structured Products by a loan purchase agreement prior to the alleged assignment.

c.      The alleged first assignment did not deliver anything to the non-existent trust  by the non-existence entity because the  mortgage had already been sold and DB Structured Products and its subsequent assignee, ACE Securities were not MERSCORP members and thus MERS was not their agent.

d.      The alleged first assignment could not be accepted by a  non-existent trust  by the non-existence entity.

e.      The alleged second  assignment did not deliver anything to the non-existent trust  by the non-existence entity because the  alleged frantor did not exist.

f.      The alleged second  assignment could not be accepted by a  non-existent  entity.

g.      HSBC was not the Trustee for either of the non-existent trusts.

h.      Neither named "trust" existed in the name in which the mortgage was purportedly assigned.

i.      HSBC Bank as Trustee never executed a power of attorney to Wells Fargo on behalf of the non-existent first Trust or the non-existent second Trust.

j.      No power of attorney was recorded relating to either of the alleged

powers of attorney.

The Rhode Island Supreme Court has indicated that the challenges of the

Plaintiffs in this case to the assignments would result in the assignment being void,

if proven at trial.   Plaintiffs have standing to make these challenges as a matter of

law. The Court did adopt the *Wilson* holding from the First Circuit. However

*Wilson* is distinguished because it only involved issues of authority of a signer of

an assignment, not the facts which were alleged in this case.  In fact in *Wilson*, the

Plaintiff admitted that the person signing the assignment was a MERS officer, but

only claimed that since the person was also an employee of the servicer, dual office

holding  was impermissible. Such allegations are not present in this case.

This Court also held in *Cosajay v Mortgage Electronic Registration Systems,*

*Inc.*(D. R.I. November 5,  2013)  that issues relating to void or voidable would be

considered at either the Summary Judgment or trial stage of the proceedings.   In

that case, a Motion to Dismiss was denied with similar factual allegations which

were present in this case. A review of the facts alleged in Plaintiffs' amended

complaint, indicates that the complaint made the exact allegations which were

found to be sufficient in the *Dilibero* and *Cosajay* case.  It specifically alleged that

the initial assignment was made to Deutsche Bank as Trustee for a trust, which did

not exist. A default servicer provider employee prepared a purported assignment to

this non-existent entity. Instead of correcting this problem, Saxon Mortgtage

solicited Nationwide Title Clearing, a default service provider, to instead prepare

an assignment from Deutsche Bank as trustee for a non-existent entity to Saxon,

referencing a power of attorney from Deutsche Bank for a nonexistent entity,

which was alleged to have never been prepared. As in this case, the Trustee could

not grant a power of attorney in its capacity as Trustee for a non-existent trust.

This Court held that the issues in *Cosajay* would be better resolved by Summary

Judgment.  Thus this case, bearing the same facts, should also not be dismissed.

None of the voidable authority issues in *Wilson*, *Mruk* or *Cruz*  relating to

authority, have been raised in this case.  Thus the Motion to Dismiss is not

appropriate and should be denied as to the standing issue.

These factual allegations satisfy FRCP 8 and the First Circuit's standard in

*Wilson*. This Court denied a Motion to Dismiss in *Cosajay* before the Rhode Island

Supreme Court had ruled that Plaintiff has standing as a matter of Rhode Island

law. Those cases bolster Plaintiff's position as a matter of law. The allegation in

*Cosajay* which would render the assignment void was that the assigner and the

assignee did not exist as named in the assignment.   Here it has been alleged that

HSBC was not the Trustee for either of the two alleged grantees, which were

alleged to be non-existent and that such trusts did not exist. R.I.G.L. § 34-4-

28 provides that a conveyance to a named trust without reference to a trustee is  a

valid conveyance of land.  This section states:

**§ 34-4-28  Title to real estate – Trusts – Conveyance to named trust. –**
Notwithstanding the provisions of § 34-4-27, title to real estate derived from a
conveyance to a named trust by an instrument in which the trustees are not named
as grantees is not on that account defective, and the conveyance shall be deemed to
vest title to the real estate in the trustees of the named trust.

However, while a trust in Rhode Island can be conveyed a property interest

such as a mortgage without the trustee being named, a Trustee cannot be conveyed

a mortgage if the trust for which it claims to be the trustee is not designated.   This

is established by clear language of R.I.G.L. 34-4-27:

**§ 34-4-27  Title to real estate – Trusts. –** (a) Property to be held in trust shall
be conveyed to the trustees **of the subject trust**. An affidavit or memorandum
of trust may be recorded in connection with the creation, amendment,
restatement, or revocation of a trust. **Any transfer or mortgage of trust
property by the trustees shall require the recording of the trust instrument
as amended or restated, or, in the alternative, the recording of the affidavit
or memorandum of trust.** An affidavit or memorandum of trust **shall be
executed** either by each settlor of the trust, or by each current trustee and **shall
include** the following information:

(1) Name of the trust, including the name of each settlor, the name of each original
trustee, and the date of the original instrument and of each amendment or restatement;

(2) Names of the current trustees;

(3) Statement as to whether the trustees have the power to perform discretionary acts
as trustees without the consent, concurrence, or direction of the beneficiaries;

(4) Statement as to the trustee's authority to convey, mortgage, lease, or grant
restrictions or easements or any other interest in the real estate, with a copy of the
relevant provisions of the trust attached to the affidavit or memorandum;

(5) Statement as to whether anything in the trust derogates from the power of the trustees to convey, mortgage, lease, or grant restrictions or easements or any other interest in real estate;

(6) Statement as to whether the trust has been revoked or has otherwise terminated and, if the trust has been revoked or has otherwise terminated, a statement as to the trustees' power to convey trust property to effect such revocation or termination;

(7) Statement as to the manner in which the trustees are replaced and successor trustees are appointed;

(8) Statement regarding the time and manner in which the trust terminates as well as a statement as to whether the trust is revocable and, if revocable, the circumstances under which it becomes irrevocable; and

(9) Statement regarding the date and place of death of the settlor (if applicable).

(b) Any third party without actual knowledge to the contrary may rely on the validity of the statements contained in the affidavit or memorandum of trust.

(c) Any amendment or revocation of a trust or an affidavit or memorandum thereof must be recorded to constitute notice to third parties.

(d) The provisions of this section shall apply to all transactions regarding all trusts and recorded instruments pertaining to real property recorded on or after the effective date of this act. (emphasis added)

This section of the General Laws is contained within the Chapter of the Rhode Island General Laws (34-4) entitled Estates in Land. Since a mortgage is a conveyance in land in Rhode Island, which is a title state for mortgages, an assignment of mortgage must be conveyed in writing pursuant to the Rhode Island statute of frauds, R.I.G.L. § 34-11-1:

**Conveyances required to be in writing and recorded. –** Every conveyance of lands, tenements or hereditament absolutely, by way of mortgage, or on condition, use or trust, for any term longer than one year, and all declarations of trusts concerning the conveyance, shall be void unless made in writing duly signed, acknowledged as

28

hereinafter provided, delivered, and recorded in the records of land evidence in the town or city where the lands, tenements or hereditaments are situated; provided, however, that the conveyance, if delivered, as between the parties and their heirs, and as against those taking by gift or devise, or those having notice thereof, shall be valid and binding though not acknowledged or recorded.

This section requires that a mortgage assignment be duly signed and delivered. Acknowledgment and recording is not required as between the parties. The alleged second assignment was purportedly from HSBC as trustee for Home Equity Loan Trust Series ACE 2006-HE1 to HSBC as Trustee for ACE Securities Corp., Home Equity Loan Trust, Series 2006-HE1 Asset Backed Pass-Through Certificate. Plaintiff alleged in the complaint with specific facts in support of said allegation the following:

1. HSBC was not the Trustee for the alleged trust entitled ACE Securities Corp., Home Equity Loan Trust, Series 2006-HE1 Asset Backed Pass-Through Certificate.

