UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ERNESTINA GARCIA,<br><br>    Plaintiff,<br><br>v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR HOME EQUITY LOAN TRUST SERIES ACE 2006-HE1, ALIAS, HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2006-HE1, ASSET BACKED PASS-THROUGH CERTIFICATES, ALIAS WELLS FARGO BANK, N.A. ALIAS AND JOHN DOE<br><br>    Defendants. | Civil Action No. 1:13-cv-00617-M-LDA |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE PLAINTIFF'S THIRD AMENDED COMPLAINT

Pursuant to Local Rule 7(b)(2), Defendants HSBC Bank, USA, National Association as Trustee for ACE Securities Corp. Home Equity Trust, Series 2006-HE1 ("HSBC")[1] and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively "Defendants") submit this reply brief in further support of their Motion to Dismiss ("Motion"). After filing a ninety-two (92) page Third Amended Complaint ("Complaint") containing 570 numbered paragraphs, Plaintiff has again buried Defendants and this Court with paper in order to delay this case, which is nearly three years old and still at the motion to dismiss stage. Plaintiff's opposition ("Opposition") is ***529 pages***, contains 11 exhibits and five addenda, and repeats the allegations of the Complaint

---

[1] HSBC Bank, USA, National Association is the mortgagee of record and serves as trustee for ACE Securities Corp. Home Equity Trust, Series 2006-HE-1. Wells Fargo Bank, N.A. is the servicer of the Plaintiff's loan. Plaintiff asserts claims against their aliases.

without addressing its legal deficiencies. Defendants will not reply to all of the Opposition's claims but will rather focus only on the issues relevant to adjudicating Defendants' Motion.[2]

A. **DEFENDANTS' DEFAULT NOTICE COMPLIED WITH THE MORTGAGE**

Plaintiff devotes the first nine pages of her Objection to bolstering her claim that Defendants failed to comply with Paragraph 22 of the Mortgage, on the grounds that the default notice (attached as Exhibit D to Defendants' Motion to Dismiss ("Motion")) was sent by America's Servicing Company, instead of the "Lender." *See* Objection at pp. 3, 5, 8, 11-12. However, Rhode Island law does not require the lender to personally send the default notice. The sole Rhode Island case cited by Plaintiff, *In re Demers*, 511 B.R. 233 (Bankr. R.I. 2014), effectively holds the opposite. In *In re Demers*, by finding that ASC failed to satisfy a condition precedent to its rights to accelerate the debt and pursue its foreclosure remedy, the Rhode Island Bankruptcy Court implicitly confirmed ASC's proper role as servicer in sending such notices on behalf of the foreclosing entity.

Plaintiff also cites *Paiva v. Bank of New York Mellon*, 120 F. Supp. 3d 7 (D. Mass. Aug. 11, 2015) (appeal pending) (invalidating a foreclosure sale where the loan "servicer" sent the default notice because "[t]he language of paragraph 22 is clear and unequivocal as to who must give the required notice of default to the borrower: Lender must do so"). However, *Paiva* is currently on appeal to the First Circuit (Docket No. 15-2042) and cases since *Paiva* have disagreed with its holding. *See, e.g.*, *Anderson v. Nationstar Mortgage, LLC*, No. CV 15-14187-PBS, 2016 WL 1181661, at *4 (D. Mass. Mar. 25, 2016) ("[P]laintiff's argument, that the

---

[2] With regards to Counts II (No Power of Attorney), IV(R.I.G.L. § 34-27-3.1), and VII(R.I.G.L. § 34-11-22) Defendants rely upon the arguments set forth in their Motion to Dismiss. The Complaint does not contain Counts VI and VII. This reply will respond to Plaintiff's arguments with respect to Counts I(Void Assignments), III (Failure to Comply with Mortgage), VIII (TILA), IX (TILA), X (FDCPA), and XI (Regulation X and Regulation Z).

foreclosure sale is void merely because Aurora and Nationstar were not the "lenders" under the mortgage instrument, fails."); *Galvin v. United States Bank National Ass'n,* No. 14–14723–RGS, 2015 WL 1014549, at *4 (D. Mass. Mar. 9, 2015) (though the sender of the default notice was the loan servicer, "a plain reading of the mortgage" authorized servicer to act on lender's behalf.)