2. HSBC was not the Trustee for the alleged trust entitled Home Equity Loan Trust Series ACE 2006-HE1.

3. The Trust referenced in the first alleged assignment does not exist under that name.

4. Both alleged trusts alleged in the second alleged assignment do not exist under that name.

In support of these allegations, Plaintiff referenced the records of the Securities and Exchange Commission and made the specific factual assertion that HSBC was not the trust for either entity, as neither existed. In support of this allegation, she identified a portion of the pooling and servicing agreement for an actual trust which contained a definition of the actual name of the trust, specifically:

ACE Securities Corp., Home Equity Loan Trust, Series 2006-HE1.

No conveyance could be made solely to HSBC as a Trustee for a non-existent trust.   The allegation based on specific facts derived from SEC records indicated that no such entity as either trust existed.   Thus sufficient facts were pleaded which warrant denial of the Motion to Dismiss.

**THE SECOND ALLEGED ASSIGNMENT WAS VOID BECAUSE R.I.G.L. § 34-11-34 REQUIRES THAT CONVEYANCES EXECUTED BY AN ATTORNEY ARE VALID ONLY IF A POWER OF ATTORNEY IS GRANTED TO THE PARTY EXECUTING THE DOCUMENT BY AN ACTUAL ENTITY AND THAT DOCUMENT IS RECORDED**

A conveyance of an interest in property can be validly conveyed to an entity pursuant to a power of attorney only if there is compliance  with the provisions of R.I.G.L. § 34-11-34**.** This section of the Rhode Island General Laws provides:

**R.I.G.L. § 34-11-34 Conveyances executed by attorney – Recording of power. –** Any conveyance executed by attorney **shall be as valid** as if executed by the grantor himself, providing that a power of attorney be given by such grantor for this purpose; which power and the deed executed by the attorney thereunder shall be signed, acknowledged, delivered and recorded

with like formalities prescribed by law concerning deeds from grantors in person. (Emphasis added)

Since the original purported assignee, Home Equity Loan Trust Series 2006-HE1 did not exist, then it was impossible for HSBC Bank U.S.A as Trustee for a non-existent trust to grant a power of attorney from it as trustee for that non-existent trust and in fact it never  granted such a power of attorney to Wells Fargo, nor was such recorded.  The Defendants have argued that HSBC solely as Trustee was the grantee and grantor.  However, as indicated in this memorandum, Rhode Island trust conveyancing law, while allowing a Trust to convey or be conveyed property without reference to the Trustee, a Trustee is not allowed to convey property without a reference to the power to do so and a definite reference to the exact trust of which it is the trustee.  Here Wells Fargo arguably recognized that there was a misnamed trust, which was not a trust nor was HSBC was the trustee for this non-existent trust.   The Defendants cite *Lister v. Bank of America*, 8 F.Supp.3d 74 (D. R.I., 2014), which can be distinguished because in *Lister*, the pro-se Plaintiffs did not raise the issue of R.I.G.L. § 34-11-34 and conceded that Bank of America, which was claimed to have not recorded the power of attorney did exist.  The claim raised in *Lister* was similar to that in Wilson, in that the Plaintiffs conceded that and assignment of the mortgage had occurred: "The same individual also signs as an agent of Homeward Residential, Inc. Thus the Lister

31

mortgage has been assigned under barely documented circumstances" This case can thus be distinguished from *Lister*.

The Plaintiff has pleaded that HSBC Bank U.S.A., National Association has never been the trustee for the non-existent Home Equity Loan Trust Series ACE 2006-HE1 and has never granted Wells Fargo a power of attorney to act on behalf of this non-existent entity. No alleged document could be ratified by HSBC Bank U.S.A., National Association as Trustee for the non-existence Home Equity Loan Trust Series ACE 2006-HE1 nor by the alleged grantee because neither of the alleged entities ever existed.  HSBC is a trustee for a different entity, namely ACE Securities Corp., Home Equity Loan Trust, Series 2006-HE1.  If these allegations are true, then Plaintiff has alleged a void assignment as in *Cosajay*.

The specifically pleaded allegation is that HSBC was not the Trustee for the non-existence Trust and never granted a Power of Attorney on behalf of a non-existence entity.  The "misnomer" acknowledged in the original answer required that a new assignment from MERS  be executed. However Wells Fargo ignored this requirement of conveyancing law and decided instead to create a document that it has admitted was not an assignment in its original answer.  Thus these factual disputes mandate that the Motion to Dismiss should be denied.

Defendant cites the case of *Murray v. Schillace*, 658 A.2d 512 (R.I., 1995),

suggesting that a minor defect is neither substantial or misleading.  In that case the

Supreme Court reversed the granting of a Motion to Vacate in a tax sale case

where a particular statute was not complied with by the slight misspelling the

mortgagor's  name  in the tax sale notice from the municipality. It cited the

provisions of R.I.G.L. § 44-9-35 as the basis for its decision:

"No tax title shall be held to be invalid by reason of any error or irregularity which
is neither substantial nor misleading, whether the error or irregularity occurs in the
proceedings of the collector or the assessors or in the proceedings of any other
official or officials charged with duties in connection with the establishment of the
tax title."

We suggest that when a bank receives a certified letter legally describing a piece of
property and when, in addition, twelve out of thirteen letters of the mortgagor's
name are correct, notice should not be disregarded when foreclosure on the piece
of property is at stake. We hold that the misspelling of the surname in the instant
case was neither substantial nor misleading under § 44-9-35 and could have been
overcome with ordinary diligence. The granting of the motion to vacate is reversed
for these reasons.

Thus the *Schillace* case can be distinguished from the present case as it was

decided by a particular statute, which afforded no relief to the mortgagor seeking

relief from the tax sale.

The other case cited by the Defendant was *Payne v. U.S. Bank National

Association*, 11-10786 (D. MA., October 24, 2013).  This case involved an Order

on Plaintiff's motion for rehearing after the case had been previously dismissed in

March 2013. This case is completely different from the present case, despite the

assertions of the Defendants' attorney in the Memorandum in support of the

Motion to Dismiss.  In *Payne,* the Plaintiff, after the case was dismissed, filed a

Motion for Reconsideration from the prior decision, claiming that the statutory

notice required by M.G.L. Title 244 Chapter 35A, required that the mortgage

originator was a particular person who needed to be identified, not the entity which

granted the mortgage. The originator was Option One Mortgage Corporation,

which was identified in the Chapter 35A notice to the Plaintiff.  However despite

this distinction, Defendants assert incorrectly in their memorandum the following:

> There, as here, the Plaintiff alleged that the assignment of her mortgage was
> invalid because it failed to set forth the correct name of the assignee trust in
> the instrument of assignment.  The Court held that "even if the Plaintiff's
> contentions were correct, she fails to state a claim (under the "void" versus
> "voidable" distinction of Culhane) because such a shortcoming would not
> void the assignment.

A copy of the Order in *Payne* is attached as Exhibit F and there is no reference to

the *Culhane* case nor any reference to the terms void or voidable. There is no

reference of any shortcomings voiding an assignment.  The *Payne* case, contrary to

the assertions of the Defendants, did not involve an assignment of mortgage where

the name of the assignee was alleged to be incorrect by the Plaintiff in that case.  A

copy of the amended complaint in that case is attached as Exhibit G along with a

copy of the Court's Order originally dismissing the case (Exhibit H), the

Defendant's Motion to Dismiss (Exhibit I) and the Plaintiff's Memorandum to

reconsider (Exhibit J) in that case. Nowhere is there any allegation as asserted by

the Defendants in their memorandum

Ironically the Court in *Payne* distinguished other Massachusetts State Court

proper notice cases.  The Court in fact pointed out that failure to properly identify

the mortgagee was a substantial defect, stating:

In the first place, many of those cases involved more substantial defects in the
section 35A notice than the minor one Payne complains of here, such as failure to
properly identify the mortgagee, Silva v. Deutsch Bank Nat'l Trust Co., 2012 WL
6016813, at *3 (Mass. Super. Nov. 14, 2012) or failure to send a notice at all,
Farmer v. Fed. Nat'l Mortg. Ass'n., 31 Mass. L. Rptr. 204 (Mass. Super. 2013).