Finally, Plaintiff cites *Pinti v. Emigrant Mortgage Co., Inc.*, 472 Mass. 226 (2015), in which the Massachusetts Supreme Judicial Court held that "the 'terms of the mortgage' with which strict compliance is required—both as a matter of common law under this court's decisions and under § 21—include not only the provisions in paragraph 22 relating to the foreclosure sale itself, but also the provisions requiring and prescribing the preforeclosure notice of default." *Id*. at 236 (emphasis added)  *Pinti* further held that failure to comply strictly with the pre-foreclosure notice requirements of Paragraph 22 renders the subsequent foreclosure deed void. *Id.* at 242.  However, due to the impact on the validity of titles, the SJC determined to give its *Pinti* holding prospective effect only, and the holding thus applies only "to mortgage foreclosure sales of properties that are the subject of a mortgage containing paragraph 22 or its equivalent and for which the notice of default required by paragraph 22 <u>is sent after the date of this opinion</u>," July 17, 2015.  *Id*. at 243 (emphasis added).  It is undisputed that Plaintiff's notice was sent on February 5, 2013.  *See* Motion, Exhibit D.  The *Pinti* analysis does not apply.

In sum, all of Plaintiff's allegations pertaining to alleged violations of Paragraph 22 should be dismissed for the reasons stated in Defendants' Motion. *See* Motion at pp. 10-13. Plaintiff has not provided any authority, much less binding authority, suggesting otherwise. Count III of the Complaint should be dismissed.

**B.    MERS VALIDLY ASSIGNED PLAINTIFF'S MORTGAGE TO HSBC.**

In 2007, MERS assigned legal title to Plaintiff's mortgage to HSBC.  HSBC clarified the name of its trust in 2013, and foreclosed.  Plaintiff has attempted to obfuscate the mortgage assignments with superfluous documentation that does not support her claims.  The timeline of Plaintiff's allegations exposes the flaws in her argument:

- **November 10, 2005:**  Plaintiff makes a Note payable to Fremont Investment & Loan ("Fremont") and grants a mortgage to MERS as nominee for Fremont.  Plaintiff's mortgage states that *"MERS is . . . acting solely as nominee for Lender and Lender's successors and assigns.*  Def. Motion, Ex. A (emphasis added).

- **February 28, 2006:**  In a typical two-step true sale transaction, Fremont assigned Plaintiff's mortgage loan to DB Structured Products, and DB Structured Products assigned the mortgage loan to ACE Securities Corporation ("ACE").  ACE, as "depositor," assigned the Loan to *HSBC Bank USA, National Association ("HSBC") as trustee* of Ace Securities Corp. Home Equity Loan Trust, Series 2006-HE1.  MERS remained mortgagee of record..

- **December 17, 2007 ("2007 Assignment"):**  MERS assigns all of its right, title and interest in Plaintiff's loan to HSBC, as Trustee for Home Equity Loan Trust Series ACE 2006-HE1.  Due to a scrivener's error, Ace Securities Corp. Home Equity Loan Trust, Series 2006-HE1 was misstated as Home Equity Loan Trust Series ACE 2006-HE1.

- **January 17, 2013 ("Corrective Assignment"):**  HSBC Bank, as Trustee for Home Equity Loan Trust Series ACE 2006-HE1, by Wells Fargo Bank, N.A., as its attorney in fact, assigns Plaintiff's loan to HSBC, as Trustee for ACE Securities Corp. Home Equity Loan Trust, Series 2006-HE1, Asset Backed Pass-Through Certificates.

Plaintiff contends that Defendants' Motion should be denied because at the time of the First Assignment, "MERS was not acting as an agent for the owner of the note and the note was no longer owned by a MERS member."  Opp. at 22.  Plaintiff alleges that "due to the fact that MERS had no contractual relationship *with the successors of Fremont, which were Ace Securities and DB Structured Products*, no assignment could be made since MERS owned nothing to assign."  *Id.* (emphasis added).  Plaintiff asserts that MERS executed the First Assignment on its own behalf and not as a nominee for any entity related to the 2006 trust.