Thus this assertion of the Defendants' attorney regarding the applicability of

*Payne* should be disregarded and the Motion to Dismiss should be denied on that

basis.

## NON-COMPLIANCE WITH R.I.G.L.§ 34-11-22 AND R.I.G.L. §34-27-4 RENDER THE ALLEGED FORECLOSURE SALE VOID

In this case, the original foreclosure sale date was September 4, 2013. This

original sale date was advertised pursuant to the provisions of R.I.G.L. § 34-11-22.

Specifically as indicated by the alleged foreclosure deed, attached as Exhibit E, on

August 14, 2013, August 21, 2013 and August 28, 2013.  However no sale

occurred on that date.  The Plaintiff had filed a Motion for a Temporary

Restraining Order, which this Court heard at a telephone conference and denied without prejudice to raising those issues at a later date.  As a result of the conference with the Court, the sale did not occur on September 4, 2013 and the attorney for Harmon Law agreed that the sale would  be adjourned to September 11, 2013.  The statute required that the proposed sale be adjourned to September 11, 2013, with an additional advertisement published on September 10, 2013 containing the Notice of Adjournment. However it was not adjourned pursuant to the statute but merely continued as indicated in the alleged foreclosure deed (Exhibit K).  In addition the sale did not go forward on September 11, 2013. Instead on September 11, 2013, the sale date was continued to September 13, 2013, with no additional advertising, nor a subsequent adjournment.  Instead it purportedly was postponed by public proclamation to September 13, 2013.  While Massachusetts has such a provision in its laws, Rhode Island does not permit or adjournment of a foreclosure already adjourned, without additional advertising. Commonwealth Auctions, a firm owned by the owner of Harmon Law Offices, P.C.,  evidently applied Massachusetts law and did not comply with the Rhode Island statute.

R.I.G.L. § 34-11-22, which provides the sole basis for a Foreclosure Deed, pursuant to statutory power of sale, allows an  adjournment of a foreclosure sale:

> with power to adjourn such sale from time to time, provided
> that publishing of the notice shall be continued, together with
> a notice of the adjournment or adjournments, at least once
> each week in that newspaper

However R.I.G.L. § 34-27-4 indicates the only manner in which a sale can

be adjourned:

> Provided, however, that if the sale is adjourned as provided in Rhode Island
> general laws § 34-11-22, **and the adjourned sale is held during the same
> calendar week as the originally scheduled day of sale, no additional
> advertising is required.** Otherwise, publication of the notice of the
> adjourned sale, together with a notice of the adjournment or adjournments,
> shall be continued at least once each week commencing with the calendar
> week following the originally scheduled day of sale; the sale, as so
> adjourned, shall take place during the same calendar week in which the last
> notice of the adjourned sale is published, at least one day after the date on
> which the last notice is published.  (Emphasis added).

As indicated by the statute, there was no compliance with the advertising

requirements.  The statute allows for an adjournment of the sale with no additional

advertising only if the initially adjourned sale is held during the same calendar

week as the **original** day of sale.  However this provision which allows no

additional advertising when the sale occurs in the same calendar week only applies

to the original day of sale, which was Wednesday September 4, 2013. However

this statute does not allow a subsequent adjournment without another

advertisement, regardless of the calendar week in which it occurs.  The statutory

scheme allowed the sale to be adjourned initially to a date within the calendar

week of the alleged adjourned advertisement, which was Tuesday September 10,

2013. (Calendar week September 8, 2013 to September 14, 2013) The failure to advertise another adjournment of the sale (or any adjournment, since all advertisements only referenced a continuance) was fatal to the exercise of the statutory power of sale.  September 11, 2013 was not the original sale date as permitted by the statute.  The use of "at least once a week:  indicates that the General Assembly envisioned more than one ad to run per week if the sale were to be adjourned more than once after an initial adjournment.

The Rhode Island Supreme Court recently analyzed this statute in *McGovern v Bank of America, N.A.* 91 A. 3d 853 (R.I., 2014). In this case a foreclosure sale was adjourned for several weeks with notice of the adjournment.  The Court held:

> A mortgagee exercising the statutory power of sale is also allowed "to adjourn [a foreclosure] sale from time to time, provided that publishing of the notice shall be continued, together with a notice of adjournment or adjournments, at least once each week * * *." *Id.* General Laws 1956 § 34-27-4(a), in turn, states that "if [a] sale is adjourned as provided in * * * § 34-11-22, * * * publication of the notice of the adjourned sale, together with a notice of the adjournment or adjournments, **shall be continued at least once each week,**" and "the sale, as so adjourned, shall take place during the same calendar week in which the last notice of the adjourned sale is published, at least one day after the date on which the last notice is published." (emphasis added).

Thus the Supreme Court specifically referenced the possibility of a notice of adjournment to be continued **at least** once each week, which indicates that the statutory scheme of the Rhode Island General Laws and the Supreme Court

holding, establish that a subsequent adjournment of a sale requires Notice of the

Adjournment to be published every time that the sale is subsequently adjourned.

Defendant's Memorandum failed to analyze the particular statutory language and

instead merely, without authority, moved to dismiss which ignored the clear and

precise mandatory language of the two statutes.  The limitation of additional

advertising only applied to the original sale date, which was not September 11,

2013 but instead was September 4, 2013.

   In addition, the Motion to Dismiss, the Defendants changed their attack,

which in the Motion to Dismiss the Second Amended complaint claimed that  that

the allegation in the complaint that no representative of the Defendants bid at the

foreclosure sale was a "baseless allegation".  The Plaintiff's specific allegation in

paragraph 93 of the Amended Complaint is that :

   No person bid at the alleged sale on behalf of any party.   The only person
present was the auctioneer at the alleged sale on September 13, 2013. The Plaintiff
and the paralegal for her attorney were on the sidewalk in front of the house for the
entire time while the auctioneer was present and saw that no one else appeared at
the purported sale to bid.

   The Defendants ignore the specific allegation that No person did at the

alleged sale on behalf of any party and seek to draw the  attention away from this

allegation by addressing the concept that there is nothing in Rhode Island law

which requires a bidder to be present at a foreclosure auction.  However the

disputed fact that no person bid at the alleged sale on behalf of any party raises

issues of disputed fact that cannot be resolved in a Motion to Dismiss.  .  The

Plaintiff has alleged in the amended complaint that on September 13, 2013 at the

time of the alleged sale that she was present outside her house with the legal

assistant of her attorney and that no one appeared at the alleged sale to bid on

behalf of the Defendants and that the only person present at that time was the

auctioneer. Such additional facts to rebut the Defendants' contrary assertions i the

Motion to Dismiss.

## PLAINTIFF'S CLAIM FOR FAILURE TO IDENTIFY THE OWNER OF THE NOTE PURSUANT TO TILA IS A VIABLE CAUSE OF ACTION

One of the claims of the Plaintiff is brought pursuant to the provisions of 15 U.S.C.

§1641(f).  The appropriate section of TILA provides:

**(f) Treatment of servicer**

**(1) In general**

A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation.