4

The travel of the mortgage in this case is quite simple. Plaintiff granted a mortgage to MERS, as nominee. MERS assigned the mortgage to HSBC, as trustee. HSBC, as trustee foreclosed.

Plaintiff's attempt to mischaracterize MERS' continuing role and to cherry-pick portions of the 2006 assignments fail as a matter of law. From Fremont to HSBC, each assignor assigned its rights in the mortgage, including the right to direct MERS as nominee and mortgagee of record. Fremont assigned all of its right title and interest in the mortgage loan, including the mortgage granted to MERS as nominee for Fremont and Fremont's power to direct MERS as nominee to DB Structured Products, and DB Structured Products assigned the same bundle of rights to ACE, and ACE assigned the same bundle of rights to HSBC, as trustee of the ACE Securities Corp. Home Equity Loan Trust, Series HE1. On February 28, 2006, pursuant to a Mortgage Loan Purchase Agreement (Opp., Ex. E-5 Part 1, PSA Exhibit F, Section 1), DB Structured Products sold Plaintiff's loan to ACE. Moreover, pursuant to Section 4 of the Mortgage Loan Purchase Agreement, DB Structured Products was required to deliver to ACE certain mortgage loan documents, including "the original Mortgage and the assignment thereof to MERS®, with evidence of recording indicated thereon[.]" Section 4(b) further states that

> In connection with the assignment of any Mortgage Loan registered on the MERS® System, [DB Structured Products] further agrees that it will cause . . . the MERS® System to indicate *that such Mortgage Loans have been assigned by the Seller [DB Structured Products] to the Purchaser[ACE] and by the Purchaser[ACE] to the Trustee [HSBC] in accordance with this Agreement[.]*

*Id*. (emphasis added). At the end of the day on February 28, 2006, HSBC held legal title to the note and mortgage made and granted by Plaintiff. MERS remained HSBC's nominee and mortgagee of record, and subject to the control and direction of HSBC, the successor and assign

5

of Fremont. The Plaintiff may not cherry-pick portions of the February 28, 2006 trust formation. Her allegation that the assignments stopped with ACE is an incomplete bit of sophistry.

Plaintiff further attempts to confuse the chain of assignments by alleging that Plaintiff's loan was "conveyed to the trust." A trust is not a legal entity capable of owning property. The Trust is an agreement between the trustee and beneficiaries. The trustee of the trust holds the legal title to the property for the benefit of the trust's beneficiaries. *Markham v. Fay*, 74 F.3d 1347, 1361 (1st Cir. 1996). Therefore, pursuant to the terms of the PSA, ACE, as depositor, assigned Plaintiff's loan to HSBC, as trustee for the beneficiaries of the ACE Securities Corp. Home Equity Loan Trust, Series HE1, not to the "trust".

Pursuant to the terms of the Mortgage, MERS continued to be the nominee for Fremont's successors and assigns. Plaintiff's assertion that "MERS had no contractual relationship with the successors of Fremont" is clearly contradicted by the terms of the mortgage, in which MERS agrees to act as nominee for Fremont, and Fremont's successors and assigns. MERS maintained its status as nominee for each of Fremont's successors. It was not until MERS assigned its interest in the mortgage to HSBC, that MERS ceased to be a nominee, and mortgagee of record. Accordingly, MERS had maintained an interest as nominee and mortgagee of record, which it assigned on December 17, 2007 to HSBC, as trustee. Plaintiff's claim that MERS had nothing to assign rests on the incorrect legal premise that MERS was somehow stripped of its role as nominee and mortgagee of record, which cannot be sustained as a matter of law and must be dismissed.