(2) Servicer not treated as owner on basis of assignment for administrative convenience

A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as the owner of the obligation for purposes of this section on the basis of an assignment of the obligation from the creditor or another assignee to the servicer solely for the administrative convenience of the servicer in servicing the obligation. **(Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation)**. (Emphasis added)

**(3) "Servicer" defined**

For purposes of this subsection, the term "servicer" has the same meaning as in section 2605 (i)(2) of title 12.

**(4) Applicability**

This subsection shall apply to all consumer credit transactions in existence or consummated on or after September 30, 1995. (Emphasis added)

**(g) Notice of new creditor**

**(1) In general**

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—

**(A)** the identity, address, telephone number of the new creditor;

**(B)** the date of transfer;

**(C)** how to reach an agent or party having authority to act on behalf of the new creditor;

**(D)** the location of the place where transfer of ownership of the debt is recorded; and

**(E)** any other relevant information regarding the new creditor.

**(2) Definition**

As used in this subsection, the term "mortgage loan" means any consumer credit transaction that is secured by the principal dwelling of a consumer.

Thus under this statute, the owner of the note is liable for failure of the servicer t

identify the owner of the note within a reasonable time after the Request.  In this

case a Request was made pursuant to TILA and Wells Fargo refused to provide the

actual owner. The reason can only be speculated, although this statute does not

require any improper purpose. Rather there is strict liability under which the owner

of the loan is liable for the inaction of the loan servicer, pursuant to the provisions

of 15 U.S.C. § 1640 is liable for statutory damages between $400.00 and $4000.00

along with attorney fees and costs.  That statute provides:

**(a) Individual or class action for damages; amount of award; factors determining amount of award**

Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, subsection (f) or (g) ofsection 1641 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

**(1)** any actual damage sustained by such person as a result of the failure;

**(2)**

**(A)**

**(i)** in the case of an individual action twice the amount of any finance charge in connection with the transaction,

**(ii)** in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $200 nor greater than $2,000,

**(iii)** in the case of an individual action relating to an open end consumer credit plan that is not secured by real property or a dwelling, twice the amount of any finance charge in connection with the transaction, with a minimum of $500 and a maximum of $5,000, or such higher amount as may be appropriate in the case of an established pattern or practice of such failures; [1] or

**(iv)** in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000; or

Plaintiff sued John Doe, alias as the alleged creditor and filed discovery to

determine the actual owner and then to amend the complaint to include that

defendant. The complaint was filed within one year of the refusal to provide the

response. Thus the complaint was properly pleaded and should not be subject to

dismissal.

The Defendants' incorrectly stated in the Memorandum of Law on page 17:

No provision in Section 1641 (TILA) requires a creditor, or creditor's servicer (or anyone) to respond to a borrower's request for the name of the owner of the Mortgage Note.

This assertion ignores section 1641(f), referenced above which states:

**Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation**.

Plaintiff, through her attorney made this request, which has to date not been

responded to by the servicer.

This issue arose in *Pike v. Bank of America, N.A. No.* 1:14 CV 2529, N.D,

OH (June 19, 2015), in which the District Court denied a Motion to Dismiss an

identical claim, stating:

The Sixth Circuit has "repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer." *Marais v. Chase Home Finance LLC,* 736 F.3d 711, 714 (6th Cir. Ohio 2013)*; Begala v. PNC Bank, Ohio, Nat'l Ass'n,* 163 F.3d 948, 950 (6th Cir. Ohio 1998).

15 U.S.C. § 1641(f)(2) provides that "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." TILA does not impose liability upon a servicer who is not an owner of the loan. *Marais,* 736 F.3d at 718-19. However, a mortgage owner may be held vicariously liable for a servicer's failure to comply with 15 U.S.C. § 1641(f).*See Marais,* 736 F.3d at 716-17; *Kissinger v. Wells Fargo Bank, N.A.,* 888 F. Supp. 2d 1309, 1315 (S.D. Fla. Aug 30, 2012).

Although TILA does not provide a time period within which a request under § 1641(f)(2) must be answered, the servicer must respond within a reasonable period of time. *Ording v. BAC Home Loans Servicing, LP,* Civ. No. 10-10670, 2011 U.S. Dist. LEXIS 83269, at *9 (D. Mass. Jan. 10, 2011); 12 C.F.R. § 226.36(c)(1)(iii)). "[A] violation of § 1641(f)(2) occurs, as some courts have sensibly concluded, either (i) after a `reasonable time' has passed since the obligor sent a request without the servicer having sent any response, or (ii) when the servicer sends an inadequate response to that request." *Bradford v. HSBC Mortg. Corp.,* 829 F. Supp. 2d 340, 352 (E.D. Va. 2011). "In other words, the limitations period applicable to a § 1641(f)(2) claim begins to run at the earlier of the expiration of a reasonable time or the sending of an inadequate response." *Id.* Damage claims are subject to a one-year statute of limitations. 15 U.S.C. § 1640(e).

Thus the Motion to Dismiss relating to the TILA claim should be denied. In the event that the pleading inadvertently referenced the RESPA provision, the Plaintiff has to amend to reference 1641(f) as the basis for liability.

## PLAINTIFF PROPERLY PLEADED A CLAIM UNDER RESPA FOR FAILURE TO IDENTIFY THE OWNER OF THE NOTE AND FOR MULTIPLE VIOLATIONS OF RESPA

Just as TILA imposes liability on the creditor for failure to identify the owner of the note, RESPA likewise provides liability on the servicer for failure to identify the owner of the obligation, within ten days of receipt of the Request for Information. On April 21, 2014 Defendant, Wells Fargo received a Request for Information regarding the identity and other information relating to the owner of the mortgage note. This Request is referenced in the second amended complaint at paragraphs 134-141. No response has ever been made by Wells Fargo to this Request for Information.  After receiving no response, the Plaintiff sent a Notice of

Error to Wells Fargo referencing this failure to respond to a Request for

Information for the identity of the owner of the note.  This Notice of Error is

referenced in paragraphs 246-253 of Plaintiff's Second Amended Complaint.  Thus

the Plaintiff adequately pleaded RESPA violations and damages in incurring

postage and other costs as well as traveling to the Plaintiff's attorney's office

regarding the Notice of Error in regard to this particular violation.

Defendant, Wells Fargo contends that it cannot be liable for more than

$2,000.00 statutory damages per case.  It cites the FDCPA statute as the basis for

this contention. However, the FDCPA statute varies from RESPA.  15 U.S.C. §

1692k(a)(2)(A) limits recovery to $1,000.00 per action:

**(a) Amount of damages**

Except as otherwise provided by this section, any debt collector who fails to
comply with any provision of this subchapter with respect to any person is liable to
such person in an amount equal to the sum of—
**(1)** any actual damage sustained by such person as a result of such failure;
**(2)(A)** in the case of any action by an individual, such additional damages as the
court may allow, but not exceeding $1,000; or
However when the RESPA statute, 12 U.S.C. 2605 was amended, the section
indicating the liability for failure to respond differed significantly from the FDCPA
provision:

**(f) Damages and costs**

Whoever fails to comply with any provision of this section shall be liable to the
borrower **for each such failure** in the following amounts:
**(1) Individuals**
In the case of any action by an individual, an amount equal to the sum of—
**(A)** any actual damages to the borrower as a result of the failure; and

**(B)** any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.00 (Emphasis added).

This statute specifically imposes liability for actual damages and additional statutes damages and additional statutory damages upon a showing of pattern and practice for each failure to respond or otherwise comply with RESPA. A review of the complaint indicates that the Plaintiff has alleged that she sent twenty Request for Information to Wells Fargo and received no timely response, nor any response at all.  She also alleges that she sent twenty-eight notices of error to Wells Fargo and received no timely response nor any response at all.  Thus the failure of Wells Fargo to respond to 28 RESPA requests has established the pattern and practice of Wells Fargo to basically ignore Regulation X Requests for Information and Notices of Error.  This evidence of pattern and practice  results in the establishment of liability for statutory damages for each violation of RESPA, including the failure to identify the owner of the note and all the other 28 Requests for Information and Notices of Error.