In the section of her Opposition related to standing and the "void versus voidable" analysis, Plaintiff alleges that Defendants admitted that the 2007 Assignment was invalid. Plaintiff misinterprets Defendants denial that Exhibit D is an assignment. Exhibit D to Plaintiff's

original Complaint was a 13 page document entitled "Consent of Incorporator Of Mortgage Electronic Registration Systems, Inc." Exhibit D was not an assignment. Defendants denied that Exhibit D was an assignment – not because Exhibit D was an invalid assignment, but because Exhibit D was not an assignment at all.

Defendants did admit, in response to Paragraph 31 of the original Complaint, that the 2007 Assignment contained a misnomer in the name of the Trust. The assignment between MERS and HSBC effectuated by the 2007 Assignment is a valid assignment between two existing entities. The name of the trust does not affect the relationship between Plaintiff and HSBC, as trustee. HSBC, as trustee, is the holder of the note and the mortgagee of record, holding legal title to the mortgage. The Plaintiff's attempt to defend this foreclosure on the ground of a misnomer in a trust name, since corrected, is ineffective as a matter of law. Whether HSBC, as trustee, has a relationship with trust a or trust b is irrelevant to HSBC's legal title to the mortgage and standing to enforce it against the Plaintiff borrower. The Plaintiff's claim must be dismissed.

C.     **TILA AND RESPA DO NOT APPLY TO POST-FORECLOSURE REQUESTS**

All of Plaintiff's claims under TILA or RESPA should be dismissed because each arose after the Property had been foreclosed, when Wells Fargo was no longer servicing the loan. TILA and RESPA define "servicer" to mean "the person responsible for [the] servicing of a loan" and "servicing" to mean "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan[.]" 12 U.S.C. § 2605(i)(2), (i)(3). Here, it is undisputed that the Property was foreclosed on September 13, 2013. TAC, ¶128h. However, Plaintiff bases each of her TILA and RESPA claims on the fact that Wells Fargo failed to adequately respond to various requests for information *after* the Property had been foreclosed on.

Courts have determined that mortgage servicers are not obligated to respond to requests for information post-foreclosure. *See Melanie Wright, Individually & as the Adm'r of the Estate of Earl Wright Plaintiff v. Nationstar Mortgage, LLC, et al.*, No. CV PJM 14-3991, 2016 WL 1077164, at *7 (D. Md. Mar. 18, 2016) ("Concerning Plaintiff's allegations with regard to Nationstar's failure to respond to the QWR she sent in September 2014, this claim is meritless . . . . Plaintiff . . . fails to explain why Nationstar was obligated to respond [to the QWR] at all post-foreclosure."); *Toscione v. Wells Fargo Home Mortgage*, No. 8:13-CV-02065-T, 2013 WL 10721711, at *1 (M.D. Fla. Sept. 18, 2013) ("The Complaint fails to state a claim on which relief may be granted because at the time the letter was written, Plaintiff's mortgage had been foreclosed and sold at a judicial sale, and Wells Fargo was therefore not 'servicing' the loan."); *Daw v. Peoples Bank & Trust Co.*, 5 Fed. Appx. 504, 505 (7th Cir.2001) (concluding that once the plaintiff defaulted on the loan, the bank was no longer accepting scheduled periodic payments and was therefore not a "servicer" of the loan); *Bilek v. Bank of Am., N.A.*, No. 07 C 4147, 2011 WL 830948, at *5 (N.D.Ill. Mar. 3, 2011) (granting summary judgment to bank on RESPA claim because letters were sent after foreclosure proceedings were instituted, and the bank was therefore no longer "servicing" the loan); *Sanchez v. Onewest Bank, FSB*, No. 11 CV 6820, 2013 WL 139870, at *3 (N.D.Ill. Jan. 10, 2013) (dismissing with prejudice RESPA and TILA claims because the judicial sale of the property had been approved and the bank therefore could not have been "servicing" the loan). Likewise, Wells Fargo cannot be liable under TILA or RESPA for failing to respond to Plaintiff's request because it was no longer servicing the loan after the foreclosure had concluded.

Moreover, even if Wells Fargo was servicing Plaintiff's loan during the time the written requests were made, Plaintiff's requests were not Qualified Written Requests ("QWR") under the

relevant statutes. QWRs address servicing of loans, not ownership. Calling correspondence to Wells Fargo a "QWR" does not make it so. The statute defines a QWR as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that…includes a statement of reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2601(e)(1)(B).