It should be noted that Plaintiff has since filing the Second Amended Complaint has sent Wells Fargo a number of Notices of Error, which have been incorporated in this Third Amended Complaint.  These reference all the Requests for Information or the Notices of Error, which were either not acknowledged or not responded to by Wells Fargo. Thus any actual damages which occurred as a result

of the costs incurred in sending the notices of errors for the 20 Requests for

Information, which were not responded to prior to the filing of the Third Amended

Complaint.  These Requests for Information are all related to the servicing of the

mortgage loan. The failure to provide loss mitigation information is a valid topic of

servicing pursuant to the enactment of Regulation X on January 10, 2014.  Thus if

the foreclosure as alleged was not valid, then Wells Fargo must comply with this

statute and regulation.

Defendant, Wells Fargo, has contended, without any supporting case law,

that a failure to respond to a Notice of Error is not an error, which results in

damages. The provisions of Regulation X and RESPA suggest that Defendant's

position is not sound. 12 C.F.R. 1024.35 provides:

(a) *Notice of error.* A servicer shall comply with the requirements of this section
for any written notice from the borrower that asserts an error and that includes the
name of the borrower, information that enables the servicer to identify the
borrower's mortgage loan account, and the error the borrower believes has
occurred. A notice on a payment coupon or other payment form supplied by the
servicer need not be treated by the servicer as a notice of error. **A qualified
written request that asserts an error relating to the servicing of a mortgage
loan is a notice of error for purposes of this section, and a servicer must
comply with all requirements applicable to a notice of error with respect to
such qualified written request. ( emphasis added)**

(b) *Scope of error resolution.* For purposes of this section, the term "error" refers to
the following categories of covered errors:

(1) Failure to accept a payment that conforms to the servicer's written requirements
for the borrower to follow in making payments.

(2) Failure to apply an accepted payment to principal, interest, escrow, or other charges under the terms of the mortgage loan and applicable law.

(3) Failure to credit a payment to a borrower's mortgage loan account as of the date of receipt in violation of 12 CFR 1026.36(c)(1).

(4) Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner as required by § 1024.34(a), or to refund an escrow account balance as required by § 1024.34(b).

(5) Imposition of a fee or charge that the servicer lacks a reasonable basis to impose upon the borrower.

(6) Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 CFR 1026.36(c)(3).

(7) Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39.

(8) Failure to transfer accurately and timely information relating to the servicing of a borrower's mortgage loan account to a transferee servicer.

(9) Making the first notice or filing required by applicable law for any judicial or non- judicial foreclosure process in violation of § 1024.41(f) or (j).

(10) Moving for foreclosure judgment or order of sale, or conducting a foreclosure sale in violation of § 1024.41(g) or (j).

(11) Any other error relating to the servicing of a borrower's mortgage loan.

RESPA requires that a servicer respond to Requests for Information and Notices of Error in a timely fashion.  The Notice of Error process incorporates 12 CFR § 1024.36 which states:

## § 1024.36   Requests for information.

(a) *Information request.* A servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is

requesting with respect to the borrower's mortgage loan. A request on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a request for information. A request for a payoff balance need not be treated by the servicer as a request for information. A qualified written request that requests information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request.

(b) *Contact information for borrowers to request information.* A servicer may, by written notice provided to a borrower, establish an address that a borrower must use to request information in accordance with the procedures in this section. The notice shall include a statement that the borrower must use the established address to request information. If a servicer designates a specific address for receiving information requests, a servicer shall designate the same address for receiving notices of error pursuant to § 1024.35(c). A servicer shall provide a written notice to a borrower before any change in the address used for receiving an information request. A servicer that designates an address for receipt of information requests must post the designated address on any website maintained by the servicer if the website lists any contact address for the servicer.

(c) *Acknowledgment of receipt.* Within five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request.

(d) *Response to information request.* (1) *Investigation and response requirements.* Except as provided in paragraphs (e) and (f) of this section, a servicer must respond to an information request by either:

(i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or

(ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

(2) *Time limits.* (i) *In general.* A servicer must comply with the requirements of

paragraph (d)(1) of this section:

(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

(ii) *Extension of time limit.* For requests for information governed by the time limit set forth in paragraph (d)(2)(i)(B) of this section, a servicer may extend the time period for responding by an additional 15 days (excluding legal public holidays, Saturdays, and Sundays) if, before the end of the 30-day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing. A servicer may not extend the time period for requests for information governed by paragraph (d)(2)(i)(A) of this section.

(e) *Alternative compliance.* A servicer is not required to comply with paragraphs (c) and (d) of this section if the servicer provides the borrower with the information requested and contact information, including a telephone number, for further assistance in writing within five days (excluding legal public holidays, Saturdays, and Sundays) of receiving an information request.

(f) *Requirements not applicable.* (1) *In general.* A servicer is not required to comply with the requirements of paragraphs (c) and (d) of this section if the servicer reasonably determines that any of the following apply:

(i) *Duplicative information.* The information requested is substantially the same as information previously requested by the borrower for which the servicer has previously complied with its obligation to respond pursuant to paragraphs (c) and (d) of this section.

(ii) *Confidential, proprietary or privileged information.* The information requested is confidential, proprietary or privileged.

(iii) *Irrelevant information.* The information requested is not directly related to the borrower's mortgage loan account.

(iv) *Overbroad or unduly burdensome information request.* The information

request is overbroad or unduly burdensome. An information request is overbroad if a borrower requests that the servicer provide an unreasonable volume of documents or information to a borrower. An information request is unduly burdensome if a diligent servicer could not respond to the information request without either exceeding the maximum time limit permitted by paragraph (d)(2) of this section or incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances. To the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer shall comply with the requirements of paragraphs (c) and (d) of this section with respect to that requested information.

(v) *Untimely information request.* The information request is delivered to a servicer more than one year after:

(A) Servicing for the mortgage loan that is the subject of the information request was transferred from the servicer receiving the request for information to a transferee servicer; or

(B) The mortgage loan is discharged.

(2) *Notice to borrower.* If a servicer determines that, pursuant to this paragraph (f), the servicer is not required to comply with the requirements of paragraphs (c) and (d) of this section, the servicer shall notify the borrower of its determination in writing not later than five days (excluding legal public holidays, Saturdays, and Sundays) after making such determination. The notice to the borrower shall set forth the basis under paragraph (f)(1) of this section upon which the servicer has made such determination.

(g) *Payment requirement limitations.* (1) *Fees prohibited.* Except as set forth in paragraph (g)(2) of this section, a servicer shall not charge a fee, or require a borrower to make any payment that may be owed on a borrower's account, as a condition of responding to an information request.

(2) *Fee permitted.* Nothing in this section shall prohibit a servicer from charging a fee for providing a beneficiary notice under applicable State law, if such a fee is not otherwise prohibited by applicable law.

(h) *Servicer remedies.* Nothing in this section shall prohibit a servicer from furnishing adverse information to any consumer reporting agency or pursuing any of its remedies, including initiating foreclosure or proceeding with a foreclosure sale, allowed by the underlying mortgage loan instruments, during the time period

that response to an information request notice is outstanding.