"Courts have held that allegations and requests for documents that relate to the validity of the loan and do not attack the servicing of the loan are not QWRs under RESPA." *Ayres v. Ocwen Loan Servicing, LLC*, 2015 WL 5286677, at *9 (D. Md. Sept. 8, 2015); *see also Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc.,* 858 F.Supp.2d 561, 574–75 (E.D.N.C.2012) ("There are no allegations in the amended complaint regarding irregularities in BAC's servicing of the loan and the notice does not identify purported errors with Plaintiffs' account or ask questions relating to BAC's servicing thereof.... Accordingly, Plaintiffs' March 2010 notice did not qualify as a valid QWR and thus BAC's failure to respond thereto does not subject BAC to RESPA liability.").

In *Junod v. Dream House Mortg. Co.*, 2012 WL 94355 (C.D.Cal. Jan. 5, 2012), the court analyzed whether a request made by a borrower that qualified as a QWR. In that case, the borrower sent a letter requesting a laundry list of documentation, including, among other things, a copy of the note and deed, loan transaction history, the name and address of the current holder in due course and owner of the note, an itemized statement of the amount needed to fully reinstate the loan, and all communications with third party providers. The court held that the borrower's "all encompassing request for documents and records are not the type of information RESPA contemplates. Particularly, [the bank] aver[s] that the alleged QWR does not request

9

information directed to the servicing of the loan…The Court must agree." *Id.*, at *3. Furthermore, "[i]t is apparent from the alleged QWR that [the borrowers'] request was unrelated to the servicing of the loan. Rather, the alleged QWR contains largely requests for documents relating to the original loan transaction and its subsequent history…Such requests do not fall within the confines of RESPA." *Id.* Plaintiff's request for information related to the loan transaction and its subsequent history did not fall within the confines of 12 U.S.C. § 2605(e) and therefore Wells Fargo was not obligated to respond.

D. **PLAINTIFF'S FDCPA CLAIM FAILS BECAUSE THE FORECLOSURE WAS VALID**

Plaintiff's FDCPA should be dismissed because each of the allegedly prohibited acts that Wells Fargo committed are related to the foreclosure of the Property. "A viable claim for violation of the FDCPA requires that a plaintiff establish three elements: (1) that she was the object of collection activity arising from consumer debt, (2) defendants are debt collectors as defined by the FDCPA, and (3) defendants engaged in an act or omission prohibited by the FDCPA." *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 30 (D. Mass. 2014) (internal quotations omitted). Here, Plaintiff alleges that Wells Fargo engaged in acts prohibited by the FDCPA, such as conducting the foreclosure, attempting to collect fees related to the foreclosure, and falsely stating that Plaintiff's mortgage had been foreclosed. However, as set forth above, Wells Fargo, as servicer for HSBC, had the right to enforce the mortgage and foreclose on the Property. Accordingly, Wells Fargo did not engage in any acts prohibited by the FDCPA and Count X should be dismissed.

## **CONCLUSION**

WHEREFORE, based on the foregoing, Defendants respectfully request that this Court dismiss all counts contained in Plaintiff's Third Amended Complaint.

Respectfully submitted,

HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR ACE SECURITIES CORP. HOME EQUITY LOAN TRUST, SERIES 2006-HE1 and WELLS FARGO BANK, N.A.,

By their Attorney

Dated: May 31, 2016

/s/ Lauren J. O'Connor
LAUREN J. O'CONNOR, ESQ. #7808
Seyfarth Shaw, LLP
World Trade Center East
Two Seaport Lane
Suite 300
Boston, MA 02210-4800
(617) 946-4924
loconnor@seyfarth.com

**CERTIFICATE OF SERVICE**

I, Lauren J. O'Connor, hereby certify that this document has been filed electronically and is available for viewing and downloading from the ECF system. I further certify that this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 31, 2016.

/s/ *Lauren J. O'Connor*
Lauren J. O'Connor