A Notice of Error must be responded to within thirty business days of receipt and must be acknowledged within thirty business days of receipt. In the case of *Guccione v JPMorgan Chase Bank, N.A.* (N.D., CA, 2015), the District Court held that a failure to respond to a Notice of Error was an error which was subject to liability pursuant to RESPA. The Court noted:

> On January 10, 2014, new regulations went into effect through the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010. Pub. L. No. 111-203, 124 Stat. 1376 (July 21, 2010) ("Dodd-Frank Act"). The regulations, which were promulgated pursuant to RESPA, are known as "Regulation X," and are codified at 12 C.F.R. § 1024, increase a loan servicer's obligations to respond to a qualified written request. For example, section 1024.35, which is the regulation at issue here, requires a loan servicer to respond to a "notice of error" is specific ways. In light of the newness of this regulation and the relative lack of authority interpreting it, the court quotes it in full below:

> (a) Notice of error. A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred. A notice on a payment coupon or other payment form supplied by the servicer need not be treated by the servicer as a notice of error. **A qualified written request that asserts an error relating to the servicing of a mortgage loan is a notice of error for purposes of this section, and a servicer must comply with all requirements applicable to a notice of error with respect to such qualified written request. (Emphasis added)**

The court held that a servicer who failed to comply with a Notice of Error

could be liable for   "any actual damages to the borrower as a result of the failure."

It also stated:

> While Plaintiffs' alleged damages stem from Chase errors, they also
> implicate Chase's failure to comply with RESPA. Plaintiffs' allegations support the
> theory that had Chase actually conducted a reasonable investigation, it would have
> realized that it was overcharging Plaintiffs' escrow account and was unnecessarily
> force-placing insurance on their property, it would have stopped, and Plaintiffs'
> saga would be resolved. Chase did not conduct a reasonable investigation (so
> Plaintiffs allege), and thus they must continue paying their attorney fees to try and
> resolve the problems and continue dealing with this headache.  For the reasons
> explained above, the court finds that Plaintiffs sufficiently allege a claim against
> Chase for violating 12 C.F.R. § 1024.35(e)(1)(i)(B).

Thus in a case analogous to this case, a Motion to Dismiss was denied.

In *Hastings v. Ocwen Loan Servicing, LLC*, Civil Action No. GLR-14-2244

(D.Md, February 2, 2015).  The District Court reviewed a similar RESPA

Complaint.  The Court held:

> The Court will deny Ocwen's Motion to Dismiss as to Count IV of the
> Amended Complaint. RESPA requires the servicer of a federally related
> mortgage loan to acknowledge receipt of a QWR within five business days
> of receipt. [FN3] 12 U.S.C. § 2605(e)(1)(A) (2012); 12 C.F.R.
> § 1024.35 (2014). Thereafter, within thirty business days, the servicer must
> (1) make corrections to the borrower's account; (2) after conducting an
> investigation, provide a written explanation stating the reasons the servicer
> believes the account is correct; or (3) conduct an investigation and provide
> the information requested by the borrower or an explanation of why the
> information is unavailable. 12 U.S.C. § 2605(e)(2). In the event a servicer
> fails to comply with this requirement, RESPA authorizes a plaintiff to
> recover actual damages "as a result of" the servicer's failure. 12 U.S.C.
> § 2605(f).

Hastings alleges, and Ocwen does not deny, that Ocwen failed to timely acknowledge his QWR within five business days.[FN4] Further, Hastings alleges Ocwen's response did not address the loan for which he requested information. Finally, Hastings alleges Ocwen did not provide the information requested within the thirty-day time limit under RESPA. Thus, Hastings has sufficiently alleged Ocwen failed to conduct an investigation of the errors on his account or provide a sufficient response. *See Powell v. Aegis Mortg. Corp.,* No. DKC 2006–1198, 2007 WL 98372, at *8 (D.Md. Jan. 11, 2007) (finding party sufficiently alleged loan servicer's response was not "adequate under RESPA" by demonstrating servicer failed to conduct adequate investigation). Accordingly, the Motion to Dismiss will be denied as to Count IV.

The Court held:

A plaintiff claiming a RESPA violation must allege not only a breach of a duty required to be performed under RESPA, but must also show that the breach caused him to suffer damages. Hutchinson v. Del. Sav. Bank FSB, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) (citing 12 U.S.C. § 2605(f)(1)(A) ("Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure . . . [for] any actual damages to the borrower as a result of the failure. . . .")). "Actual damages encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicer, and expenses for preparing, photocopying and obtaining certified copies of correspondence." Cortez v. Keystone Bank, Inc., No. Civ.A.98-2457, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000). If a plaintiff prevails on a RESPA claim, he or she is entitled to "actual damages" from the RESPA violation. 12 U.S.C. § 2605(f)(1).

The Court cited this part of the statute:

With respect to a Notice of Error, a mortgage servicer must first, within five days of receipt of such a notice from a borrower, provide to the borrower a written response acknowledging such receipt. 12 C.F.R. § 1024.35(d).

A Motion to Dismiss was denied in *Hastings.*  It cited *Marais v. Chase*

*Home Finance LLC,* 736 F.3d 711, 714 (6th Cir. Ohio 2013) that a mere form

response to Notice of Error and Request for Information did not satisfy RESPA's

requirements.

The Court held: the servicer must now provide the borrower "with a written
notification that includes a statement that the servicer has determined that no error
occurred, a statement of the reason or reasons for this determination, a statement of
the borrower's right to request documents relied upon by the servicer in reaching its
determination, information regarding how the borrower can request such
documents, and contact information, including a telephone number, for further
assistance." 12 C.F.R. § 1024.35(e)(1)(i)(A). Moreover, Plaintiff has alleged that
Defendant's response did not contain the required statements—new obligations
under Regulation X—that no error had occurred and that she was entitled to
request copies of all documents relied upon in determining that no servicing error
had occurred. (Id. ¶ 91(citing 12 C.F.R. § 1024.35(e)(i)(B)).) Taking Plaintiff's
well-pled allegations as true—as the Court must in the context of a Rule 12(b)(6)
Motion—the Court finds that Plaintiff's RESPA allegation with respect to her
Notice of Error states a plausible claim for relief.

In short, the Court finds that Plaintiff's RESPA claims (Counts I and II)
plead plausible claims for relief. While the law is clearly unsettled as to the
scope of Defendant's duties under 12 U.S.C. § 2605 as amended by
Regulation X, it appears that Regulation X requires more than mere
procedural compliance with the enumerated duties. In light of the standard
of review under Rule 12(b)(6) and the well-pled allegations of Plaintiff's
Complaint, the Court must deny Defendant's Motion to Dismiss these
claims.

In *Peters v Bank of America, N.A.* (3:14-cv-513 E.D. Va., 2015) the Court held:

RESPA is a "consumer protection statute enacted to regulate real estate
settlement processes." *Berneike v. CitiMortgage, Inc.,* 708 F.3d 1141, 1145
(10th Cir. 2013)(citing 12 U.S.C. § 2601). RESPA defines a QWR as

a written correspondence . . . that (i) includes, or otherwise enables the
servicer to identify, the name and account of the borrower; and (ii) includes
a statement of the reasons for the belief of the borrower, to the extent
applicable, that the account is in error or provides sufficient detail to the
servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). If a borrower sends a QWR to a servicer of a federally related mortgage loan, and the servicer fails to adequately respond under the statute to the borrower's request, then the servicer faces liability for actual damages suffered by the borrower and for statutory damages if the plaintiff can show a pattern or practice of RESPA violations. *Id.* §2605(e)-(f). (emphasis added)

Thus *Peters* supports Plaintiff's position.

In the case of *Marais v. Chase Home Finance, LLC*, the 6th Circuit reversed the dismissed of an action in which Plaintiff had sent a QWR alleging an error. Chase did not correct the claimed error.  Thus even under the old QWR RESPA analysis, the Plaintiff's complaint is viable.

In *Russell v. Nationstar Mortgage, LLC* (D. F1., February 9, 2015).  The Defendant servicer, Nationstar,  filed a Motion to Dismiss.  The pleaded damages of mailing costs and postage costs were alleged to have been incurred as a result of Defendant's response to the QWR.  Thus the Motion to Dismiss was denied.  The Motion to Dismiss relating to Statutory Damages for failure to specify the number of violations, which established pattern and practice was granted without prejudice. The Plaintiff did not specify the actual basis for the pattern and practice.  In this case, Plaintiff has specified the number of violations as to which there was no compliance.

In *Justice v. Ocwen Loan Servicing*, No. 2:13-CU 165, (S.D. Ohio, January 16, 2015) the Court, allowed actual damages for all expenses arising from the Servicer's failure to respond.  It granted Plaintiff's Motion for Summary Judgment

relating to liability and scheduled trial for damages.

In the case of *McKay v. JPMorgan Chase Bank, N.A.*, (2:14-cv-512, S.D., OH, November 3, 2014, the Court relying on *Marais*, denied a Motion for Judgment on the Pleadings as to a RESPA claim based on failure to allege damages. The Court held that *Marais* allowed damages. The Court held:

> Defendant maintains that plaintiff's RESPA claim fails to allege any actual damages, however, in *Marais v. Chase Home Finance* , the Sixth Circuit reversed the dismissal of a RESPA claim because it reasonably inferred that the failure to correct or investigate misapplied payments caused the plaintiff to pay interest on a higher principal balance than she should have. 736 F.3d 711, 720-21 (6th Cir. 2013). The *Marais* decision emphasized that on a motion for judgment on the pleadings the court should not prejudge whether a plaintiff can prove actual damages. In addition to the specific holding that additional fees incurred by reason of the bank misapplying payments constituted actual damages, the court recognized that the costs incurred in preparing a QWR might be recoverable as actual damages. Here, the complaint alleges:

> The basis of Borrower's QWR request was that Borrower's believed that payments from July 2012 were being misapplied or outright wrongly rejected and the request was made to Chase to reasonably investigate and correct Borrower's Credit pursuant to 12 U.S.C. § 2605(e). By failing to respond to this specific inquiry, Chase has continued to misapply payments and cause the Borrower's credit rating to be affected in violation of 12 U.S.C. § 2605(e). *See Johnstone v. Bank of America, N.A.,* 173 F. Supp. 2d 809, 814 (N.D. Ill. 2001). Compl. ¶ 37. The complaint further alleges that "the totality of the actual damages has yet to be ascertained due to the ongoing litigation expenses. . . . The remaining actual damages to be determined at trial can still be considered since they relate to the original RESPA violation." *Id.* at ¶ 41. Under *Marais,* plaintiff has stated a claim upon which relief may be granted.

Thus more so as in *Mckay*, this complaint has made significantly specific

allegations as to damages to state a claim.  The Plaintiff has adequately pleaded

damages for the costs associated with transmitting the respective Notices of Error

by certified mail and by incurring the cost of gasoline in  driving to her attorney's

office to discuss the Notices of Error and the responses of Wells Fargo.

## WELLS FARGO WAS A DEBT COLLECTOR PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT

Defendant has filed a Motion to Dismiss, claiming that Wells Fargo Bank,

N.A. was not a debt collector within the meaning of the FDCPA. This Motion

ignores the allegation in paragraph 122-124  of the  Third Amended Complaint:

122.   Wells Fargo is a debt collector as defined by 15 U.S.C. § 1692 et seq.
Wells Fargo using the name of America's Servicing Company regularly collects
debts for other entities in the ordinary course of its business.  In fact it regularly
references itself as a debt collector and has referred to itself as debt collector in its
communications to the Plaintiff. On February 5, 2013 America's Servicing
Company referred to itself as a debt collector in its letter to the Plaintiff.

123.   The original loan service for the Plaintiff's loan was Fremont.

124.   When Wells Fargo became the loan servicer for Plaintiff's mortgage and
note in 2006, the Plaintiff's loan was in default and had been charged late fees,
which were charged to the Plaintiff's mortgage loan account when servicing
transfer occurred.

Thus pursuant to the provisions of 15 U.S.C. § 1692a(6)(F)(iii), a loan servicer is

deemed to be a debt collector when it obtains servicing rights when  the loan is in

default.  Such specific allegations against Wells Fargo have not been rebutted.

However the Defendant has failed to cite any First Circuit cases or District Court cases which support its position.  Numerous cases in the First Circuit support the Plaintiff's position.  In the case of *JPMorgan Chase Bank, N.A. Mortgage Modification Litigation* 880 F.Supp.2d 220 (D. MA., 2012) the Court held:

"Although there is no statutory definition of `loan servicer' under the Act, a loan servicer will become a debt collector under § 1692a(6)(F)(iii) if the debt was in default or treated as such when it was acquired." *Id.,* at 360 n. 4. *See also Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir.2003)* ("In other words, the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not."); *FTC v. Check Investors, Inc., 502 F.3d 159, 171-173 (3d Cir.2007)* (same).[44]

In *McCusker v Ocwen Loan Servicing, LLC*, 14-13663, (D. MA., July 27, 2015) the Court denied a Motion to Dismiss in a case alleging a violation of Section 1692a.

A "debt collector" is "any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Mortgage servicing companies qualify as debt collectors under the statute if the mortgage at issue was in default, but not being foreclosed upon, at the time they began servicing the loan. See In re JPMorgan Chase Mortg. Modification Litigation, 880 F. Supp. 2d 220, 243 (D. Mass. 2012) (citing Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 359 (6th Cir. 2012)); Speleos v. BAC Home Loans Servicing, L.P., 824 F. Supp. 2d 226, 232-233 (D. Mass. 2011). Here, the court accepts the Complaint's assertion that the loan was in default when Ocwen received it, thereby qualifying Ocwen as a debt collector under the **FDCPA**. See 15 U.S.C. § 1692a(6).

It also dealt with identical facts to the allegations in this case:

Here, Plaintiffs state their counsel notified Ocwen they were bringing suit concerning their mortgage, and all future correspondence should be directed to their counsel. (Id. ¶ 31.) Plaintiffs also allege Ocwen continued to contact Plaintiffs

regarding their loan by telephone and in writing. (Id. ¶ 32.) Therefore, Ocwen, as a debt collector, violated the FDCPA by communicating with Plaintiffs in connection with the collection of a debt, after learning Plaintiffs were represented by an attorney. See 15 U.S.C. § 1692c(a)(2). Accordingly, given that other elements have been sufficiently pled, the court denies Defendant's motion to dismiss with respect to Plaintiffs' FDCPA claim. See Stagikas, 795 F. Supp. 2d at 138; Harrington, 508 F. Supp. 2d at 132.

Another case which held that a loan servicer could violate the FDCPA by communicating with a consumer represented by an attorney was *Stagikas v. Saxon Mortgage Servicing* 759 S. Supp. 2d 129 (D. MA., 2011). In *Stagikas*, the Plaintiff had alleged that Saxon Mortgage had contacted the Plaintiff, through its attorney, despite its knowledge that the Plaintiff was represented by an attorney. The Court denied the Motion to Dismiss, stating:

> nothing in the statute suggests that a single letter is insufficient to violate § 1692c. "The **FDCPA** imposes strict liability on debt collectors for their violations [and]. . . [p]laintiff need only show a violation of one of the**FDCPA's** provisions to make out a prima facie case." *Harrington v. CACV of Colo., LLC,* 508 F.Supp.2d 128, 132 (D.Mass.2007). Plaintiff alleges that defendant sent him a collection-related letter after it learned he was represented by counsel; under the language of the statute, that appears to state a claim. Accordingly, defendant's motion to dismiss will be denied as to the claim under § 1693c.

This case is almost identical to the present case as it relates to communications sent the Plaintiff by Wells Fargo, through its agent, Harmon Law Offices in violation of the FDCPA.

In *Justice v. Ocwen Loan Servicing*, No. 2:13-CU 165, (S.D. Ohio, January 16, 2015) the Court found that Ocwen acted as a debt collector for purposes of the

FDCPA because it acquired a debt in default or treated a debt as if it were in

default at the time of acquisition.

The issue of whether Wells Fargo is a debt collector was recently resolved in

the case of *Pimental v Wells Fargo Bank, N.A.* et al CA No. 14-494S (D. R.I.,

January 5, 2016).  In this case, Chief Judge Smith held that Wells Fargo was a debt

collector by using the assumed name of Americas Servicing Company :

The R&R found that Wells Fargo "falls outside of the exemption from the
definition of an FDCPA debt collector available to a creditor collecting its own
debt" because Plaintiffs pled that the name America's Servicing Company ("ASC")
improperly suggested that a third party was collecting Wells Fargo's debt. (R&R
14, ECF No. 20.) Wells Fargo's first argument that its "principal purpose" is not
debt collection seems to misunderstand Magistrate Judge Sullivan's
recommendation. She did not find that Wells Fargo meets the general definition of
a debt collector, but rather that, due to its use of the ASC name, Plaintiffs have
adequately pled that it falls into the exception for a "creditor who, in the process of
collecting his own debts, uses any name other than his own which would indicate
that a third person is collecting or attempting to collect such debts." See 15 U.S.C.
§ 1692a(6). Wells Fargo is correct that Plaintiffs did not plead that its principal
purpose is debt collection (nor could they), but this is irrelevant to whether Wells
Fargo nonetheless falls into the creditor exception, as the R&R found.

### PLAINTIFFS HAVE PROPERLY PLEADED THAT THERE WAS NO COMPLIANCE WITH R.I.G.L. §34-27-3.1

Plaintiff also alleged that the provisions of  RIGL 34-27-3.1 were not complied

with resulting in a void foreclosure. This statute, which was in effect in 2013

provides:

**Foreclosure counseling. –** (a) No less than forty-five (45) days prior to
initiating **any** foreclosure of real estate pursuant to subsection 34-27-4(b),
**the mortgagee** shall provide to an individual consumer mortgagor written

notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices.

(b) The written notice required by this section shall be in English and Spanish and, provided the same is then available, shall advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies and, the toll-free telephone number and website address maintained to provide information regarding no-cost HUD-approved mortgage counseling agencies in Rhode Island. The written notice may also contain any other information required under federal law. A form of written notice meeting the requirements of this section shall be promulgated by the department of business regulation for use by mortgagees at least thirty (30) days prior to the effective date of this section. Counseling shall be provided at no cost to the mortgagee.

(c) **Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void,** without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

(d) As used herein and in this chapter, the term "HUD" means the United States Department of Housing and Urban Development and any successor to such department. (emphasis added)

This statute was enacted in 2009 with an effective date in 2010. Historically

mortgagees had no legislative protection in regard to foreclosure of their homes.

This statute provides that at least 45 days before initiating any foreclosure pursuant

to R.I.G.L. §34-27-4(b) that a notice of foreclosure counseling be sent to the

homeowner.  The Defendant seeks to dismiss this claim, ignoring the purpose of

the legislation, which was that **any** time a mortgagee sought to commence a

foreclosure by statutory power of sale, it must send a notice of foreclosure

counseling as a condition to sending each §34-27-4(b) notice.  As alleged in the

Third Amended Complaint, the foreclosure which was commenced in July, 2013

by the 34-27-4(b) notice was not preceded by a 34-27-3.1 notice.  A prior

foreclosure notice under 34-27-4(b) was preceded by such a foreclosure counseling

notice in February, 2013.  However a review of the statute indicates that the

General Assembly sought to notify the homeowner of the right to foreclosure

counseling before eachcommencement of a foreclosure by statutory power of sale.

By the illogic of the Defendants' position, once a 34-27-3.1 notice is provided to a

homeowner, say in year one of the mortgage, such notice would suffice as

satisfying the statute, even if the foreclosure were commenced 10 years later

because the prior notice occurred at least 45 days prior to the commencement of

the foreclosure by statutory power of sale.

The General Assembly intended that the foreclosure counseling notice was a

condition precedent to the sending of a notice pursuant to 34-27-4(b).  The law

speaks of an obligation on the part of mortgagee prior to initiating any foreclosure

sale. This obligation and condition precedent applies to all sales initiated by

sending a 34-27-4(b) notice.  The clear specific purpose of the statute would be

nullified by the interpretation of the defendant.  Subsequently in 2013 and 2014,

the General Assembly replaced the notice of right to foreclosure counseling be sent

in conjunction with the right to mediation in conjunction with any commencement

of foreclosure pursuant to 34-27-4.  It expanded the rights of the homeowner

before any foreclosure was attempted, thus demonstrating the legislative intent that

34-27-3.1 was a remedial statute with a specific purpose, namely the protection of

homeowners whenever they faced a foreclosure and the resulting imposition of an

obligation on a mortgagee before it commenced any foreclosure. Judge Finkle, by

way of analogy, in *Demers*, rejected a similar argument of Wells Fargo, which

insisted that the Debtor had received prior valid default notices:

Notices received by Ms. Demers in 2008 — approximately *four years* before the
events at issue here — are completely irrelevant to whether ASC fulfilled its
contractual obligations giving rise to its right to accelerate the debt and commence
foreclosure proceedings based upon a subsequent default in 2012. Where would
ASC draw the line? If after the 2008 notices Ms. Demers cured her default, paid
faithfully for six, eight or 10 years, then defaulted again, would ASC argue that the
2008 notices satisfy its obligation under Mtg. Paragraph 22 and it could rightfully
foreclose without sending a new, updated notice? ASC obviously was aware of the
Mtg. Paragraph 22 notice requirement because it sent compliant notices to Ms.
Demers following earlier defaults.

The analogy to *Demers* is compelling as instead of a deviation from the

requirements set by the terms of the mortgage, there was a deviation from the

requirements set by statute.  The Rhode Island statute provides that failure to

comply will render the foreclosure void. For this reason alone the foreclosure

should be declared void.   A final reason for non-compliance with the provisions of

34-27-3.1 is that the mortgagee must send this notice.  Since the Defendants have

admitted in their original answer that the document referenced as an assignment in

the Plaintiff's original complaint was not an assignment, this alleged holder of the

mortgage was not in fact the mortgagee, not to mention that this trust did not exist.

The reference to HSBC Bank as Trustee by the Defendants disputes the factual

allegation that HSBC Bank was not the Trustee for either of the non-existence

trusts.  This issue of a disputed fact in the complaint as to whether the February

2013 notice was sent by the mortgagee cannot be resolved in a Motion to Dismiss.

The allegations of the complaint are taken to be true and if true  would renders this

alleged foreclosure void pursuant to the statute.

## CONCLUSION

The Plaintiff has made highly specific allegations in their pleadings, which

should survive a Motion to Dismiss as to all counts.  The Defendants' arguments

are all based on contrary factual assertions which cannot be resolved in a Motion to

Dismiss. A finding by a finder of fact is the only manner in which these disputes

can be resolved.  For these reasons, the Motion to Dismiss should be denied.

Respectfully submitted,

April 5, 2016

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401)943-9230
jbelaw@aol.com

<u>CERTIFICATION</u>

I hereby certify that I emailed a copy of this Memorandum to the following

on the 5th day of April, 2016.


Lauren J. O'Connor, Esq.
Seyfarth Shaw, LLP
World Trade Center East
Two Seaport Lane
Suite 300
Boston, MA 02210-4800

<u>/s/ John B. Ennis</u>